STERN & MONTANA, LLP
TRINITY CENTRE
115 BROADWAY
NEW YORK, NEW YORK 10006

TELEPHONE: (212) 532-8100
FACSIMILE: (212) 532-7271
E-MAIL: info@stern-montana.com
www.stern-montana.com

April 26, 2010

**VIA ELECTRONIC FILING**

Hon. Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
Room 1207
225 Cadman Plaza
Brooklyn, New York 11201

    Re:    **Allstate Insurance Company, et al. v. Mark Mirvis, et al.**
            **CV 08-4405 (SLT)(VVP)**

Dear Magistrate Judge Pohorelsky:

      We are counsel to Plaintiffs in the above-referenced matter, and respectfully submit this response in opposition to the letter motion to compel Plaintiffs to supplement their responses to Defendants' First Set of Document Requests and First Set of Interrogatories, each dated January 27, 2010 (Doc. No. 186) filed by Defendants L&B Medical, P.C., S&L Medical, P.C., Dover Medical, P.C., ZDR Medical, P.C., Irena Shperling, Grigory Shtender, Lev Bentsianov, Andrew Ivanson, Mikhail Mirer, Alexander Israeli, Zhanna Roit, Sofia Bentsianov and Gary Tsirelman (the "Defendants"). For the reasons set forth herein, it is respectfully submitted that Defendants' motion should be denied in its entirety.

**DOCUMENT REQUESTS 5, 9, 10, 11 and 12**

      Defendants seek to compel Plaintiffs to produce documents reflecting how Plaintiffs handled, processed, and investigated No-fault claims submitted by medical providers across three states, who are not parties named in the Complaint, over a thirteen-year period. (Doc. Nos. 5, 9, 10, 11, and 12).[1] Defendants argue that the requested documents are purportedly relevant

---

[1] Defendants' Request No. 5 seeks peer review reports obtained by Plaintiffs in connection with claims made to them by any and medical providers in the states of New York, New Jersey and Florida during the time period referred to in the Complaint; Defendants' Request No. 11 seeks documents including copies of all reports, treatment or progress notes, bills, NF-3 forms, NF-10 forms, requests for verification, letters of medical necessity, denial forms, and checks for synaptic received from or exchanged by Allstate with any health care provider; Defendants'

Cont/d…

STERN & MONTANA, LLP

April 26, 2010
Page 2

insofar as the methods that Plaintiffs may have used to investigate and process similar claims from other medical providers, may somehow show when it became reasonable for Plaintiffs to rely on Defendants' submissions.[2] As discussed below, Defendants' theory is misguided for at least three reasons: First, the law is settled that Defendants may not dispute Plaintiffs' reasonable reliance on purportedly facially valid documents which they submitted to the Plaintiff insures; second, documents concerning other medical providers are palpably irrelevant to prove or disprove the pattern of Defendants' fraud which is alleged in the Complaint with respect to the fraudulent submission made by these specific defendants; and third, the enormous burden (not to mention the impossibility of producing the requested documents) and expense of the proposed discovery far outweighs any benefit to Defendants, which, as explained below, would be no benefit at all.

As a threshold matter, the Supreme Court has explicitly held that a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentation." Bridge v. Phoenix Bond & Indemn. Co., --- U.S. ----, 128 S.Ct. 2142, 2154 (2008). Accordingly, documents relating to Plaintiffs' reasonable reliance on Defendants' submissions are not relevant to Plaintiffs' RICO claims or Defendants' defenses, and are therefore not discoverable pursuant to Rule 26. Moreover, while reliance is an element of Plaintiffs' common law fraud claim, it is well-accepted that an insurer is entitled to rely on claim documents submitted by a health care provider for reimbursement under an insurance plan. Indeed, courts within this Circuit have uniformly found that No-fault insurers are entitled to rely upon facially valid documents submitted by healthcare providers. See State Farm Mut. Auto. Ins. Co. v. Grafman, No. 04-cv-2609, 2009 WL 2998213, at *13 (E.D.N.Y. Sept. 21, 2009)(reliance sufficiently alleged where insurer relied on misrepresentations in facially valid claims); Allstate Ins. Co. v. Halima, No. 06-cv-1316, 2009 WL 750199, at *4 (E.D.N.Y. Mar. 19, 2009)(insurer entitled to rely on facially valid insurance claims); State Farm Mut. Auto. Ins. Co. v. Liguori, 589 F. Supp. 2d 211 (E.D.N.Y. 2008)(false representations in facially valid claims sufficiently stated reliance element); State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C., No. 04-cv-5154, 2008 WL 4146190, at * 13, 16 (E.D.N.Y Sept. 5, 2008)(same); AIU Ins. Co. v. Olmecs Medical Supply, Inc., No. 04-cv-2934, 2005 WL 3710370, at * 4, 14 (E.D.N.Y. Feb. 22, 2005)(same). Against the foregoing backdrop, it is almost inconceivable that Defendants contend that they are entitled to documents concerning unrelated medical providers in order to demonstrate that Plaintiffs had no right to presumptively rely on the

