UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


| | | |
|---|---|---|
| ALLSTATE INSURANCE | * | Case No. 08-CV-04405(SLT) |
| COMPANY, et al., | * | |
| | * | |
| Plaintiffs, | * | Brooklyn, New York |
| | * | June 24, 2010 |
| v. | * | |
| | * | |
| MARK MIRVIS, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * *


TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE VIKTOR V. POHORELSKY
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiffs:                    SANDRA P. BURGOS, ESQ
                                       ROBERT A. STERN, ESQ.
                                       DANIEL MARVIN
                                       Stern & Montanta, LP
                                       Trinity Centre, 115 Broadway
                                       New York, NY  10006


For the Defendants,                    MARK FURMAN, ESQ.
Shtender, Shperling,                   Hoffman Polland & Furman PLCC,
Roit, Tsirelman,                       220 East 42nd Street, Suite 435
Bentsianov, Ivanson, Mirer,            New York, NY 10017
Israeli, L&B Medical,
Dover Medical, ZDR
Medical and S&L Medical:




Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

1          (Proceedings commenced at 2:21 p.m.)

2              THE CLERK:  Civil cause for a status conference

3      in civil 08-4405, Allstate Insurance Company against

4      Mirvis, et al.

5              Counsel, please state your appearances for the

6      record.

7              MS. BURGOS: Good afternoon, Your Honor.  Sandra

8      Burgos along with Robert Stern and Daniel Marvin for the

9      plaintiffs.

10              MR. FURMAN:  For the following defendants,

11      Hoffman Polland and Furman by Mark Furman, L&B Medical,

12      Dover Medical, and ZDR Medical, P.C.'s.  Individual

13      defendants Sofia Bentsianov, Lev Benstianov, Andrew

14      Ivanson, Gary Tsirelman, Irena Shperling, Grigory Shtender,

15      Alexander Israeli, Michael Mirer, and Zhanna Roit.

16              THE COURT: You didn't mention -- I don't think.

17      Maybe I didn't hear it -- S and L Medical P.C.  Are you --

18              MR. FURMAN:  I'm sorry. You're correct, Your

19      Honor.

20              THE COURT:  Are you still representing them?

21              MR. FURMAN: Yes, I am.  I neglected to mention

22      them.

23              THE COURT:  All right.  Round three.  Is that

24      right?  This is the third time I think we're dealing with

25      the discovery request.

1          MR. FURMAN: I think we're almost done, Your

2     Honor.

3          THE COURT:  Yes, I hope --

4          MR. FURMAN: Between us we just sort of looked at

5     what we have left.

6          THE COURT:  Yes, I was going to ask for your

7     guidance because I do not have a firm recollection of where

8     we left off.

9          I know we were looking at the defendant's

10    requests to the plaintiffs and my page is open to -- my

11    copy of the letter motion is open to page 3 of 6.

12         So I'm led to believe that we were somewhere on

13    that page, but I'm not sure exactly where.

14         MS. BURGOS:  Your Honor, Sandra Burgos on behalf

15    of the plaintiffs.

16         I believe, relying on our notes and Your Honor's

17    transcript from the last court appearance --

18         THE COURT:  Oh, you have a transcript of it.

19         MS. BURGOS:  Yes, Your Honor.

20         THE COURT:  Okay.

21         MR. FURMAN: Oh.

22         MS. BURGOS:   Yes, we received it yesterday --

23    yesterday or today?  Today.

24         We are -- the next issue that we've got to deal

25    with is defendant's document request no. 17, which is on

4

1    their page -- I guess 5 of their letter motion.

2           THE COURT:  Oh.  Okay.  I don't know why I'm up

3    to page -- I dealt with 9, 10, 13, 14, 16, 18, 19 and 20?

4           MS. BURGOS:  Yes, Your Honor. That's where we

5    left off last time.

6           THE COURT:  All right. So on page 5, request 17.

7    Okay.

8           MS. BURGOS:  Your Honor, with respect to document

9    request no. 17, it's plaintiff's position that there really

10   isn't an issue there because with respect to the studies

11   that are referenced in the complaint, we've annexed copies

12   of those range of motion studies as Exhibit 68 through 70

13   and to the extent that --

14          THE COURT:  68 through 70 to what?

15          MS. BURGOS:   Exhibits to the complaint, Your

16   Honor.

17          THE COURT:  To the complaint.

18          MS. BURGOS:   And although those are only a

19   representative sample of what's included in the complaint,

20   the plaintiffs have indicated that they would produce all

21   of the duplicate range of motion studies which are the

22   subject of the complaint and those would be maintained in

23   their claim files, which the plaintiffs intend to produce

24   for copy and inspection.

