**STERN & MONTANA, LLP**
TRINITY CENTRE
115 BROADWAY
NEW YORK, NEW YORK 10006

TELEPHONE: (212) 532-8100
FACSIMILE: (212) 532-7271
E-MAIL: info@stern-montana.com
www.stern-montana.com

November 1, 2010

**VIA ELECTRONIC FILING**

Hon. Viktor V. Pohorelsky
United States Magistrate Judge
United States District Court
225 Cadman Plaza
Brooklyn, New York 11201

Re:   **Allstate Insurance Company, et al. v. Mark Mirvis, et al.**
      **CV 08-4405 (SLT)(VVP)**

Dear Magistrate Judge Pohorelsky:

  We are counsel to Plaintiffs in the above-referenced matter, and write to respectfully apprise the Court areas of inquiry (in addition to the areas of inquiry which were provided to the Court during the October 28, 2010 conference) which we believe the Court should focus on in its review of the tax returns and related documents provided by Defendant Gary Tsirelman (the "Defendant") to the Court for *in camera* inspection.

  In particular, Plaintiffs believe that relevant information which may be contained in Defendant Tsirelman's tax returns include: 1) expenses incurred by Defendant in 2000 and 2001 relating to his purported ownership of Lamed Medical, P.C.; 2) loans made to, or received from, any Named Defendant; 4) monies received from or provided to any Named Defendant; 3) capital gains or capital loses incurred in association with the purported transfer of ownership of Lamed Medical, P.C. to Defendant in 2000, or from Defendant in 2001.[1]  Plaintiffs also respectfully remind the Court that given the nature of the Complaint, which include allegations that Lamed Medical, P.C. was owned, controlled and operated by laypersons in violation of New York State law, the *omission* of information in Defendant Tsirelman's tax documents regarding the transfer of ownership of Lamed Medical, P.C. to, or from him, would be material and relevant to Plaintiffs claims.  In that regard, to the extent that

---

[1] Plaintiffs apprised the Court of the relevancy of these areas of inquiry during the May 4, 2010 court conference, and have attached a copy of the relevant potion of that day's transcript hereto for the Court's reference.

Cont/d…

STERN & MONTANA, LLP

November 1, 2010
Page 2

Defendant has failed to provide the Court with his 2000 and/or 2001 tax records, Plaintiffs respectfully request that Defendant be directed to do so. As indicated above, 2000 and 2001 are years in which Defendant purportedly engaged in the transfer of Lamed Medical, P.C. Accordingly, Defendant's' tax documents from those years are manifestly relevant to Plaintiffs claims.

    Thank you for your consideration in this regard.

                                                  Respectfully submitted,

                                                  Stern & Montana, LLP

                                                  By: _____
                                                      Daniel S. Marvin (DM-7106)

cc:      Distribution List (Via electronic filing)

815845.doc

43

1          THE COURT: The question is the individual tax
2  returns.  My question for the plaintiffs is if they're going
3  to give you bank records and that information what are the
4  individual tax returns going to show?  I guess -- do they --
5  what is it that the individual tax returns will provide to
6  you?
7          MS. BURGOS: Sandra Burgos again on behalf of the
8  plaintiffs, Your Honor.  What -- among the information that
9  the personal tax returns will contain that are not or that we
10 don't anticipate would be disclosed either in the corporate
11 bank documents or in the corporate tax returns are those items
12 that the defendants identify as personal expenses which may be
13 a misnoma for --
14         THE COURT: Where would that be identified in an
15 individual tax return?
16         MS. BURGOS: In their tax returns it would be
17 identified, Your Honor, as to what their personal expenses
18 are.  In addition to that, there --
19         THE COURT: What tax returns file -- I don't itemize
20 my personal expenses.
21         MS. BURGOS: It can be done though, Your Honor. They
22 can identify certain personal expenses to the extent, for
23 example, if certain -- if the defendants chose not to incur
24 all of the expenses purportedly associated with the PCs
25 through the PC and instead through themselves individually

44

1   those would presumably be itemized on their personal tax
2   returns.
3           THE COURT: I'm not sure what -- what are you talking
4   about? What kind of personal expenses?
5           MS. BURGOS: Personal expenses, Your Honor, for
6   example, any individual expenses that they incurred relating
7   to the PCs that are not disclosed on the corporate tax
8   returns. In addition to that --
9           THE COURT: I'm still -- I'm not following that.
10  What do you mean by personal expenses?
11          MS. BURGOS: Investments, for example, Your Honor.
12  Mr. Furman in a footnote in opposition to plaintiffs'
13  application indicates that the $250,000.00 that were -- that
14  the plaintiffs allege was funneled from the PCs to the lay
15  persons was an investment. Well, that information whether it
16  was a capital gain or a capital loss would be disclosed in
17  their personal tax returns as opposed to some other form of
18  financial document.
19          To the extent that the individual defendants chose
20  to repay "loans" to either the lay person individuals, the
21  money laundering companies, the billing management companies
22  and other non parties that were owned, operated, managed and
23  controlled by the lay persons, any interest paid on those
24  loans would be reflected in their individual tax returns as
25  opposed to any other financial record, and that's information