---

Request No. 12 seeks copies of every complaint that was filed with any Federal or State law enforcement agency, or the New York State Departments of Insurance, Department of Health, Office of Professional Medical Conduct, or Department of Education referring or relating to synaptic.

[2] At bottom, it is unfathomable that Defendants assert that information concerning No-fault claims submitted by medical providers which are completely unrelated to the medical providers named in the Complaint would somehow start the clock running with respect to the statute of limitations on the claims which are the subject of the Complaint.

Cont/d…

STERN & MONTANA, LLP

April 26, 2010
Page 3

thousands of claims which Defendants submitted with the intent of being paid on those claims, and then challenge Plaintiffs' reliance on those documents.

  Furthermore putting aside that Plaintiffs have demonstrated reliance is not an issue with respect to their RICO and common law fraud claims and therefore forecloses Defendants' entitlement to the requested documents, even if the Court determines that reliance is relevant to Plaintiffs' common law fraud claim, the documents sought by Defendants are irrelevant to Plaintiffs' reasonable reliance on the facially valid claims submitted to them by Defendants. As alleged by Plaintiffs, Defendants concealed their fraud from Plaintiffs through the submission of thousands of bills which were facially valid, and it was not until a *pattern of suspicious claims submitted by Defendants* emerged that Plaintiffs detected Defendants' fraud. See e.g. Allstate Ins. Co. v. Halima, 2009 WL 750199 (E.D.N.Y. March 19, 2009) (Plaintiffs could not discover the defendants' fraudulent scheme until a pattern of fraudulent claims developed). In that regard, *nothing* contained in documents concerning unrelated medical providers spanning three states with no discernible connection to the Defendants in this action could have any bearing whatsoever on when Plaintiffs, based on Defendant's facially valid submissions, should have discovered Defendants' pattern of fraudulent submissions. Moreover, it is well-settled that mere hope and speculation cannot serve as the basis for requesting discovery. See e.g. Alessi Domenico S.P.A. v. OTC Intern. Ltd., 2006 WL 3050874 (E.D.N.Y. 2006) (courts should not grant discovery requests based on pure speculation that amount to nothing more than a fishing expedition not related to the alleged claims or defenses")(citations omitted); Surles v. Air France (S.D.N.Y. 2001) 2001 WL 815522, *4 (discovery requests cannot be based on pure speculation or conjecture.); United States v. Consolidated Edison Co. of New York (E.D.N.Y. 1988 WL 138275, *1-*2 (E.D.N.Y. 1988)(denying motion to compel where the requested discovery constituted no more than a fishing expedition). Here, Defendants seek nothing more than to conduct a burdensome, enormously expensive fishing expedition in an ocean of Plaintiffs documents. Clearly, the documents sought are not reasonably calculated to lead to admissible evidence, but, rather are being sought to harass and burden Plaintiffs. It is incredible that Defendants would take the position that medical records submitted by unrelated medical providers could somehow be relevant to defending their claims.

  Even if Defendants had access to the irrelevant documents which they seek, those documents (1) will not contain the same pattern of fraud (to the extent it exits) to that alleged in the Complaint and (2) even if they did, it is inconceivable that fraud committed by unrelated medical providers could somehow impute knowledge and the lack of reliance by the Plaintiffs with respect to fraudulent documents submitted by Defendants. In that regard, the Court should not allow Defendants to conduct oppressive and invasive discovery in search of documents that they claim might be relevant when there is absolutely no evidence or reason to suggest that would be the case. At bottom, Defendants should not be permitted to explore matters which are not germane on the theory that they might conceivably become so. Evans v. Calise, No. 92 Civ. 8430, 1995 WL 312468,*1 (S.D.N.Y. May 19, 1995) (citations omitted). Here, that is exactly what Defendants are attempting to do.

Cont/d...