25          THE COURT:  Well, your -- oh, sorry.  Your

5

1    response though to document request 17 did not say that you

2    would provide that.

3              MS. BURGOS:   Yes, Your Honor, but we have -- in

4    our response to counsel's letter motion, we've indicated --

5              THE COURT:   Oh.

6              MS. BURGOS:   -- that all other duplicate range of

7    motion --

8              THE COURT:   Sorry.

9              MS. BURGOS:   -- range of motion studies, which

10   are the subject of the complaint, are contained in the

11   plaintiff's no-fault claim files, which will be made

12   available for defendants for inspection and copying.

13             THE COURT:   But what they want is they want you

14   to point out which ones are the duplicates, as opposed to

15   them looking through all the claim files and then saying --

16   and trying to piece together which ones -- I mean, they're

17   not going to know which ones are the duplicate claim ROM's

18   -- the ROM tests that you're going to try to prove are

19   duplicate.

20             Now, you may not be in a position just yet to

21   identify all of them, but I think they are entitled to know

22   that so that they can have their own people look at it

23   prior to trial and be in a position to talk about -- attack

24   the conclusions that they are duplicates or not.

25             I want to make sure I understand the issue.  As I

1    understand it, it's going to be the plaintiff's contention

2    that the same ROM tests -- and these are some -- it's some

3    kind of document that reflects a test that was done -- it's

4    not a photograph, I gather, but some kind of --

5              MR. STERN:  It's data, Your Honor.

6              THE COURT:  It's data, but it's produced by a

7    machine, as opposed to a doctor's notes about -- you know,

8    like a doctor in an examination may make notes about

9    percentage of disability or percentage of range of motion,

10   or whatever. This is not what we're talking about.

11             We're talking about some kind of mechanical

12   device that records information and from that, that's

13   interpreted by a physician or somebody, supposedly.

14             MR. STERN:  That's correct, Your Honor.

15             THE COURT:  All right.  And they are not going to

16   know which ones you're going to seek to prove are

17   identical, or copies of each other, until -- and they -- it

18   seems to me they're entitled to know that in order to be in

19   a position to meet that evidence.

20             MR. STERN:  Robert Stern for the plaintiffs, Your

21   Honor.  The complaint itself contained the exhibits with

22   representative examples, so they certainly have the

23   duplicates that we've alleged are -- the range of motion

24   results that we've alleged are duplicate, and as far as the

25   other range of motion test, they will be identified,

7

1    presumably, in the expert reports when we produce those.

2            But as far as having all of the duplicate range

3    of motions that -- tests that may exist --

4            THE COURT:  Oh, no.  That -- I don't think that

5    they're not necessarily entitled to that. They're entitled

6    to know which ones you're going to rely on to prove

7    whatever you want to prove.  And I guess this is really a

8    question of timing.

9            And is there a reason why the production of that

10   can't wait until the expert's phase of discovery, other

11   than it may help resolve the case earlier.

12           MR. FURMAN: No, I don't think there is, Your

13   Honor, however, I'm not certain that a one-month difference

14   between the -- their expert's report and our expert's

15   report, in view of the fact that new information may be

16   coming in for the first time, may be sufficient at that

17   time. So --

18           THE COURT:  Well, that's a legitimate --

19           MR. FURMAN: I mean, I just want to put that note

20   in the record.

21           THE COURT:  That's a legitimate concern.

22           I guess it would depend on the volume of

23   duplicates that are going to be identified by an expert,

24   but assuming then an adjustment of the deadlines that may

25   be -- I don't think I've set deadlines for that, have I?

1          I haven't set any final -- I haven't set any

2     deadlines for expert discovery, I don't think.

3          But aside from that problem, which can be

4     adjusted, it seems to me, to reflect added time that's

5     needed, or to provide added time and any needed -- given

6     the amount of information that's disclosed about that.