45

1   that would be exclusively available through that type of
2   financial documentation, Your Honor.
3           THE COURT: So you -- you would suggest that these --
4   that their connections to the PCs could be reflected in those
5   kinds of disclosures in their tax returns?
6           MR. STERN: Your Honor, Robert Stern for the
7   plaintiffs.  In addition to what Ms. Burgos has indicated,
8   another example of capital loss or gain reflected in the
9   personal tax returns would be in instances where a purported
10  owner transferred yet a PC to another purported owner. Under
11  such circumstances there may have been a capital gain or loss
12  reported.  Certainly we're entitled to know whether or not
13  those losses or gains were reported.
14          THE COURT: Well, I don't know that you are entitled
15  to know whether they were reported.  You're entitled to know
16  if that reflects an ownership interest or some kind of -- what
17  the extent of an ownership interest in a PC might be.
18          Mr. Furman.
19          MR. FURMAN: Your Honor, I think by giving them the
20  two years of personal records they're going to have and
21  they're going to -- three years.
22          THE COURT: I know you're trying to roll it back.
23          MR. FURMAN: They're going to choose which years they
24  want.  They're going to get a great deal of information I'm
25  sure by choosing the most appropriate or most potentially

46

appropriate years.  The other materials that they're now mentioning it strikes me as highly speculative and -- I mean they're receiving on the one instance that we have where one particular provider made an investment that was related to management company and I assume that that's on their -- that's reflected on their personal returns.  But there's no reason to believe that that is in fact duplicated by any other providers in this matter.  I don't really think that it's appropriate to just extrapolate like that into what becomes a pretty intrusive inquiry into now the personal banking records and the personal tax returns which again [inaudible] privacy interest which I think should be protected unless there's reason not to do so.

As a fall back I suppose --

THE COURT: I'll solve the problem this way.  You can produce the tax returns to me and I'll review them.

MR. STERN:  Your Honor, the only thing I would also request since you'll be looking at them in camera I do want to point out another issue which will [inaudible] some bizarre and relevant.

THE COURT: When they're produced -- let me just say this.  You're free to tell me what you think I should be looking for and I'll let Mr. Furman respond to that but --

MR. FURMAN: As long as that's done with notice to me.

47

1           THE COURT: Yes.  Whatever they want -- anything they
2  send to me they've got to send you a copy of obviously.  So
3  then when I conduct my review I'll know what I'm looking for
4  but --
5           MR. STERN:  Including the omission, Your Honor --
6           THE COURT: What?
7           MR. STERN:  Including the omission of the capital
8  loss or capital gains on a PC that was purportedly
9  transferred.  To us that would be relevant because it would
10 demonstrate that they didn't treat the PC as their own because
11 there was no loss or gain because in fact they never had an
12 interest in the PC.
13          THE COURT: Well, if you can tell me that there was a
14 capital -- that there was a transfer somewhere then you're
15 going to -- then you can identify a particular transfer and
16 then I'll see which -- you can do that in a letter.  Mr.
17 Furman will get a chance to see that.
18          MR. FURMAN:  My response may be that --
19          THE COURT: Listen, I am not going to remember what
20 your response may be.  I'm not even going to remember what
21 they just told me.  So let's wait until this happens.
22          Let me get back -- I'm organizing this approach
23 by -- first by looking at the defendants' -- I mean the
24 plaintiffs' letter.  The daily operation documents and the
25 patient files.  Let me --

48

1       MS. BURGOS: Sandra Burgos for the plaintiffs --
2       THE COURT: Let me go to -- I have request after
3  request here and I don't know that -- I don't understand why
4  you need 14 years of daily operations files. Many of these
5  requests are -- well, I'm going to take first the disputed
6  requests with respect to an individual, I guess the first
7  individual Myra. Right?
8       MR. STERN: Yes, Your Honor.
9       THE COURT: What I found to be left after reviewing
10 the defendants' submission yesterday was Document Request 2
11 had to do with the personal tax returns and what we did is
12 we -- I resolved that by having you produce those to me for
13 individuals, not for just Mr. Myra obviously.  Although it
14 looked like -- well, I don't -- and as to Document Request 3
15 as to Mr. Myra income received from any other named defendant.
16      MS. BURGOS: Your Honor, Sandra Burgos on behalf of
17 the plaintiffs.  Together with the other financial documents
18 is a category of similar financial documents that the
19 plaintiffs have requested from both the individual defendant
20 doctors and the PC defendants that relate to items such as
21 balance sheets, profit and loss statements, general ledgers,
22 any invoices reflecting expenses and other financial documents
23 identifying the revenue and expenses of the PC and both on
24 behalf of the PC defendants and the individual defendants, the
25 defendants have refused to provide either the documentation