STERN & MONTANA, LLP

April 26, 2010
Page 4

Finally, assuming that the Court finds that documents relating to Plaintiffs' handling of claims by medical providers other than those named in the Complaint to be relevant and therefore discoverable, it is respectfully submitted that the Court should still deny Defendants' request that Plaintiffs be compelled to produce them. It is axiomatic that the broad reach of discovery is not without limits and a court should disallow discovery requests when the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(2)(c)(iii). That is undoubtedly the case here. Defendants have essentially asked Plaintiffs to produce documents which are contained in hundreds of thousands of claims files relating to thousands of medical providers over a period of more than a decade across three different states.[3] Moreover, such request has been made without any showing of relevancy. It is respectfully submitted that to require Plaintiffs to undertake such an enormous and expensive production (assuming such documents could be identified and produced, which as indicated Plaintiffs believe they could not be) based upon a whimsical theory which is not (and can not be) grounded in any showing of relevancy would be patently prejudicial to Plaintiffs, and the Court should therefore deny Defendants' request. See e.g. Duck v. Port Jefferson School Dist., 2008 WL 2079916 (E.D.N.Y., 2008)(courts have considerable discretion to evaluate the practical realities of discovery, balancing the importance of the information against the burdens of production to decide whether fairness does or does not require production )(citations omitted).

## DOCUMENT REQUESTS 13,1 4, 16, 18, 19, and 20

Defendants also seek to compel Plaintiffs to produce documents upon which Plaintiffs relied in drafting the allegations in the Complaint regarding the fraudulent nature of Defendants' billing for synaptic testing (Request Nos. 13 and 14), range of motion testing (Request No. 16), cervical strength testing (Request No. 18), NCV testing (Request No. 19), and EMG testing (Request No. 20). However, since, the law is clear that such documents are shielded from discovery pursuant to the work-product doctrine, and because the "at issue" doctrine is inapplicable to the factual circumstances at bar, Defendants' request should be denied.

Prefatorily, there is no question that the documents upon which Plaintiffs relied, including reports from medical consultants prepared in anticipation of litigation, in drafting the Complaint are protected work-product. It is axiomatic that the work-product doctrine protects, from disclosure, documents and tangible things prepared in anticipation of litigation by a party or the party's representative. Fed. R Civ. P. 26(b)(3). The work product doctrine preserves an attorney's professional ability to provide legal services in a manner that is private, confidential,

---

[3] While further inquiry would be required, on information and belief, Plaintiffs could not identify and produce the files that contain the documents Defendants seek because they do not track information in a way that would allow them to identify documents that would be responsive to their request. In addition, the objections raised herein would sill apply even if Defendants limited their request to unrelated medical providers submitting claims in New York. Such a request would not be any less irrelevant, oppressive or burdensome, since you would still be dealing with uncountable medical providers and medical records that Plaintiffs could never identify.

Cont/d…

STERN & MONTANA, LLP

April 26, 2010
Page 5

and discrete from an adversary. Hickman v. Taylor, 329 U.S. 425, 511 (1947). In addition, it "grants counsel an opportunity to think or prepare a client's case without fear of intrusion...." In re Six Grand Jury Witnesses, 979 F.2d 939, 944 (2d Cir.1992), cert. denied, 509 U.S. 905, 113 S.Ct. 2997 (1993). However, Defendants claim that although the documents they seek may be privileged, they are nevertheless entitled to them based upon the "at issue" doctrine as set forth in Trudeau v. New York State Consumer Protection Bd., 237 F.R.D. 235 (N.D.N.Y. 2006). Defendants are mistaken.

In that regard, the application of the "at issue" doctrine only arises in circumstances where a party contends facts, and then relies upon the work-product or attorney-client privilege to deprive its adversary of access to the material that might disprove, impeach, contest, rebut or undermine those facts. Trudeau, 237 F.R.D. at 302 & 303. For example, a party cannot contend that the contents of a privileged document is unlawful, and then deprive an adversary the right to see that document because it is privileged, because by claiming the contents of the document to be unlawful, the party has put the contents of that document "at issue." That is simply not the case here, as the contents of the documents upon which Plaintiffs relied in drafting the Complaint are not at issue. What is at issue, is the validly of the content of medical records, reports, and billing documents contained in Plaintiffs' No-fault claim files, all of which Plaintiffs allege to be fraudulent, and all of which will be made available to Defendants for inspection and copying. Thus, to the extent Defendants wish to review any or all of the factual information contained in the claim files in order to disprove, impeach, contest, rebut or undermine Plaintiffs' allegations that they are fraudulent, they may do so. However, documents which demonstrate or reflect how or why Plaintiffs interpreted that same information is not factual information to which Defendants are entitled. United States v. District Council of New York City and Vicinity of the United Brotherhood of Carpenters and Joiners of Am., No. 90 Civ. 5722, 1992 WL 208284, at *10 (S.D.N.Y. Aug.18, 1992) (finding that disclosure of information regarding case preparation would inevitably teach defendants which individuals the plaintiff considered more or less valuable witnesses and how it was preparing for trial.) Such discovery, which would inevitably reveal Plaintiffs' attorneys' mental thought process, seeks improper work product information. Morgan v. City of New York, No. 00 Civ. 9172, 2002 WL 1808233, at *3 (S.D.N.Y. Aug.6, 2002), (finding that discovery demand which sought information regarding persons with whom Plaintiff or her agents contacted, interviewed or communicated with concerning Plaintiff's allegations impermissibly sought attorney work-product).