7          Can that -- is there any other reason that

8     delaying that would be a problem?

9          MR. FURMAN: No other reason.

10         THE COURT:  Okay.  All right.  Well, so that's

11    that.

12         I mean, the only other thing that occurs to me is

13    well, I guess you'd almost necessarily have to have an

14    expert opine on the duplicative nature of those ROM tests.

15         You really couldn't introduce them as duplicates,

16    unless you had an expert to say this has to be a duplicate,

17    right?

18         MR. STERN:   That is correct, Your Honor.

19         THE COURT:  I mean, in other words -- I guess

20    what I'm trying to say is you're not going to walk in with

21    a pile of duplicate ROM tests; say these are duplicates and

22    -- but they won't otherwise be the subject of an expert

23    report.

24         MR. STERN:   No, no.  They would be the subject

25    of an expert --

9

1           THE COURT:  Okay.  So it's a -- okay.  So that

2    will be the solution to that problem.

3           And request 21?

4           MS. BURGOS:   I think the defendants have agreed

5    to withdraw their objection.

6           Plaintiff's answer to document request no. 21

7    indicated that they would produce 1099's for data

8    compilations and computer runs upon which they based their

9    calculations and their damages?

10          MR. FURMAN: Yes.  That's correct.

11          THE COURT:  All right. Moving to the

12   interrogatories.

13          Now this is a -- basically you're asking the --

14   are you asking that the plaintiffs separately identify into

15   which category a group of -- which category a billing

16   falls; whether it's never rendered, never rendered as

17   billed, not medically necessary or diagnosis --

18          MR. FURMAN: That's correct.

19          THE COURT:  And what is the objection there?

20          MS. BURGOS:   Well, Your Honor -- Sandra Burgos

21   for the plaintiffs.

22          In our response to counsel's letter motion we've

23   indicated, or alerted counsel, that all of the claim files

24   that involve electrodiagnostic testing and Synaptic

25   treatment contain each of those type of frauds, making a

1    breakdown unnecessary.

2         So in each claim that involves electrodiagnostic

3    testing and Synaptic treatment, the plaintiffs allege that

4    those services were never rendered.  They were never

5    rendered as billed.  They were not medically necessary and

6    were of no diagnostic value.

7         THE COURT:  But does that -- are you basically

8    saying that every claim filed then falls within that

9    category, or are there some claims that do not fall in that

10   category that are somehow otherwise -- well, let me see.

11   This goes into the two halves of the plaintiff's claim.

12        One half is all claims should not have been paid

13   because they were made by entities that were not properly

14   run by a physician.

15        And that applies to all of the bills rendered by

16   these defendants.

17        MR. STERN:   That's correct, Your Honor.

18        THE COURT:  And then some subset of those are the

19   ones in which you claim that they were fraudulent because

20   of one of these four, or all of these four regions.

21        And that -- basically this interrogatory -- I

22   guess -- the bottom of this interrogatory wants to identify

23   which ones are fraudulent for these reasons and which ones

24   are fraudulent -- or fall into the larger category, or at

25   least distinguish these from the ones that fall in the

1    larger category.

2              Am I articulating something that you're -- does

3    that makes sense to everybody?  It makes sense to me. I'm

4    not sure it makes sense to --

5              MR. FURMAN: That is indeed --

6              MR. STERN:   Plaintiff's understand that the --

7              THE COURT:  Well articulated --

8              MR. STERN:   -- for the plaintiffs to delineate

9    the different types of frauds and the different categories

10   that are alleged in the complaint and our response to that

11   is that --

12             THE COURT: Well --

13             MR. STERN:   As it related to electrodiagnostic

14   testing and the Synaptic testing that all -- each of those

15   categories of fraud that are alleged in the complaint are

16   present with respect to those specific tests.

17             THE COURT:  Okay.  So just let me understand you.

18   Were those kinds of tests rendered by all of the PC's here

19   or not necessarily?

20             MR. STERN:   Your Honor, my belief --

21             THE COURT:  Are you saying that all of the claims

22   that were filed by the -- these defendants, that Mr. Furman

23   represents, have all four of these infirmities?