Moreover, as noted in Trudeau at 237 F.R.D. at 341 (citations omitted), privilege forfeiture should be narrowly construed and only used in circumstances where it is needed to remedy unfairness or prejudice At bar, Defendants would not suffer any prejudice by not having access to the protected documents, which Plaintiffs relied on in drafting the Complaint. As noted, Defendants will have access to all of the claims files which underlie the allegations in the Complaint, which will give them a full and fair opportunity to contest Plaintiffs' allegations regarding the fraudulent nature of those claim files. Moreover, to the extent that Plaintiffs relied on expert reports and analysis in drafting the allegations contained in the Complaint, that

Cont/d...

STERN & MONTANA, LLP

April 26, 2010
Page 6

information will be provided to Defendants at the appropriate time through expert disclosure in accordance with the Federal Rules of Civil Procedure. Indeed, to the extent Defendants seek production of medical reports relied on by Plaintiffs in preparing the Complaint, it would appear they are impermissibly seeking to circumvent how the Federal Rules deal with expert disclosure and such a request must be denied.

### DOCUMENT REQUEST 17

Defendants requested copies of all duplicate range of motion studies as alleged in paragraphs 353 to 357 of the Complaint. In that regard, all of the duplicate range of motion studies referenced in paragraphs 355 to 357 of the Complaint are annexed to the Complaint as Exhibits 68 through 70 respectively. All other duplicate range of motion studies which are the subject of the Complaint are contained in Plaintiffs No-fault claim files, which, as noted above, will be made available to Defendants for inspection and copying.

### DOCUMENT REQUEST 21

Plaintiffs' response to Document request 21 indicated that Plaintiffs will make available for inspection data compilations, computer runs and 1099s that Plaintiffs used to calculate their damages. Accordingly, Defendants have agreed to withdraw their objection to Plaintiffs' response.

### INTERROGATORIES 4, 5, 7, and 8

Defendants assert that Plaintiffs should be compelled to separately set forth the claims included in Plaintiffs' damage calculation which Plaintiffs allege were never rendered (Request No. 4), never rendered as billed (Request No. 5), not medically necessary (Request No. 7), and of no diagnostic value (Request No. 4) because such information is relevant to Defendants' ability to defend themselves against Plaintiffs' allegations. However, because Plaintiffs allege that the electrodiagnostic testing reflects each type of fraud, it is sufficient for Plaintiffs to respond, as they have, that all claim files that include electrodiagnsotic testing (EMGS, NCVS, evoked potentials) and synaptic treatment contains all of those types of fraud, making a breakdown unnecessary. Thus, to the extent Defendants want to know for the purposes of their defense which claim files contain the various types of fraud, Plaintiffs allege that all claim files that include testing for electrodiagnostic testing and synaptic treatment contain each type of fraud and therefore Defendants will have to review each of the claim files that are the subject of this litigation. Plaintiffs have already agreed to produce a non-privileged document which identifies the patient name, claim number and the amount paid by Plaintiffs relating to all claims in which Plaintiffs allege that the billed for services were never rendered, never rendered as billed, not medically necessary, or of no diagnostic value, and Defendants are free to use that information to further investigate any claim files which they choose.

Cont/d…

STERN & MONTANA, LLP

April 26, 2010
Page 7

For the foregoing reasons, it is respectfully requested that Defendants' motion to compel Plaintiffs to supplement their responses to Defendants' First Set of Document Requests and First Set of Interrogatories be denied in its entirety. Thank you for your consideration in this regard.

Respectfully submitted,

Stern & Montana, LLP

By: *[signature]*
Daniel S. Marvin (DM-7106)

cc: Distribution List (via electronic filing)

773419_4.doc