24             MR. STERN:   What we're saying is that with

25   respect to every claim that they submitted that included

1      billing for electrodiagnostic testing --

2              THE COURT:  Okay.  So that's -- I think I'm --

3      let me just pick up on that.  I thought that's all that

4      these plaintiffs did -- defendants did.  No, they did other

5      kinds of things other than electrodiagnostic testing.

6              MR. STERN:   That is correct, Your Honor.

7              THE COURT:  So any claim file that has

8      electrodiagnostic testing will be one that you will be

9      contending suffers from the never rendered, never rendered

10     as billed, not medically necessary and have no diagnostic

11     value infirmities.

12             MR. STERN:   Correct, Your Honor.

13             THE COURT:  Okay.  Well, why don't you put that

14     in an answer and then that gives you the -- then once you

15     review the files, you'll know whether the claim -- whether

16     that file will be -- there will be attempt to prove that

17     that file is one -- because it will have electrodiagnostic

18     testing is one that they will seek to prove is -- suffers

19     from -- and I mean, you -- as I understand your answer, and

20     I'm talking with plaintiff's now, as I understand what

21     you're telling me, you're going to be contending that each

22     of those claims files suffers from all four of these

23     infirmities.

24             MR. STERN:   Each of the services.

25             THE COURT:  Each of the ones in which there was

1    electrodiagnostic testing.  Thank you. I need to be

2    specific. Each of the claims files which seek reimbursement

3    for electrodiagnostic testing will be -- it will be

4    contended by the plaintiffs that they suffer from all four

5    of these infirmities.

6            MR. STERN:   That is correct, Your Honor.

7            THE COURT:  So if you put that in writing, then I

8    think that will be a sufficient -- that will give you

9    sufficient direction, will it not, as to which claim files

10   you're going to have to defend, not only because they were

11   for services rendered by an inappropriate corporation, but

12   also on the separate ground that they were never -- that

13   they're fraudulent for other reasons.

14           MR. FURMAN: Well, I understand counsel's offer.

15           THE COURT:  Not their offer. I'm suggesting that

16   that may be a sufficient answer to all of the -- to all --

17   four, five, seven and eight because that's what you're --

18   they're identifying which claims the plaintiff is asserting

19   contains services that were never rendered.

20           They're saying any electrodiagnostic -- any claim

21   file which seeks reimbursement for electrodiagnostic

22   testing contains services that were never rendered and

23   never rendered as billed, and not medically necessary and

24   of no diagnostic value.

25           MR. FURMAN:   Your Honor, what I'm essentially

1    trying to find out in part is whether or not there's an

2    allegation that there were no -- in any instance that there

3    were no services rendered; that it's a phantom claim.

4    Maybe I could interpose another interrogatory and if I have

5    to, I'll do that.

6              But they're the ones who chose to make a

7    distinction between never rendered and never rendered as

8    billed, and I'm not sure that I understand if there is a

9    distinction there.  And that's partly the reason for this

10   interrogatory.

11              I mean, I would ask -- I mean, it seems to me

12   that they could give you -- if I understand what they're

13   saying to be -- if I understand what they're saying, they

14   would -- if they gave you four separate answers, they could

15   say for interrogatory 4, the claims which the plaintiff

16   asserts contain services that were never rendered are all

17   claims submitted for electrodiagnostic testing and that

18   would identify which claims, and they could give you the

19   same answer for were never rendered as billed and were not

20   medically necessary and were of no diagnostic value,

21   because as I understand what they're telling me now, that's

22   what their contention is.

23              I don't know what you mean necessarily by phantom

24   claim but --

25              MR. FURMAN: Well, it seems to me that --

1          THE COURT:  One of the issues that I seem to

2    recall from last time is that there may be a -- there will

3    be a dispute about whether certain kind of testing and

4    making a claim under a certain kind of code is an accurate

5    statement of what kind service was rendered.

6          But essentially, Mr. Tsirelman, as I recall, was

7    saying well, we were doing X, but there was no code for X

8    so we billed it under Y and Z, or a combination of Y and Z.

9          And the -- now that strikes me as being -- saying

10   that those claims were never rendered and to the extent

11   that they were saying they provided those services, they

12   were not rendered -- the services they did provide were not

13   rendered as billed, both -- if you follow what I'm saying.

14         In other words, they provide a service. It didn't

15   match up with the codes for which they submitted the claim.

16         So the claim has -- says codes -- you know, one

17   and two, and the services in one and two were never

18   rendered and then separately, to the extent that they're

19   saying that I did X, those services were not rendered as

20   billed.

21         I mean, I don't know if I'm -- you know, I'm

22   arguing and I shouldn't be doing that. I'm surmising.

23         But I guess what I'm saying is to the extent that

24   the defendant -- the plaintiffs are going to basically say

25   that every claim file for -- that has a claim for

1    electrodiagnostic testing contains all four of these

2    infirmities, well, then they've identified the claims

3    files.

4            Now maybe there's a different way that you can

5    ask the question.

6            MR. FURMAN: Oh, I think there is.

7            THE COURT:  But, but --

8            MR. FURMAN: I think it's incumbent upon me to

9    interpose a --

10           THE COURT:  But they -- I mean, you're trying to

11   -- I guess you're trying to nail down exactly how they're

12   claiming -- which is okay. Which is okay.  But I think in

13   some ways they're pretty much --

14           MR. FURMAN: I think that they're -- with all due

15   respect, Your Honor, I think the plaintiffs are being

16   disingenuous by using those terms and when, in fact, they -

17   - what they really mean is not rendered as billed and

18   they're then saying never rendered, and it's my intention

19   to interpose another short interrogatory or two to clarify

20   what's meant by that, because it's not clear to me -- and I

21   think that I would like to know whether or not there are

22   instances where they were claims made where there was no

23   services rendered to a patient.

24           THE COURT:  I don't know if they're making that

25   claim.

1           MR. FURMAN: I don't know either.  That's my
2      point.
3           THE COURT:  Well, why did don't you ask that
4      question?
5           MR. FURMAN: I'm not going to ask that question in
6      open court.
7           THE COURT:  Well, no, no, no. I mean, I guess
8      what I'm saying is --
9           MR. FURMAN: I will ask that --
10          THE COURT:  Maybe you can serve that
11     interrogatory --
12          MR. FURMAN: I haven't served that interrogatory
13     but --
14          THE COURT:  That's not exactly the interrogatory
15     that was asked here.
16          MR. FURMAN: The last point then I have to make
17     though is what about the other non-electrodiagnostic and
18     non-Synaptic claims?
19          THE COURT:  What about them?
20          MR. FURMAN: Well, how do those -- where do those
21     fit in in terms of their allegations?
22          THE COURT:  I don't know.
23          MR. FURMAN: But they're saying in their answer --
24          THE COURT:  But I don't -- the interrogatory asks
25     you only to identify which claims the plaintiffs assert

18

1    contain services that fall within those four categories.

2    That's what -- I guess, each of the four -- you've got

3    four, five, seven and eight.

4              So each of those asks for one of the categories,

5    which ones fall into that category. I haven't looked at the

6    exact interrogatory.

7              Yes, right.  Four deals with never rendered.

8    Five deals with never rendered as billed.  Seven deals with

9    not medically necessary and eight, no diagnostic value.

10             So you need to supplement your answer to provide

11   the information that you just provided to me for each of

12   those four interrogatories.

13             In other words, to say what you just said.  Every

14   claim that has electrodiagnostic testing --

15             MR. STERN:   And, in fact, Your Honor, that's in

16   our opposition to the motion, so we'll just take that and

17   put it in the response.

18             THE COURT:  It's in the opposition to the motion.

19             MR. STERN:   We'll commit to that --

20             THE COURT:  Oh, I see.  All right.

21             MR. FURMAN: My question is could those claims

22   that don't have those procedure codes --

23             THE COURT:  Right.  What --

24             MR. FURMAN: -- they're going to provide me with

25   what categories of alleged fraud those claims fall into.

19

1        THE COURT:  I don't know. Did you ask for that?

2        MR. FURMAN: I believe that was -- I believe --

3        THE COURT:  The other ones don't fall into any of

4   those four categories.

5        MR. FURMAN: I don't know that.

6        THE COURT:  No, they do, because if they identify

7   those that fall within the categories by implication, the

8   others are not within those four categories.

9        So I don't know what other fraud they maintain as

10  to those other than the -- that they are entitled to

11  reimburse them for those because there are claims that

12  shouldn't have been made because they were made by entities

13  that were not operated by doctors; not truly operated by

14  physicians.

15       See I don't know if these four categories of

16  fraud are the entire allegations of fraud in the complaint.

17  I don't know. I'm not familiar enough with the complaint.

18       But that brings us to the end, doesn't it?

19       MR. FURMAN: Uh-hm.

20       MR. STERN:   It does, Your Honor.

21       THE COURT:  I can't believe it.  Well, it did

22  take us a half an hour or so to get through it.  Where do

23  we stand now?

24       I know I still owed a decision on Mr. Tsirelman's

25  interrogatories about where there are multiple parts -- the

20

1    multiple parts exceed the 50 limit and I've got a note to

2    look at that and I just haven't done it, but hopefully I'll

3    do that very shortly.

4              I'm getting bleary eyed looking at a number of

5    document requests in a number of other cases, but so -- but

6    I'll do that hopefully over the next day or two.

7              What -- have you started making any production of

8    documents at all?  I'm talking to the plaintiffs now.

9              MR. STERN:   Your Honor, we've started assembling

10   documents and getting them ready for production.

11             THE COURT:  Okay.  What -- when will you start

12   being able to roll them out?  You've gotten rid of all the

13   documents in the other case now, right?

14             MR. STERN:   Not quite, but we're in the process.

15   We had to make room for this case.

16             I anticipate, or we anticipate, being able to

17   produce close to 250 claim files within the next month.

18             THE COURT:  How many total claim files are we

19   talking about?

20             MR. STERN:   I don't have the exact number, but

21   it's in the thousand.

22             THE COURT:  In the thousands.  And that would be

23   for all defendants.  All non-settling defendants.

24             MR. STERN:   Correct.

25             THE COURT:  Aside from Mr. Furman's clients, who

1    remains?

2            MR. STERN:   Emma Benjamin, Mr. Schioppi's --

3            THE COURT:  Well, Mr. Schiopppi's --

4            MR. STERN:   And Lyubov Moysik is still on the

5    case.

6            THE COURT:  And you both --

7            MR. STERN:   And -- Lyubov Moysik and --

8            MR. MARVIN:  Daniel Marvin for the plaintiff.

9    Yakov Raufov is still in --

10           THE COURT:  Do I have -- I had a motion with

11    respect to him.  Did I rule on that?

12           MS. BURGOS:   Sandra Burgos for the plaintiffs,

13    Your Honor.  With respect to the discovery motion, Your

14    Honor held that in abeyance because the parties are

15    negotiating a settlement in good faith and we anticipate

16    being able to finalize those terms.

17           THE COURT:  All right.  And Moysik, where is he?

18    Has he appeared? I don't remember seeing him ever or

19    anybody on his behalf, but that doesn't mean --

20           MR. STERN:   Charles Emma is counsel for Lyubov

21    Moysik and he did appear, I believe, at one hearing.

22           THE COURT:  Yes, he did.

23           MR. STERN:   And we are in settlement

24    negotiations with him as well.

25           THE COURT:  Oh, you are.  But there's no motion

1      with respect to his discovery, as I recall.

2                MS. BURGOS:   No, Your Honor.

3                THE COURT:  So, are we -- what do you plan --

4      what's the next step in this discovery process, once you

5      provide the additional discovery pursuant to rulings?  What

6      are we -- we're going to move to depositions, I gather?

7                MR. STERN:   After the production of documents,

8      Your Honor, and subpoenaing the records, getting the

9      protective order before Your Honor, a confidentiality

10     order, which we'll file soon, and then we should be able to

11     move forward.

12               THE COURT:  And you're going to depose each of

13     the individuals, as well as the -- I guess, the PC's.

14               Mr. Schioppi was permitted to withdraw, was he

15     not, with respect to some of the PC's.  Not yet?

16               MR. STERN:   Not yet, Your Honor.

17               MS. BURGOS:   Your Honor, he still hadn't made an

18     application to Your Honor seeking to withdraw with respect

19     to them and as a matter of fact, at the last court hearing,

20     what Your Honor had indicated was that the plaintiffs were

21     entitled to separate discovery responses from both the

22     PC's, even those that had been dissolved, and Emma Benjamin

23     in her individual capacity.

24               THE COURT:  Okay. Well, I'm sure I'll see

25     applications at some point with respect to that.

23

1          Okay.  Do I need to set some deadlines for things

2   to get done or can I just see you in 90 days and see what

3   progress is at that point.

4          MR. FURMAN: I think I would prefer that, Judge. I

5   mean, we should say that we are --

6          THE COURT:  You're talking too.

7          MR. FURMAN: We are also talking and we have been

8   somewhat interrupted by this process, but there had been --

9          THE COURT:  Well, hopefully --

10         MR. FURMAN: -- there have actually been meetings

11  between the parties themselves and --

12         THE COURT:  You mean directly.  You mean between

13  the --

14         MR. STERN:   With counsel present.

15         MR. FURMAN: With counsel and --

16         THE COURT: I see.  Well, that's usually --

17         MR. FURMAN: There actually has been some progress

18  there. And it wasn't really going fast enough so we were

19  sort of waylaid into this but --

20         THE COURT:  Okay.  Well, that's encouraging, but

21  I do have to keep the fire going here to keep --

22         MR. FURMAN:  I understand.

23         THE COURT:  No, no. I know you do.  And I -- but

24  so -- well, let me do this. Let me say that -- I don't know

25  if I set deadlines for the completion -- for the provision

24

1    of the discovery that was the subject of the various

2    motions here.

3             In other words, I don't know if I've set any

4    deadlines for actually amending interrogatories,

5    supplementing interrogatory responses or providing the

6    documents that were the subject of the orders.

7             Should I -- I should probably set a deadline for

8    that, right?

9             MR. STERN:   The only thing I would ask, Your

10   Honor, is, you know, with the exception of the production

11   of documents, which will be on a rolling basis, you know,

12   Mr. Furman has a lot of patient records --

13            MR. FURMAN: Very much so.

14            MR. STERN:   -- and we have a lot of claim files

15   that we have been assembling and reviewing and that we'll

16   have to produce as well.

17            So if the -- if any order could be at least

18   restricted to supplementing responses and things of that

19   nature, it would be appreciated.

20            THE COURT:  Are you saying that I should enter an

21   order that excludes claims files and patient files from the

22   deadline?   Is that what you're saying, essentially?

23            MR. STERN:   Yes. I mean, production could be on

24   a rolling basis.

25            THE COURT:  I understand. I understand.  But, in

1    other words -- but there are other types of documents that

2    it seems to me can be assembled and are less voluminous and

3    can be assembled and produced by a date certain.

4              And I'm happy to give you -- to be reasonable

5    that that; 30 days, 45 days, whatever you want.  I

6    shouldn't say whatever you want, but something like that.

7              And I understand that there are numerous claims

8    files and there are probably numerous patient files which

9    ought to be excluded from that and which can be subject to

10   a separate deadline, which I don't need to set just yet, as

11   long as I have the confidence that people are at least

12   moving forward on that process.

13             Now --

14             MR. STERN:   That's been fine, Your Honor.

15             THE COURT:  -- does that -- is a -- what's a

16   reasonable deadline for me to say that supplements to

17   interrogatory responses and supplements to production of

18   documents other than those categories should be done by?

19             MR. FURMAN: I just point out that we are on the

20   edge of the summer months, so -- which -- it's not me. It's

21   just that I've got a lot of clients --

22             THE COURT:  I understand.

23             MR. FURMAN: -- and it's a coordination of

24   everybody saying --

25             THE COURT:  You want me to get -- all right. You

1    want me to make it 60 days?  The end of August?

2            MR. FURMAN: Well, I was rather hoping we would be

3    able to get it into September.  End of August is not a --

4            MR. STERN:   For the non-claim files --

5            THE COURT:  No, I'm talking about for the non-

6    claim files.

7            MR. FURMAN: Right. I understand.

8            THE COURT:  And the non-patient files. I mean,

9    you don't -- your clients have to do the assembling, not

10   you.  Your clients --

11           MR. FURMAN: Well --

12           THE COURT:  Chasing them down -- but you see my

13   concern, frankly, Mr. Furman, is this; that if I set a

14   deadline that's way out there, then this is just going to

15   be back burnered by them and then I'm just going to end up

16   having to extend that deadline anyway.

17           MR. FURMAN: I don't think so, with all due

18   respect.

19           THE COURT:  No?  Why?

20           MR. FURMAN: For lots of other reasons.

21           THE COURT:  For lots of other reasons.  Well --

22           MR. FURMAN: For reasons regarding my relationship

23   with the clients.

24           THE COURT:  Well, I hope that doesn't mean you're

25   going to be seeking leave to withdraw soon, but --

1          MR. FURMAN: I hope not either, but there -- I

2     spent a lot of time on this and --

3          THE COURT:  Well, it's been my experience --

4          MR. FURMAN: They're going to have to be in touch

5     with me relatively shortly and assembling all the things

6     that they need to assemble, so I don't think that I'm going

7     to be able to let this thing go until waking up on

8     September 1st and saying by the way, I need this in a week.

9     I mean, I don't think it's going to go that way.

10         THE COURT:  Well, the one thing that in my

11    experience has helped move people towards settlement is

12    having litigation obligations and deadlines that they have

13    to meet.  That puts the -- that tends to put attention to

14    the concept of settlement on the front burner, as opposed

15    to on the back burner.

16         MR. FURMAN: I appreciate that, Judge.  Judge,

17    give us 60 days, to the end of August --

18         THE COURT:  They're thinking that's too much, but

19    I will give you till the end of August.  But I do -- I

20    expect that -- this is something you need to tell your

21    clients.

22         I expect that to the extent that they're going to

23    be seeking any extensions they're going to have to show me

24    that they've already produced and gathered things, and that

25    they've really made an effort to comply with that order

28

1   because if it appears to me that they haven't, then I'm

2   going to have to concern myself with what kinds of

3   sanctions to impose.

4           MR. FURMAN: I appreciate that.  And, Your Honor,

5   may I ask -- and it's actually fine with me if we have that

6   in a written order.

7           THE COURT:  Oh, I'm going to put that in writing.

8           MR. FURMAN:  Because that's something that I

9   would like to be able to send to my clients so that they

10  can see it in writing.

11          THE COURT:  Okay.  I'll draft a separate order.

12  And it won't be just in the conference minutes.

13          I'll draft a separate order and then it will be

14  separately signed and it will say, basically, that by

15  August 31st all documents, other than claims files and

16  patient files that -- either by court order or by agreement

17  of the parties, is to be produced -- or have to be produced

18  and supplements to interrogatory responses to the extent

19  ordered by the court have to be provided.

20          So I'll -- that's basically what the order will

21  say.

22          MR. FURMAN: That's fine.

23          THE COURT:  It will exempt claims file and

24  patient files, but it will say that as to those files it is

25  expected that production will begin to occur within the 60-

29

1    day period but -- on a rolling basis such that the

2    completion will occur at some point afterwards.

3                 MR. FURMAN: Very good.

4                 THE COURT:  It's not subject to the same

5    deadline.

6                 MR. STERN:   Thank you, Your Honor.

7                 THE COURT:  Okay.  I just need to see you again

8    then -- should I see you in -- at the end of September and

9    see where we are?

10                MR. STERN:   That's be fine, Your Honor.

11                THE COURT:  What's a good time of day for folks?

12   Morning or afternoon?

13                MR. STERN:   Afternoon is better, Your Honor, if

14   possible.

15                THE COURT:  Mr. --

16                MR. FURMAN: I agree.

17                THE COURT:  Okay. September 30th, Thursday

18   afternoon, at 2 o'clock.

19                MR. FURMAN: That's fine, Judge.

20                MR. STERN:   That's fine with plaintiffs, Your

21   Honor.

22                THE COURT:  I'll see you then, if not sooner.

23   Thank you.

24                MS. BURGOS:   Thank you, Your Honor.

25                MR. FURMAN: Thank you, Your Honor.

30

1          MR. STERN:   Have a nice summer, Your Honor.

2          THE COURT:  You, too.

3      (Proceedings concluded at 2:58 p.m.)

4      I, CHRISTINE FIORE, Certified Electronic Court

5  Reporter and Transcriber and court-approved transcriber,

6  certify that the foregoing is a correct transcript from the

7  official electronic sound recording of the proceedings in

8  the above-entitled matter.

9

10        *Christine Fiore*

11  _____          July 1, 2010

12      Christine Fiore, CERT

13

14

15

16

17

18

19

20

21

22

23

24

25