**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

**ALLSTATE INSURANCE COMPANY,** *et al.*,

                             **Plaintiffs,**

          **-against-**

**MARK MIRVIS,** *et al.*,

                          **Defendants.**

                        **CV-08 4405 (SJ) (VVP)**

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION FOR A DEFAULT JUDGMENT AGAINST DEFENDANTS MARK MIRVIS, MARK
LUPOLOVER, MICHAEL BEZENYAN, RUVEN KATZ, IGOR ZHURAVSKY, GEORGY
STATNROSH, LEONID SLUTSKY, YEFIM SOSONKIN, 825 BROADWAY MEDICAL CARE,
P.C., OCEAN L. MANAGEMENT GROUP INC., FLATLANDS BEST MANAGEMENT
GROUP, INC., HILLMED MANAGEMENT, INC., B-WAY MANAGEMENT, INC., FLAT-80
MANAGEMENT, INC., NORTMED MANAGEMENT, INC., DEL PRADO ONE, LLC, DEL
PRADO TWO,  LLC, DEL PRADO THREE, LLC, DEL PRADO FOUR, LLC, EL DORADO
ONE, LLC, M&M OCEANFRONT, LLC, NE 10, LLC, NE 24, LLC AND TROPICANA ONE,
LLC PURSUANT TO Fed. R. Civ. P. 55**

**STERN & MONTANA, LLP**
**ATTORNEYS FOR PLAINTIFFS**
**TRINITY CENTRE**
**115 BROADWAY**
**NEW YORK, NEW YORK  10006**
**TELEPHONE NO.:  (212) 532-8100**

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................ *ii-iv*

INTRODUCTION ....................................................................................................................1

PRELIMINARY STATEMENT ..............................................................................................2

ARGUMENT ...........................................................................................................................5

   I.   DEFAULT JUDGEMENT SHOULD BE GRANTED AGAINST DEFENDANTS..........5

         1.   Defendant's Default Was Willful ................................................................6

         2.   Defendants' Have Failed to Set Forth a Meritorious Defense .............................8

         3.   Prejudice ................................................................................................9

         4.   Plaintiffs' Complaint States Valid Causes of Action With Respect to its First Through Ninth Claims for Relief .....................................................................11

                  (i) Rico Person ...................................................................12

                  (ii) RICO Enterprise. ..........................................................13

                  (iii) Pattern of Racketeering Activity ......................................16

                  (iv) Participation in the Racketeering Activities. ........................19

                  (v) The Acts Alleged in the Complaint Affect Interstate Commerce. ..........23

         5.   Plaintiffs' Complaint States Valid Causes of Action With Respect to its Tenth Claim for Relief ......................................................................................24

         CONCLUSION .......................................................................................26

# **TABLE OF AUTHORITIES**

## **Cases**

*131 Main St. Associates v. Manko*, 897 F. Supp. 1507 (S.D.N.Y. 1995)......................................16

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, CV-042934ERK, 2005 WL 3710370
 (E.D.N.Y. Feb. 22, 2005)...............................................................................................16, 20

*Ainbinder v. Money Ctr. Fin. Grp., Inc.*, CV 10-5270 SJF AKT, 2013 WL 1335997
 (E.D.N.Y. Feb. 28, 2013)...................................................................................................5

*Allstate Ins. Co. v. Halima*, 2009 U.S. Dist. LEXIS 22443
 (E.D.N.Y. March 19, 2009)...............................................................................................13

*Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384 (E.D.N.Y. 2008)..................................13, 20

*Allstate Ins. Co. v. Valley Phys. Med.*, No. 05–CV–5932, 2009 WL 3245388 (E.D.N.Y.
 Sept. 30, 2009)..................................................................................................................25

*Stuart v. Kempthorne,* 99-CV-8163, 2007 WL 2071605, (E.D.N.Y.2007)..................................10

*Better Kids, Inc. v. Kids in Need, Inc.*, CV-06-0023 DRH AKT, 2012 WL 4483000
 (E.D.N.Y. Aug. 28, 2012),............................................................................................6, 10

*Brand v. NCC Corp.*, 540 F. Supp. 562 (E.D.Pa.1982)............................................................8

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229 (2d Cir. 1999)................18

*Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir.1994) ................................9

*Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood*, No. 11–CV–46,
 2012 WL 194075 (E.D.N.Y. Jan. 17, 2012)..........................................................................8

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) .....................................................5, 8

*Fed. Election Comm'n v. Beatty for Cong. Comm.*, 86 CIV. 3894 (RLC), 1987 WL
 14658 (S.D.N.Y. Oct. 23, 1987).........................................................................................7

*First City Nat'l Bank & Trust Co. v. FDIC*, 730 F.Supp. 501 (E.D.N.Y.1990)..........................19

*Gov't Employees Ins. Co. v. Damien*, 10-CV-5409 SLT JMA, 2011 WL 5976071
 (E.D.N.Y. Nov. 3, 2011) ...........................................................................................6, 8, 10

*Gov't Employees Ins. Co. v. Hollis Med. Care, P.C.*, No. 10–CV–4341, 2011 WL
 5507426 (E.D.N.Y. Nov. 9, 2011)................................................................................24, 25

*Gov't Employees Ins. Co. v Right Solution Med. Supply, Inc.*, 12-CV-0908 MKB JO, 2012 WL 6617422 (E.D.N.Y. Dec. 19, 2012)……………………………………………………8

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,  109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989)…………16

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21 (2d Cir.1990) ……………………………24

*Jacobson v. Cooper*, 882 F.2d 717 (2d Cir. 1989) …………………………………………12, 13

*Khaimi v. Schonberger*, 664 F. Supp. 54 (E.D.N.Y. 1987) ………………………………………23

*Mack Fin. Serv. v. Poczatek*, No. CV–10–3799, 2011 WL 4628695 (E.D.N.Y. Aug. 30, 2011)………………………………………………………………………………………8

*Metromedia Co. v. Fugazy*, 983 F.2d 350 (2d Cir. 1992) ………………………… 11, 18, 19

*Morin v. Trupin*, 835 F. Supp. 126 (S.D.N.Y.1993) ………………………………………24

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5 (2d Cir. 1983) ………………………………………11

*Nafta v. Feniks Int'l House of Trade (U.S.A.) Inc.*, 932 F. Supp. 422 (E.D.N.Y. 1996)……………18

*O'Callaghan v. Sifre*, 242 F.R.D. 69 (S.D.N.Y. 2007) ………………………………………5

*Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167 (2d Cir. 2001) ………………………………5

*Richardson Greenshields Securities, Inc. v. Int'l Petroleum Corp.*, No. 84 Civ. 2680 (MJL) (S.D.N.Y. April 3, 1985) ………………………………………………………8

*S.E.C. v. McNulty*, 137 F.3d 732 (2d Cir. 1998)………………………………………5, 6

*Said v. SBS Electronics, Inc.*, No. CV–08–3067, 2010 WL 1265186 (E.D.N.Y. Mar. 31, 2010)………………………………………………………………………………11

*Sedima S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479 (1985) …………………………………11

*Sony Corp. v. Elm Street Electronics, Inc.* 800 F.2d 317 (2d Cir.1986)………………….............9

*State Farm Mut. Auto. Ins. Co. v Cohan*, 09-CV-2990 (JS), 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010)………………………………………………………….…9

*State Farm Mut. Auto. Ins. Co. v. CPT Med. Services, P.C.*, 04CV5045(ILG), 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008)) ……………………………… 16, 20, 25

*State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F Supp 2d 212 (E.D.N.Y 2009)…………… 11, 24

*State Farm Mut. Auto. Ins. Co. v. Kalika*, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. 2006)………………………………………………………………………13

*United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008) ............................................................23

*U.S. v. Applins*, 637 F.3d 59, 75 (2d Cir.2011) ..................................................................24

*United Air Lines, Inc. v. United Airways, Ltd.*, 09-CV-4743 KAM JMA, 2013 WL 1290930 (E.D.N.Y. Mar. 4, 2013) ...............................................................6, 8, 10

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) ......................................................18

*United States v. Blankenship*, 746 F.2d 233  (5th Cir. 1984) ............................................17

*United States v. Bortnovsky*, 879 F.2d 30 (2d Cir. 1989) ...................................................16

*United States v. Busacca*, 936 F.2d 232 (6th Cir. 1991) ...................................................18

*United States v. Cline*, 655 F. Supp. 796 (M.D. La. 1987) ................................................17

*United States v. O'Connor*, 910 F.2d 1466 (7th Cir. 1990) ...............................................18

## Statutes

11 N.Y.C.R.R. § 65–3.16(a)(12)...............................................................................19

18 U.S.C. § 1341 .........................................................................................................25

18 U.S.C.A. § 1956 ....................................................................................................23

18 U.S.C. §§ 1961(1), 1(b), (3), (5), (c) (d).........................................12, 13, 16, 19, 23, 24

18 U.S.C. §§ 1962 (c), (d) ..................................................................11, 12, 13, 24

N.Y. Bus. Cop. Law §§ 1504(a), 1507 & 1508 (McKinney).........................................20

Insurance Law § 5102(a)(1)....................................................................................19

## Rules

Fed. R. Civ. P. 4(e) and (h) ...................................................................................6, 7

Fed. R. Civ. P. 55(b) ...................................................................................................1

Local Federal Rules for the Southern and Eatern Districts of  New York 55.1 and 55.2(a)........................................................................................................1

## Treatises

Federal Practice and Procedure § 2685 (3d ed.1998)). ...................................................5

## INTRODUCTION

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company and Allstate Property & Casualty Insurance Company ("Plaintiffs") respectfully submit this Reply Memorandum of Law in Further Support of their Application for Entry of a Default Judgment pursuant to Rules 55.1 and 55.2(a) of the Local Federal Rules for the Southern and Eastern Districts of New York and Fed. R. Civ. P. 55(b) (the "Motion") against Mark Mirvis ("Mirvis"), Mark Lupolover ("Lupolover"), Michael Bezenyan ("Bezenyan"), Ruven Katz ("Katz"), Igor Zhuravsky ("Zhuravsky"), Georgy Statnrosh a/k/a Gary Statnigrosh a/k/a/ Georgy Statnigrosh ("Statingrosh"), Leonid Slutsky ("Slutsky"), Yefim Sosonkin ("Sosonkin"), 825 Broadway Medical Care, P.C. ("825 Broadway"), Ocean L. Management Group Inc. ("Ocean L. Management"), Flatlands Best Management Group, Inc. ("Flatlands Best Management"), Hillmed Management, Inc. f/k/a 97-12 Associates, Inc., ("Hillmed Management"), B-Way Management, Inc. ("B-Way Management"), Flat-80 Management, Inc. ("Flat-80 Management"), Nortmed Management, Inc. ("Nortmed Management"), Del Prado One, LLC ("Del Prado One"), Del Prado Two,  LLC ("Del Prado Two"), Del Prado Three, LLC ("Del Prado Three"), Del Prado Four, LLC ("Del Prado Four"), El Dorado One, LLC (El Dorado One"), M&M Oceanfront, LLC ("M&M Oceanfront"), NE 10, LLC ("NE 10"), NE 24, LLC ("NE 24") and Tropicana One, LLC (Tropicana One") (collectively the "Defaulting Defendants") for their failure to answer or otherwise appear in the above captioned action. Plaintiffs also submit this   Reply Memorandum of Law in response to the respective letter responses filed by Igor Zhuravksy (Doc. No. 287) and Mark Lupolover (Doc. No. 288), and the "Response to Inquest" filed by Michael Bezenyan (Doc. No. 290) (collectively referred to as the "Defendant Responses.")

## PRELIMINARY STATEMENT

After four-and-a half years of blithely ignoring the instant matter, Defaulting Defendants Igor Zhuravsky, Mark Lupolover and Michael Bezenyan (the "Responding Defendants") have submitted, in response to Plaintiffs' Motion, factually inaccurate, self-serving statements which do little more than plead for the Court's mercy, without seeking any relief from the Court or disputing their liability or the damages sought against them. Putting aside that the only factors in the Second Circuit relevant to the Court's inquiry is whether the Defendants' defaults were willful, whether they have a meritorious defense, and the level of prejudice Plaintiffs would suffer if the instant motion were denied, the Responding Defendants offer no legal grounds that would militate against granting Plaintiffs' application for a default judgment against them. In that regard, the Responding Defendants' pleas for mercy cannot serve as a substitute for putting forth some legal basis to oppose Plaintiffs' Motion or obscure the plain fact that they willfully ignored Plaintiffs' Complaint and, at bottom, take no issue with the well plead allegations that detail their vast scheme to defraud Plaintiffs of millions of dollars. More importantly, since the Responding Defendants willfully ignored the Complaint, and because the evidence at bar overwhelmingly establishes their liability based on their participation in the criminal enterprises alleged therein, default judgments should be entered against all Defaulting Defendants, including but not limited to the Responding Defendants.

With regard to Defaulting Defendant Zhuravsky, his response to Plaintiffs' Motion reveals that not only did he fail to answer the Complaint, he also failed to read it. For example, he mistakenly states that Plaintiffs "seek recovery of claims paid to hospitals, ambulances lost wages, expenses, and ancillary providers," and that the Complaint "also seeks reimbursement for monies paid by other insurance carries." Of course, neither of those claims are true. Furthermore, Defendant Zhuravsky's response all but confirms the core allegation of the Complaint that he, along with the other Defendant Principals owned and operated the Defendant PCs. Indeed, notwithstanding that the

Defendant PCs purported to be separate entities owned and operated by licensed physicians, with separate management companies and different office managers, Defendant Zhuravsky, in his response, provided the Court with a letter purportedly sent to his counsel in which he details the exact amounts billed by and paid to each of the eight Defendant PCs by Plaintiffs; information which he claims were taken from the corporations' computers. Clearly, Defendant Zhuravsky's access to this detailed financial information demonstrates his control of the Defendant PCs. Moreover, the amount Defendant Zhuravsky claims was received by the Defendant PCs from Plaintiffs ($16,763,180.00) is over one-an-a-half million dollars *more* than the amount sought by Plaintiffs, ($15,219,133.67), confirming that Plaintiffs' are entitled to the damages sought.

Defendant Lupolover's one page response is equally unavailing. In the response, Defendant Lupolover does little more than deny the allegations of the Complaint, claim that he can not afford to litigate the matter, and then brazenly belittles the damage suffered by Plaintiffs by stating that the amount billed to Allstate by the Defendants during the period alleged in the Complaint "is average or below" [that paid to other providers], amazingly inferring that Defendant's fraud was therefore somehow acceptable.[1]

In addition, Defendant Bezenyan's response, which was signed before a Notary Public, is similarly futile in its complete lack of substance. Furthermore, in his response, Defendant Bezenyan perjured himself by claiming that the instant law suit was discharged in bankruptcy. *See.* Doc. No. 290 at ¶ 3. To the contrary, on or about October 30, 2009, Defendant Bezenyan signed a Stipulation and Agreement, which was so ordered by the United States bankruptcy Court for the District of New Jersey in which Defendant Bezenyan agreed that all of his debts to Allstate related to the

---

[1] If, after reviewing the Complaint, as well as the evidence submitted in support of Plaintiffs' Motion for a default judgment, and cognizant of their perilous status based on their respective defaults, the Defaulting Defendants were going to show any contrition or remorse, Defendant Lupolover's statement that the sting of Defendants' fraud could have been worse put any such notions to rest. Defendant Luperlover's letter response in opposition to Plaintiffs' Motion for default judgment is as defiant as Defendants' scheme to defraud was brazen. It is ironic they would ask for mercy when they constructed an enterprise and artifice that was merciless and relentless in its execution.

instant action are non-dischargeable in bankruptcy, that the exact amount owed to Allstate is to be determined by the this Court, and granting Allstate the right to apply to this Court for entry of a default judgment in this action and proceed to final judgment. A Copy of the October 30, 2009 Stipulation and Agreement is annexed hereto as Exh. "A." Putting aside the sheer irrelevance of the Defendant Responses, as noted above, the standard for the Court to weigh on the instant Motion is whether the Defaulting Defendants' defaults were willful, whether they have a meritorious defense, and the level of prejudice Plaintiffs would suffer if the instant motion were denied.

In that regard, there is no doubt that the Defaulting Defendants' defaults were willful. In the Second Circuit, when a defendant fails to respond to a properly served summons and complaint, as is the case here, their conduct is deemed willful for the purposes of default judgment. In addition, as a matter of law, when no answer is served, a meritorious defense can not be established. And because Plaintiffs have engaged in and concluded substantial discovery with the appearing parties, settled this matter with all appearing parties, have expended considerable resources seeking Clerks Entries of Default, filed the instant application against the Defaulting Defendants, and would be without recourse to seek the relief sought in the Complaint if the instant application were denied, the substantial prejudice which Plaintiffs would suffer if Default Judgment is not entered against the Defaulting Defendants is similarly not in doubt. Thus, it is respectfully submitted that the only issue left for the Court to consider is whether the Complaint sets forth viable causes of action against the Defaulting Defendants. In that regard, as set forth herein, as well as in Plaintiffs' Memorandum of Law in support of the instant motion, the Complaint's well-pled allegations establish that Plaintiffs' are entitled to Default Judgment on the Complaint's First through Tenth Causes of Action.

## ARGUMENT

### I.

## DEFAULT JUDGEMENT SHOULD BE GRANTED AGAINST DEFENDANTS

In determining whether to grant a default judgment, the Court may consider numerous factors, including whether plaintiff has been substantially prejudiced by the delay involved and whether the grounds for default are clearly established or in doubt. *O'Callaghan v. Sifre*, 242 F.R.D. 69, 73 (S.D.N.Y. 2007) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2685 (3d ed.1998)). As the Second Circuit has observed, the Court is guided by the same factors which apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-171 (2d Cir. 2001). These factors are (1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment. *See also Ainbinder v. Money Ctr. Fin. Grp., Inc.*, CV 10-5270 SJF AKT, 2013 WL 1335997 (E.D.N.Y. Feb. 28, 2013) *report and recommendation_adopted Ainbinder v Money Ctr. Fin. Group, Inc.*, 10-CV-5270 SJF AKT, 2013 WL 1335893 (E.D.NY. Mar. 25, 2013); *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998)10-CV-5270 SJF AKT, 2013 WL 1335893 (E.D.N.Y. Mar. 25, 2013) (noting factors); *Rodriguez v Almighty Cleaning, Inc.*, 784 F Supp 2d 114, 123 (E.D.N.Y. 2011) (same); *Baumgartner v Salzman*, 08-CV-2582 JS AKT), 2009 WL 2998958 (E.D.N.Y. Sept. 10, 2009) (same). When applying the foregoing three factors to the matter at bar, it is respectfully submitted that Default Judgment should be entered against the Defaulting Defendants.

1.   **Defendant's Default Was Willful**

First, there is no doubt that Defendants' defaults were willful. In that regard, the Second Circuit has interpreted "willfulness" in the context of a default as conduct that is more than merely negligent or careless. *S.E.C. v. McNulty,* 137 F.3d at 738, and when, as here, defendants are properly served with a summons and complaint and fail to respond, their conduct is deemed willful for the purposes of default judgment. *See e.g. Gesualdi v Magnolia Pro Trucking Inc.*, CV 11-4082 ADS AKT, 2012 WL 4036119 (E.D.N.Y. Aug. 20, 2012) *report and recommendation adopted sub nom. Gesualdi v Magnolia PRO Trucking Inc.*, 11-CV-4082 ADS AKT, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012) (defendants' failure to respond to the complaint adequately shows willfulness.); *see also Feel Better Kids, Inc. v. Kids in Need, Inc.*, CV-06-0023 DRH AKT, 2012 WL 4483000 (E.D.N.Y. Aug. 28, 2012), *report and recommendation adopted*, 06 CV 23 DRH AKT, 2012 WL 4483874 (E.D.N.Y. Sept. 27, 2012) (an unexplained failure to answer the Complaint is typically sufficient to demonstrate willfulness.); *Gov't Employees Ins. Co. v. Damien*, 10-CV-5409 SLT JMA, 2011 WL 5976071 (E.D.N.Y. Nov. 3, 2011), *report and recommendation adopted*, 10-CV-5409 SLT JMA, 2011 WL 6000571 (E.D.N.Y. Nov. 29, 2010) (proper service of a summons and complaint coupled with a failure to respond supports a conclusion that a default was willful.); *United Air Lines, Inc. v. United Airways, Ltd.*, 09-CV-4743 KAM JMA, 2013 WL 1290930 (E.D.N.Y. Mar. 4, 2013), *report and recommendation adopted*, 09-CV-4743 KAM JMA, 2013 WL 1290916 (E.D.N.Y. Mar. 28, 2013) (although plaintiff properly served the Complaint on defendants, they continually failed to appear and, therefore, defaulted willfully.).

At bar, as indicated in the affidavits of service annexed to the Marvin Decl. in support of the instant application (Doc. No. 265-3 at ¶¶ 15-29 and Exhibits "30" through "50" and "75," & the Clerk's Certificate of Defaults/Docket Entries annexed as Exhibits "51" through 72," "76", and "77"), the corporate Defaulting Defendants were all served in accordance with Fed. R. Civ. P. 4(h)

by serving copies of the Complaint upon a person and/or authorized agent of each corporation. Similarly, the individual Defaulting Defendants were all served in accordance with Fed. R. Civ. P. 4(e) by serving copies of the Complaint personally, leaving a copy at the individual's dwelling or usual place of abode with a person of suitable age and discretion, leaving a copy with a person authorized to accept service on behalf of the individual or by affixing a true copy to the individual's door and mailing a copy to the individual's last known address. Simply put, the defendants were all properly served with the Complaint, and there can be no dispute that they willfully failed to respond. *Govt. Employees Ins. Co. v Infinity Health Products, Ltd.*, 10-CV-5611 JG JMA, 2012 WL 1427796 (E.D.N.Y. Apr. 6, 2012) *report and recommendation adopted,* 10-CV-5611 JG JMA, 2012 WL 1432213 (E.D.N.Y. Apr. 25, 2012) (where the defaulting defendants were properly served with a copy of the summons and complaint and have failed to respond, that failure supports a conclusion that the default was willful); *Allstate Ins. Co. v Bogoraz*, 10-CV-5286 SJF ETB, 2012 WL 1655552 (E.D.N.Y. May 9, 2012) (willful conduct found where party was aware of case for over one year but took virtually no steps to defend himself against the action, failed to file or serve an answer to the complaint, failed to oppose the entry of default, failed to appear at court conferences, and failed to monitor the progress of this case).[2]

Furthermore, the Responding Defendant's specious claims of being indigent are of no moment in demonstrating that their defaults were not willful. The law is clear that a party who can not afford counsel may not decide, on its own, that it is relieved from participating in a litigation. *See Fed. Election Comm'n v. Beatty for Cong. Comm.*, 86 CIV. 3894 (RLC), 1987 WL 14658 (S.D.N.Y. Oct. 23, 1987) (rejecting defendant's claim that his default was not willful and reasoning that a party may not decide *ex parte* that it is absolved from defending an action because it can't afford to do so.). In addition, Defaulting Defendant Zhuravksy's claim of a willingness to settle this

---

[2] In fact, no Defendant, including the Responding Defendants, even contests service.

matter (Doc. No. 287 at p. 2) is similarly insufficient to demonstrate a lack of a willful default. *See e.g. Cohan*, 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010) (finding that Defendants who sought counsel and contended that the parties had a single settlement discussion engaged in a willful default by not responding to the Complaint); *Fed. Election Comm'n*, 1987 WL 14658 (the fact that settlement discussions may be in progress does not relieve a party from answering or otherwise defending an action.) (citing *Richardson Greenshields Securities, Inc. v. Int'l Petroleum Corp.*, No. 84 Civ. 2680 (MJL) (S.D.N.Y. April 3, 1985) and Brand *v. NCC Corp.*, 540 F. Supp. 562, 563–64 (E.D.Pa.1982)).

## 2.   Defendants' Have Failed to Set Forth a Meritorious Defense

The second factor for the Court to consider in determining if default judgment is appropriate is whether the Defendants have a meritorious defense. In that regard, when a defendant fails to answer the complaint, such is the case here with all of the Defaulting Defendants, a meritorious defense can not be established. *See e.g. Empire State Carpenters Welfare, et. al. v. Darken Architectural Wood*, No. 11–CV–46, 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) (when no answer is filed, the court is unable to make a determination as to whether the defendant has a meritorious defense to Plaintiff's allegations, thus weighing in favor of granting a default judgment); *Mack Fin. Serv. v. Poczatek*, No. CV–10–3799, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011) (same); *United Air Lines, Inc.*, 2013 WL 1290930 (same); *See also Infinity Health Products, Ltd.*, 2012 WL 1427796 (finding default judgment appropriate when the defaulting defendants failed to present any defense.); *Damien*, 2011 WL 5976071 (same).[3]   As noted, there is

---

[3] Although the Responding Defendants are not seeking affirmative relief to vacate the Clerk's entries of default entered against them, it is noted that their respective amorphous vague denials to the allegations of the Complaint, made for the first time more than four years after the service of the Complaint, are manifestly insufficient to support a defense to the Complaint. Even assuming that the Responding Defendants' denials were timely made, the law is clear that in order to demonstrate a meritorious defense, a defendant must present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty*, 137 F.3d at 740 (citations omitted) (internal quotation marks omitted),and evidence beyond mere conclusory denials is required. *Enron Oil Corp.*, 10 F.3d at 98. *See also See e.g. Govt. Employees Ins. Co. v Right Solution Med. Supply, Inc.*, 12-CV-0908 MKB JO, 2012 WL 6617422 (E.D.N.Y. Dec. 19, 2012)

no question that the Defaulting Defendants were all properly served with the Complaint, and their failures to serve Answers establishes their lack of a meritorious defense for the purposes of default judgment.

### 3.    Prejudice

Third, Plaintiffs will suffer prejudice if Default Judgment is not entered against Defendants. As a threshold matter, since Plaintiffs have established that Defaulting Defendants' defaults were willful, and that Defendant's have failed to identify meritorious defenses, a strong showing of prejudice is not necessary. *See Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 244 (2d Cir.1994) (finding that a strong showing of prejudice is not necessary where the defendant's default is willful and the defendant has failed to identify a meritorious defense.).   At any event, notwithstanding the low threshold of prejudice that Plaintiffs are required to meet, the facts demonstrate that Plaintiffs would suffer substantial prejudice if default judgment is not entered against the Defaulting Defendants.

Indeed, after years of litigation, this matter is finally nearing its conclusion. The Defaulting Defendants were served with the Complaint over four-and-a-half years ago, and Defaults have been entered against all of them. Plaintiffs have engaged in and concluded substantial discovery, as well as settled this matter with all appearing parties, and have expended considerable resources seeking Clerks Entries of Default, and filing the instant application against the Defaulting Defendants. Based on that alone, it is respectfully submitted that denying Plaintiffs Default Judgment would render Plaintiffs years of good-faith litigation, and expenditure of time and resources, for naught.

---

(finding that in the context of a No-fault fraud RICO action, Defendant's conclusory and self serving denial that he engaged in any wrongdoing with respect to any of the matters in the Complaint, even in the form of an affidavit, do not constitute anything approaching credible evidence of facts establishing a meritorious defense.). *Pecarksy* 249 F.3d at 173 (a movant must present more than conclusory denials when attempting to show the existence of a meritorious defense.). *Sony Corp. v. Elm Street Electronics, Inc.* 800 F.2d 317, 320 (2d Cir.1986) (mere conclusory statements do not demonstrate meritorious defense.); *State Farm Mut. Auto. Ins. Co. v Cohan*, 09-CV-2990 (JS), 2010 WL 890975 (E.D.N.Y. Mar. 8, 2010) *aff'd*, 409 Fed Appx 453 (2d Cir 2011) (Simply saying "I didn't do it" is not a meritorious defense) (citations omitted).

*See e.g. Bogoraz*, 12012 WL 1655552 (noting that the defendant was served with the complaint close to eighteen months ago, and default was entered against him approximately one year ago. Plaintiff Allstate had reached settlements with several of the defendants, and has moved for default judgment against the others. Third-party discovery, such as bank records, relating to the Defaulting Defendants has likely been destroyed in connection with bank and other third-party document retention policies. This case is now approaching its conclusion. Given the amount of time that has passed and the considerable resources Allstate claims it has expended in litigating this action, vacating the default would be inappropriate and prejudicial.). *See also Stuart v. Kempthorne,* 99-CV-8163, 2007 WL 2071605, *34 (E.D.N.Y.2007) (delays combined with increased litigation costs can constitute prejudice.); *In re Futterman,* 99-CV-8793, 2001 WL 282716, *4 (S.D.N.Y.2001) (same). *Cohan*, 2010 WL 890975 (same).

Moreover, if the Court were to deny Plaintiffs' application for Default Judgment, Plaintiffs would be without recourse to seek the relief sought in the Complaint, as there are no additional steps available to secure relief in this Court." *See e.g. Feel Better Kids, Inc.* 2012 WL 4483000 (finding prejudice where the denial of a default judgment motion would leave plaintiffs without any additional recourse to secure relief in through the Court.); *United Air Lines, Inc.,* 2013 WL 1290930 (same).  Indeed, it is respectfully submitted that in light of the Defaulting Defendants' failure to respond, requiring plaintiffs to take any additional prior to a determination on the merits would be unfairly prejudicial to Plaintiffs. *See e.g. Damien*, 2011 WL 5976071 (finding that in light of defendants' failure to respond to the Complaint, there is no indication that requiring the plaintiffs to take further steps prior to a determination on the merits would be effective in eliciting a response, and as a result, denying motion for default judgment would be unfairly prejudicial to the plaintiffs.).

**4. Plaintiffs' Complaint States Valid Causes of Action With Respect to its First Through Ninth Claims for Relief**

Having established that the Defaulting Defendants defaults were willful, that they failed to set forth meritorious defenses, and that Plaintiffs' would be prejudiced if the instant motion were denied, the Court must determine if Plaintiffs' allegations as set forth in the Complaint state valid claims. *See Said v. SBS Electronics, Inc.*, No. CV–08–3067, 2010 WL 1265186, at *2 (E.D.N.Y. Mar. 31, 2010) (with respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.). It is respectfully submitted that they do.

With respect to the Complaint's First through Ninth Causes, of Action, a substantive RICO violation requires (that a person) (i) conduct (ii) an enterprise (iii) through a pattern (iv) of racketeering activity." *Sedima S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 495 (1985); 18 U.S.C. § 1962(c). The Second Circuit has stated that a RICO plaintiff establishes its case of it shows that that (i) the defendant (ii) through the commission of two or more predicate acts (iii) constituting a "pattern" (iv) of "racketeering activity" (v) directly or indirectly participated in (vi) an "enterprise" (vii) the activities of which affected interstate or foreign commerce. *Moss v. Morgan Stanley, Inc.,* 719 F.2d 5, 17 (2d Cir. 1983); *see also  Allstate Ins. Co. v Val. Physical Medicine & Rehabilitation, P.C.,* 05-5934 DRH MLO, 2009 WL 3245388 (E.D.N.Y. Sept. 30, 2009) (noting elements in the context of a No-fault billing fraud case.); *State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F Supp 2d 212, 227 (E.D.N.Y 2009) (same). The RICO plaintiff must also demonstrate that it has been damaged by the racketeering activity perpetrated by the defendants. *See Metromedia Co. v. Fugazy*, 983 F.2d 350, 368 (2d Cir. 1992). As indicated in Plaintiffs' Memorandum of Law in support of the instant application, the Complaint clearly sets forth valid causes of action on its First through Ninth causes of action with respect to all Defaulting Defendants.

11

(i)     **Rico Person**

Plaintiffs' Complaint alleges that each of the Defaulting Defendants are  RICO "persons" and therefore subject to liability for violations of the RICO statute. A RICO person is "any individual or entity capable of holding a legal or beneficial interest in property." *18 U.S.C. § 1961(3)*.  The courts have determined that in a cause of action under 18 U.S.C. § 1962(c), the "person" and the "enterprise" may not be one and the same entity; it is permissible, however, that the RICO person also be one of a number of members of the RICO enterprise.  *See Jacobson v. Cooper*, 882 F.2d 717, 719-20 (2d Cir. 1989).  At bar, Plaintiffs have clearly satisfied the RICO pleading requirements with respect to the Defaulting Defendants as named "persons." As identified in the Complaint, with respect to Counts Two through Nine, all of the Defaulting Defendants are each an "individual or entity capable of holding a legal or beneficial interest in property," thereby satisfying the definition and pleading requirements of a RICO "person" as that term has been defined in the federal statute. Moreover, the Defendants are entities separate and distinct from the RICO enterprises alleged in the Complaint, thereby satisfying the pleading requirements of a RICO "person." In that regard, in the seminal case of *Cedric Kushner Promotions, Ltd. v. King* (2001), 533 U.S., 165, the Supreme Court held that in order for a plaintiff to satisfy the person/distinctness requirement, the RICO statute requires no more than a *formal legal distinction* between the RICO person and the RICO enterprise, and where the enterprises alleged are corporations (as is the case here with S&L Medical, P.C. (Second Claim for Relief,), Lamed Medical, P.C. (Third Claim for Relief), L&B Medical, P.C. (Fourth Claim for Relief), General Medical Care, P.C. (Fifth Claim for Relief), ZDR Medical, P.C. (Sixth Claim for Relief), Dover Medical, P.C. (Seventh Claim for Relief), 825 Broadway Medical Care, P.C. (Eighth Claim for Relief, and Flatlands 78 Medical Care, P.C. (Ninth Claim for Relief)), the RICO person/enterprise distinction requirement is satisfied simply by naming, as RICO persons, the individuals who engage in or conduct a pattern of

racketeering activity through the corporate enterprise. *See Id.* at 162-163 (finding that the corporation owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its legal status, and nothing in the RICO statute requires more separateness than that.).

Indeed, in light of the *Kushner* holding, judges within this District have uniformly found actionable substantive RICO claims in similar cases where a corporation is alleged as the RICO enterprise and the corporation's owners, employees and/or agents are alleged as the RICO defendants who engaged in a pattern of fraudulent No-fault billing. *See e.g. Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 391 (E.D.N.Y. 2008) (noting that the legal distinction between the RICO enterprise (the corporate entity) and the RICO persons (the officers and employees of those corporations) is sufficient to satisfy the distinctiveness requirement.); *Allstate Ins. Co. v. Halima*, 2009 U.S. Dist. LEXIS 22443 at *12-20 (E.D.N.Y. March 19, 2009) (same); *State Farm Mut. Auto. Ins. Co. v. Kalika*, 2006 U.S. Dist. LEXIS 97454 at *45-50 (E.D.N.Y. 2006) (same).

Moreover, with respect to the Complaints' First Claim for Relief, which alleges an association-in-fact enterprise discussed below, the fact that the Defaulted Defendants are also members of that enterprise does not run afoul of the general pleading requirements for § 1962(c), which require distinctness between the RICO person and the RICO enterprise based on the exception articulated in *Jacobson v. Cooper*, 882 F.2d 717, 719-20 (2d Cir. 1989).

**(ii)      RICO Enterprise**

18 U.S.C. § 1961(5) defines an "enterprise" as an "an individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." The Supreme Court has stated that one can establish the existence of an enterprise through "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit, and has  defined an "association in fact" as a "

group of persons associated together for a common purpose of engaging in a course of conduct." *U.S. v. Turkette*, 452 U.S. 576, 583 (1981). Here, the complaint easily satisfies the enterprise pleading requirements. In that regard, since the Complaint alleges that each Defendant PC described in the Complaint's Second through Ninth Claims for Relief are corporate entities through which the Defaulting Defendants engaged in patterns of racketeering activity, Plaintiffs have sufficiently alleged the existence of RICO enterprises in those claims for releif. *See e.g. First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (finding that the enterprise requirement is most easily satisfied when the enterprise is a formal legal entity.); *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 531 (S.D.N.Y. 2009) (same); *Cedric Kushner Promotions, Ltd.* 533 U.S. 158 (holding that an employee who conducts the affairs of a corporation through illegal acts comes within RICO statue, particularly when the statute itself explicitly defines "enterprise" to include a "corporation.").

Moreover, the Complaint sufficiently alleges that the Medical Network Enterprise alleged in the Complaint's First Claim for Relief was an actionable association-in-fact enterprise pursuant to the RICO Statute. In *Boyle v. United States*, 129 S. Ct. 2237, 2240 (2009), the Supreme Court held that all that is required for an actionable association-in-fact enterprise is that it be alleged to have a structure that, under RICO's terms, has at least three features: (i) a purpose; (ii) relationships among the associates; and (iii) longevity sufficient to permit the associates to pursue the enterprise's purpose. *Boyle*, 129 S. Ct. at 2240. At bar, Plaintiffs' Complaint has alleged such a structure. The well-pleaded factual allegations contained in the Complaint establish that all Defendants herein constituted an ongoing organization functioning as a continuing unit and a "group of persons associated together for a common purpose of engaging in a course of [criminal] conduct," including but not limited to participating in a scheme to defraud No-fault insurers, including but not limited to Plaintiffs, through use of the United States mail to submit to Plaintiffs thousands of fraudulent and

fictitious bills and medical records for reimbursement of No-fault benefits, thereby satisfying the definition and pleading requirements of a RICO "enterprise" as that term has been defined in federal statute and/or case law as set forth above.

By way of further example and not limitation, the Complaint sets forth how each member of the Medical Network Enterprise played a well-defined and essential role in the Defendants' scheme to defraud and in directing the affairs of the Enterprise. *See e.g.* Comp. ¶¶141 through 151; how the Defendant PCs (including Defaulting Defendant 825 Medical Care, P.C.) were created for the essential purpose of providing a vehicle through which the Defendants could generate fraudulent claims and fraudulently bill insurance companies under the No-fault Law and sweep the illicit proceeds gained therefrom to the Principals (which include Defaulting Defendants Mark Mirvis, Mark Lupolover, Michael Bezenyan, Ruven Katz, Igor Zhuravsky, and Georgy Statnrosh), through substantial, regular payments made by Defendants PCs to the Defendant Management Companies (which include Defaulting Defendants Ocean L. Management Group Inc., Flatlands Best Management Group, Inc., Hillmed Management, Inc., B-Way Management, Inc., Flat-80 Management, Inc. and Nortmed Management, Inc.), and other entities, which were owned and operated by the Principals and/or others unknown to Allstate. Each of the Defendant PCs furnished the Medical Network Enterprise with the identities of patients who were recruited for the purpose of generating fraudulent claims and with facilities that were essential prerequisites to an insurance fraud scheme *Id.* ¶ 25; and how the duration, scope and nature of the Defendants' illegal conduct brings this case well within the realm of criminal conduct to which the RICO Act applies, as for a thirteen year period, every facet of Defendants' operation, from generating fraudulent supporting medical documents to record keeping to billing, was carried out for the purpose of committing fraud. *Id* ¶ 37. The purpose of the "Medical Network Enterprise," was to defraud Plaintiffs into paying bills for medical services that were not provided and/or were provided pursuant to a

predetermined protocol of billing for medically unnecessary services. Accordingly, Plaintiffs'

complaint sufficiently sets forth the existence of actionable RICO enterprises.

**(iii)**         **Pattern of Racketeering Activity**

Plaintiffs have also sufficiently pled facts demonstrating a pattern of racketeering activity,

which as noted above, is a requirement of a RICO allegation. In that regard, racketeering activity is

defined to include mail fraud (18 U.S.C.A. § 1961(c)), and a "pattern" is defined as at least two acts

of racketeering activity occurring within 10 years of one another (18 U.S.C.A. § 1961(5)).

Moreover, as this Court explained in *State Farm Mut. Auto. Ins. Co. v. CPT Med. Services, P.C.*,

04CV5045(ILG), 2008 WL 4146190 (E.D.N.Y. Sept. 5, 2008) (in order to prove mail fraud, a

plaintiff must allege: (i) the existence of a scheme to defraud involving money or property; (ii) the

use of the mails or wires in furtherance of the scheme;[4] and (iii) a specific intent to defraud, either

by devising, participating in, or abetting the scheme. *CPT Med. Services*, at *11 (citations omitted).

In addition to the minimum number of two acts that must be pled to establish a mail fraud pattern,

plaintiff must also establish that these "predicate acts" are "related," and that they amount to or pose

a threat of continued criminal activity, as it "continuity plus relationship" that produces a "pattern."

*H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989).

Moreover, it is not necessary that the particular defendant have created or sent the mailing in

question, so long as the defendant acted with knowledge that the use of the mails will follow in the

ordinary course of business, or that such use can reasonably be foreseen, even though not actually

intended. *See e.g.*, *United States v. Bortnovsky*, 879 F.2d 30, 36 (2d Cir. 1989). *See also 131 Main*

---

[4] To show that a defendant used the mails in furtherance of a scheme to defraud, he must show: 1) that the defendants caused the mailing or use of the wires, namely that they must have acted with knowledge that the use of the mails will follow in the ordinary conduct of business, or where such use can reasonably be foreseen, even though not actually intended, and 2) that the mailing ... was for the purpose of executing the scheme or, in other words, incidental to an essential part of the scheme. *CPT Med. Services* at *11 (citations omitted). *See also AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, CV-042934ERK, 2005 WL 3710370 (E.D.N.Y. Feb. 22, 2005) (setting forth the pleading requirements for mail fraud.).

*St. Associates v. Manko*, 897 F. Supp. 1507, 1530 (S.D.N.Y. 1995) (finding that the fact that the defendants did not personally drop the mailings in the mailbox is unimportant; all that matters is that they are alleged to have participated in an enterprise that foreseeable made use of the mails to perpetrate the fraud.). In that regard, insurance fraud schemes, by their very nature, involve the mailing of fraudulent insurance claims and the receipt by mail of the proceeds of those claims. Accordingly, in cases involving insurance fraud schemes, such as the ones described in the Complaint, the use of the mails is invariably found to be foreseeable.  *See Bortnovsky*, 879 F.2d at 36 (citing cases from the First, Sixth, Seventh and Eighth Circuits and finding that the courts, when construing the mail fraud statute in the context of schemes to defraud an insurance company, have consistently held that mailings are foreseeable.); *United States v. Cline*, 655 F. Supp. 796, 799 (M.D. La. 1987) (noting that courts have found that it is reasonably foreseeable in insurance fraud cases that the mails would be used in processing claims and paying the insurance proceeds) (citing cases); *United States v. Blankenship*, 746 F.2d 233, 242 (5th Cir. 1984) (stating that material sent by mail was integral to the execution of the scheme where insurance company required such material before it could process the claim.). Applying these principles to the instant Complaint, it is indisputable that mail fraud, as pleaded by Plaintiffs, constitutes racketeering activity as defined by the RICO statute.

First, in order to satisfy the "continuity" prong, it must be demonstrated that: (1) the predicate acts occurred over a substantial period of time ("closed-ended" continuity) or (2) the acts establish a threat of continued racketeering activity in the future ("open-ended" continuity).  *Id.* at 241-242.  Though racketeering activity occurring over a few weeks or months and threatening no future criminal conduct may not constitute a substantial period of time, the Second Circuit has held that predicate acts occurring over a period of two or more years (as did all of the enterprises alleged in the Complaint) certainly satisfy the requirements of closed-ended continuity.  *Id.* at 242; *see also*

*Metromedia Co. v. Fugazy*, 983 F.2d 350, 369 (2d Cir. 1992) (*holding* that a series of predicate acts extending over a two-year period constitutes a closed-ended pattern.).

A scheme reflects "open-ended continuity" where the predicate acts by their nature project into the future with a threat of repetition, have become a regular way of doing business or are part of a long-term association that exists for criminal purposes. *H.J. Inc.*, 492 U.S. at 242-43; *see also Nafta v. Feniks Int'l House of Trade (U.S.A.) Inc.*, 932 F. Supp. 422, 427 (E.D.N.Y. 1996). In determining whether a plaintiff has satisfied the requirement of open-ended continuity, inquiry as to the nature of the RICO enterprise and the predicate acts is relevant. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999). And, under an open-ended scheme, predicate acts committed over even very short periods of time are sufficient to form a RICO pattern, where the acts pose a threat of continuing criminal activity. *H.J. Inc.*, 492 U.S. at 241-43; *accord, e.g., United States v. Aulicino*, 44 F.3d 1102, 1110-14 (2d Cir. 1995) (finding that a pattern was established though acts occurred only over a period of some 3 ½ months.); *United States v. Busacca*, 936 F.2d 232, 238 (6th Cir. 1991) (*finding* that a pattern was established for predicate acts committed over two-month period); *United States v. O'Connor*, 910 F.2d 1466, 1468 (7th Cir. 1990) (finding that a pattern was established over two-month period.).

Moreover, to satisfy the "relationship" prong of the mail fraud pattern requirement, it must be shown that the predicate acts involve the same or similar purpose, results, participants, victims, and methods of commission or are otherwise interrelated by distinguishing characteristics. *See H.J. Inc.*, 492 U.S. at 240. As alleged in the Complaint, the Defaulting Defendants, from 1996 through the commencement of this action, acting in concert and with knowledge of the fraudulent and criminal nature of their activities, engaged in a pattern of racketeering activity and participated in the affairs of the Medical Network Enterprise and the related corporate entity enterprises, the purposes of which were to defraud Plaintiffs into paying fraudulent bills submitted for medical

services that were not necessary or not supplied.[5]  The Defaulting Defendants participation in the alleged racketeering activity included thousands of acts of mail fraud, as defined in 18 U.S.C. 1961(1)(B), which are related since they were intended to further the same criminal enterprises. Moreover, the activity satisfies the continuity requirements of the RICO statute as it occurred over a substantial period of time and poses a certain threat to continue into the future if not halted by civil or criminal prosecution. The Defaulting Defendants' knowing misrepresentations in the records provided to Plaintiffs resulted in Plaintiffs' reliance. This reliance led directly to Plaintiffs' injury, the payment of substantial sums in fraudulent claims to Defendants."[6] *Metromedia Co. v. Fugazy*, 983 F.2d 350, 368 (2d Cir.1992); *First City Nat'l Bank & Trust Co. v. FDIC*, 730 F. Supp. 501, 513 (E.D.N.Y.1990)).

(iv)    **Participation in the Racketeering Activities.**

The Supreme Court has interpreted the phrase "to participate ... in the conduct of (the) enterprise's affairs" to mean participation in the operation or management of the enterprise. *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001). In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. As noted by the Supreme Court, the word "participate" makes clear that RICO liability is not limited to

---

[5] The injury suffered by Plaintiffs' as a result of Defendants' fraud is not in dispute. As admitted by Defendant Zhuravsky in his response  to Plaintiffs' Motion, the amount received by the Defendant PCs from Plaintiffs was $16,763,180.00, which is approximately one-an-a-half million dollars *more* than the actual damages claimed by Plaintiffs $15,219,133.67 on this Motion. confirming that Plaintiffs' are entitled to the damages sought.

[6] As set forth in Plaintiffs' Memorandum of Law in Support of the instant motion at pp. 10-11, the Complaint alleges that on specified dates, Defendants mailed to Plaintiffs thousands of false, fictitious, forged and otherwise fraudulent bills for medical services.  *Compl.* ¶¶ 229, 416, 422-423 and 425; that the PC Defendants were established for the singular purpose of carrying out Defendants' criminal enterprise. *Id.*¶ 25; that Defendants' criminal conduct involved a common purpose, results, participants, victims and methods of commission; that such conduct was knowingly designed to mislead Plaintiffs into believing that the PC Defendants were legally owned and operated and that medical services were actually rendered, or of diagnostic value and/or medically necessary when in fact they were not *Id.* ¶¶ 6-37; and that such did indeed mislead Plaintiffs into so believing and resulted in damage to Plaintiffs by their paying Defendants for fraudulent insurance claims, *Id.* ¶ 558, and that Defendants misrepresented in each bill that the PC Defendants submitted to Plaintiffs that they were lawfully licensed and, therefore, eligible to recover no-fault benefits pursuant to Insurance Law § 5102(a)(1) and 11 N.Y.C.R.R. § 65–3.16(a)(12), when in fact they were fraudulently incorporated, owned by laypersons in violation of New York State Law. *See e.g. Id.* ¶¶ 6, 9, and 11-16

19

those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required. *See Allstate Ins. Co. v. Rozenberg*, 590 F. Supp. 2d 384, 391 (E.D.N.Y. 2008) (citing *Reves v. Ernst & Young*, 507 U.S. 170 (1993)); *State Farm Mut. Auto. Ins. Co. v. CPT Med. Services, P.C.*, 04CV5045(ILG), 2008 WL 4146190 at *11 (E.D.N.Y. Sept. 5, 2008); *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 04CV2934(ERK), 2005 WL 3710370 at *8 (E.D.N.Y. Feb. 22, 2005); *Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 366 (E.D.N.Y. 2000).

Plaintiffs' Complaint clearly sets forth that the Defaulting Defendants participated in the affairs of the enterprises described in the Complaint's First through Ninth Claims for relief. With regard to the lay person Principals and Management Companies, the Complaint describes how the laypersons, purchased the names and licenses of each paper doctor owner solely for the purpose of exploiting his name and license to practice medicine in connection with a scheme to defraud insurance companies, in general, and Plaintiffs, in particular, with the doctor owners never exercising any ownership or control over any PC.  Immediately upon the inception of each Defendant PC, and in violation of BCL §§ 1504(a), 1507 & 1508, the Defendant Doctors (including Defaulting Defendants Slutsky and Sosonkin) transferred all interest, ownership and control of their PCs to the Principals. *Compl.* ¶ 9. Further, the Complaint details how the Principals, through the Defendant Management Companies, Dummy Corporations and their co-conspirators, and acting in concert and in furtherance of the scheme to defraud alleged therein, knowingly managed, supervised, participated in, conducted and oversaw the day-to-day operations of the Defendant PCs. *Id.* ¶ 194.

In addition, the Complaint alleges, among other things, alleges that the Principals participated in the affairs of the enterprises described in the therein in that they (i) purchased the

names and licenses of the Defendant Doctors to fraudulently incorporate the Defendant PCs in violation of Article 15 of the New York State Business Corporation Law; (ii) retained the accountant, counsel and/or other professionals who created the illegal corporate structures under which the enterprises were permitted to operate; (iii) retained the same attorney Alexander Almonte to dissolve one or more of the Defendant Management Companies, including but not limited to Hillmed Management, Flat-80 Management and B-Way Management; (iv) retained the same company ALCO Corporate Services to incorporate one or more of the Defendant PCs and Defendant Management Companies, including but not limited to Lamed Medical, Flatlands 78 Medical, Flatlands Best Management, B-Way Management and Hillmed Management; (v) hired physicians and office support staff for the Defendant PCs and instructed them in the procedures and fraudulent protocol they were to follow; (vi) participated or otherwise directed the preparation of standardized fraudulent and fictitious reports that fabricated and/or exaggerated injuries to support prescriptions for unnecessary tests, follow-up visits and treatments; (vii) established or otherwise participated and directed the treatment and diagnostic protocol for each Defendant PC; (viii) established the Defendant Management Companies to collect the proceeds for all or part of the Enterprise's illegal activities and to funnel the illicit proceeds obtained through the Defendant PCs to the Principals; (ix) entered into contracts and agreements on behalf of the Defendant PCs; and (x) maintained and controlled the corporate books and records for the Defendant PCs. *Id.* ¶ 193.

With regard to the Defendant Doctors, the Complaint details how through a series of agreements, the Principals purchased the names and medical licenses of these providers who, by selling their names and licenses, these "professionals" provided the essential means in which laypersons were able to own the Defendant PCs in contravention of New York State Law, and that the Defendant Doctors participated in the affairs of the Medical Network Enterprise under the direction of the Principals, Compl. ¶ 385. Indeed, the Complaint alleges that the Defendant Doctors

sold their names and license for use by the Principals; provided the essential means through which the Principals (laypersons) were able to own the Defendant PCs in contravention of New York State Law; ceded ownership and control in the Defendant PCs; Abdicated any and all attributes of ownership and control to the Principals; maintained no control over how the Defendant PCs were operated and managed; allowed their names and licenses to be used to pursue fraudulent claims on behalf of the Defendant PCs -- fraudulently incorporated professional corporations that were unlawfully formed and operated by the Principals; allowed and facilitated the generation of fictitious medical records and bills that were submitted to Allstate under their names in association with one or more of the Defendant PCs;  allowed their name(s) to be signed or stamped on HCFA forms and narrative reports, which falsely represented that they actually rendered the health services for which the Defendant PCs submitted bills, when in fact the services were materially misrepresented, never rendered, or of no diagnostic or treatment value; and knew that they were performing or causing to be performed Electrodiagnostic Testing, ROM Testing and Synaptic Treatment that was materially misrepresented in the bills submitted to insurers and of no diagnostic and/or treatment value. *Id.* ¶ 385.

Towards that end, the Defendant Doctors (i) exercised discretion and/or knowingly implemented decision-making practices, procedures, and protocols in furtherance of the Enterprise's scheme to defraud.  *Id.* ¶ 386; (ii) had their own discrete, defined and integral role in furtherance of the scheme to defraud and had discretionary authority to carry out their particular role in the scheme to defraud, as well as to carry out the instructions of the Principals,  *Id.* ¶ 387; (iii) performed or caused to be performed Electrodiagnostic Testing, ROM Testing and Synaptic Treatment for one or more of the Defendant PCs that they knew or should have known would produce medically invalid test results of no diagnostic value and/or that were medically unnecessary. *Id.* ¶ 388; and (v) were an

essential and integral decision making components of the enterprises that acted under the direct control of the Principals. *Id.* ¶ 389.

Finally, with respect to the Defendant Money Laundering Companies (Defaulting Defendants Del Prado One, LLC, Del Prado Two,  LLC, Del Prado Three, LLC c, Del Prado Four, LLC, El Dorado One, LLC, M&M Oceanfront, LLC, Ne 10, LLC, Ne 24, LLC and Tropicana One, LLC), the Complaint alleges how with the intent to conceal or disguise the money generated by the Defendant PCs' massive fraudulent billing scheme, the Principals, through the Money Laundering Companies, used the proceeds, including but not limited to profits, gained from the Enterprise alleged herein to purchase vacant property located at various locations within the State of Florida, including how the Principals, (i) through Del Prado One, purchased one or more parcels of vacant property in the State of Florida for $2M; (ii) through Del Prado Two, purchased one or more parcels of vacant property in the State of Florida for $1.3M; (iii) through Del Prado Three, purchased one or more parcels of vacant property in the State of Florida for $3.8M; (iv) through NE 24, purchased one or more parcels of vacant property in the State of Florida for $1.25M; (v) through NE 10, purchased one or more parcels of vacant property in the State of Florida for $1.1M; and (vi) through M&M Ocean Management, purchased one or more parcels of vacant property in the State of Florida for $972K. *Compl.* ¶ 412. Each of these vacant land purchases were part of a money laundering scheme, as that term if defined under 18 U.S.C.A. § 1956, and in and of themselves constitute independent acts and pattern of racketeering activity (18 U.S.C. § 1961(5)) that were designed to ensure that the proceeds of the criminal enterprise alleged herein were ultimately directed to the Principals. *Id.* ¶ 413.

**(v)      The Acts Alleged in the Complaint Affect Interstate Commerce**.

Finally, it is well settled that only a *de minimis* effect on interstate commerce need be shown. *See United States v. Mejia*, 545 F.3d 179, 203 (2d Cir. 2008); *DeFalco*, 244 F.3d at 309. It is the

enterprise, not the individual defendant that must engage in or affect interstate commerce. *See Khaimi v. Schonberger*, 664 F. Supp. 54, 60 (E.D.N.Y. 1987). Here, Plaintiffs allege that the Defendant PCs, the enterprises in each RICO claim for relief, engaged in schemes to submit fraudulent medical claims to, and affected the business of, Plaintiffs, national insurance companies, and Illinois corporations, with their principal place of business in Northbrook, Illinois. These alleged facts are sufficient to provide the required interstate nexus. *Cf. State Farm Mut. Auto. Ins. Co. v. Grafman*, 655 F. Supp. 2d 212, 230 (E.D.N.Y. 2009) (finding similar allegations satisfied requirement).

**5.   Plaintiffs' Complaint States Valid Causes of Action With Respect to its Tenth Claim for Relief**

The Complaints Tenth Claim for Relief alleges that the Defendants, including all Defaulting Defendants violated 18 U.S.C. § 1961(d) by carrying on a conspiracy to engage in the unlawful enterprises described therein.   In that regard, the essence of a RICO civil conspiracy claim is "an agreement to commit predicate acts." *Morin v. Trupin*, 835 F. Supp. 126, 135 (S.D.N.Y.1993) (citing *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990)). Therefore, to establish liability for a RICO conspiracy, a complaint must specifically allege such an agreement " *id.,* and that the defendants understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses. *Morin* 835 F.Supp. at 136. This requirement can be met simply by alleging that each defendant "possessed knowledge of only the general contours of the conspiracy." *Gov't Employees Ins. Co. v. Hollis Med. Care, P.C.*, No. 10–CV–4341, 2011 WL 5507426, at *10 (E.D.N.Y. Nov. 9, 2011) (quoting *U.S. v. Applins*, 637 F.3d 59, 75 (2d Cir.2011)).

At bar, Plaintiffs' Complaint alleges that  from approximately October 1995 through the date of the filing of the Complaint, the Defendants, including the Defaulting Defendants, conspired together to violate 18 U.S.C. §§ 1961(1)and § 1962(d), with an objective of the conspiracy being to

enrich themselves by submitting and causing to be submitted to Allstate and other No-fault insurance carriers claims for health services purportedly rendered or given to Covered Persons, knowing that the medical bills and records submitted in support of their claims were false and fraudulent in that the services were never rendered or provided or were performed for the purpose of generating fraudulent bills, thereby falsely inducing and causing millions of dollars in claims to be paid by Allstate. Compl. ¶¶ 503-504. It was further an objective of the conspiracy that the Defendants would, and did, devise a scheme and artifice to defraud Allstate and other No-fault insurance carriers by means of false, misleading and fraudulent pretenses and representations, and to cause Allstate to pay claims arising from the intentional filing of false claims and supporting documentation through the Defendant PCs for the benefit of all Defendants, who were co-conspirators, for the purpose of executing such scheme and artifice, and in attempting to do so, Defendants placed, and caused to be placed, in post offices and authorized depositories certain mail matter and things to be sent and delivered by the United States Postal Service, and would, and did, take and receive such matter and things therefrom, in violation of 18 U.S.C. § 1341. *Id.* ¶ 505

It is respectfully submitted that the foregoing sufficiently alleges that the Defaulting Defendants knew the general contours of the ongoing scheme, and are liable for a RICO conspiracy. *See Hollis Med. Care, P.C.,* 2011 WL 5507426, at *10 (determining that plaintiffs had met their "relatively low standard" by alleging that the participating defendants agreed to participate in the scheme and knew that the scheme would result in the mailing of fraudulent bills to **GEICO**) (quoting *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.,* No. 04–CV–5045, 2008 WL 4146190, *14 (E.D.N.Y. Sept. 5, 2008)); *see also Allstate Ins. Co. v. Valley Phys. Med.,* No. 05–CV–5932, 2009 WL 3245388, *7 (E.D.N.Y. Sept. 30, 2009) (finding that plaintiffs adequately alleged that an insurance fraud scheme was a RICO conspiracy, and explaining that coconspirators in a RICO conspiracy need not be fully informed about each other's specific criminal acts).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court enter a judgment of joint and several liability of default against Defaulting Defendants in the amounts of $44,924,901.01.

Dated: New York, New York
  May 23, 2012

          **STERN & MONTANA, LLP**


      By: _____/s Daniel Marvin_____
        Robert A. Stern, Esq. (RAS-1282)
        Sandra P. Burgos, Esq. (SB- 6856)
        Daniel S. Marvin, Esq. DM-7106)
        Attorneys for Plaintiffs
        Trinity Centre
        115 Broadway
        New York, New York 10006
        212-532-8100

# EXHIBIT A

Order Filed on
**11/4/2009**
by Clerk U.S. Bankruptcy
Court District of New Jersey

**CADWALADER, WICKERSHAM & TAFT LLP**
One World Financial Center
New York, New York 10281
Telephone: (212) 504-6000
Facsimile: (212) 504-6666
Wendy M. Fiel, Esq.
Christopher R. Mirick, Esq. (*Pro Hac Vice* pending)
Christopher J. Updike, Esq. (*Pro Hac Vice* pending)
*Attorneys for Allstate Insurance Company, et al.*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>**MICHAEL BEZENYAN AND**<br>**IRENE BEZENYAN,**<br><br>                              Debtors. | Chapter 7<br><br>Case No. 09-25115 (MBK)<br><br>Adversary No. 09-2566 (MBK) |

**STIPULATION AND AGREED ORDER BETWEEN THE DEBTOR**
**MICHAEL BEZENYAN AND ALLSTATE INSURANCE COMPANY,**
**ALLSTATE INDEMNITY COMPANY, DEERBROOK INSURANCE**
**COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY AND**
**ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY**

The relief set forth on the following page, numbered two (2), through five (5) is hereby

**ORDERED**.

**DATED: 11/4/2009**

Honorable Michael B. Kaplan
United States Bankruptcy Judge

**(Page 2)**

| | |
|---|---|
| Debtor: | Michael and Irene Bezenyan |
| Case No.: | Chapter 7, 09-25115 (MBK) |
| Caption of Order: | Stipulation and Agreed Order Between the Debtor Michael Bezenyan and Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company |

This stipulation and agreed order (the "Stipulation") is made by and between Michael Bezenyan, as co-debtor in the above-captioned chapter 7 case (the "Debtor"), and Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company, and Allstate Property and Casualty Insurance Company (collectively, "Allstate", and together with the Debtor Michael Bezenyan, the "Parties"), as of the date indicated below.

RECITALS:

A.    On June 11, 2009 (the "Petition Date"), the Debtor Michael Bezenyan filed a voluntary joint petition with his wife for relief under chapter 7 of title 11, United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") under case number 09-25115-MBK (the "Bankruptcy Case").

B.    Prior to the Petition Date, on October 30, 2008, Allstate filed a complaint (the "District Court Complaint") commencing the prepetition action captioned Allstate Insurance Co., et al. v. Mark Mirvis, et al., Case No. 2008 CV 4405 (ST)(VVP) (the "Prepetition Action"), currently pending in the United States District Court for the Eastern District of New York (the "District Court"). The District Court Complaint alleges certain fraud claims under the United States Racketeer Influenced and Corrupt Organizations Act ("RICO") and New York state law against Mr. Bezenyan and certain other defendants (collectively, the "Defendants"). The

**(Page 3)**

| | |
|---|---|
| Debtor: | Michael and Irene Bezenyan |
| Case No.: | Chapter 7, 09-25115 (MBK) |
| Caption of Order: | Stipulation and Agreed Order Between the Debtor Michael Bezenyan and Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company |

Defendants are alleged to be jointly and severally liable under each count listed in the District Court Complaint.

       C.      On the Petition Date, Allstate was automatically stayed pursuant to section 362(a) of the Bankruptcy Code from continuing the Prepetition Action against Mr. Bezenyan.

       D.      On September 28, 2009, Allstate filed a motion (the "Motion", see Docket No. 21) pursuant to section 362(d) of the Bankruptcy Code requesting relief from the automatic stay extant in the Bankruptcy Case to permit Allstate to apply to the District Court for entry of a default judgment pursuant to rule 55(b)(2) of the Federal Rules of Civil Procedure, or, in the alternative, to proceed with the Prepetition Action against Mr. Bezenyan and his co-Defendants.

       E.      On September 28, 2009, Allstate also filed a complaint pursuant to section 523(a) of the Bankruptcy Code, commencing Adversary Proceeding No. 09-0256 in the Bankruptcy Case, to determine the non-dischargeability of all debts related to the Prepetition Action (the "Complaint", see Adversary Proceeding Docket No. 1).

       F.      The Parties desire to resolve the Complaint and the Motion on the terms set forth herein.

AGREEMENT:

       NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, subject only to the approval of the Bankruptcy Court, by and among the Parties, through their counsel,

*Approved by Judge Michael Kaplan November  04, 2009*

**(Page 4)**

| | |
|---|---|
| Debtor: | Michael and Irene Bezenyan |
| Case No.: | Chapter 7, 09-25115 (MBK) |
| Caption of Order: | Stipulation and Agreed Order Between the Debtor Michael Bezenyan and Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company |

each of whom represent and warrant they possess the requisite authority to bind the respective Parties, as follows:

1.      Upon approval of this Stipulation by the Bankruptcy Court, pursuant to sections 362(d), the automatic stay extant in the Bankruptcy Case is modified to the extent necessary to allow Allstate: (i) to apply to the District Court for entry of a default judgment in the Prepetition Action pursuant to Rule 55(a) of the Federal Rules of Civil Procedure; and (ii) to proceed with the Prepetition Action against Mr. Bezenyan and his co-Defendants to final judgment or settlement.

2.      All debts of Mr. Michael Bezenyan to Allstate related to the Prepetition Action are nondischargeable and excepted from discharge pursuant to section 523(a) of the Bankruptcy Code, with the exact amount owed to Allstate to be determined by the District Court in the Prepetition Action.

3.      This Stipulation shall not become effective unless and until it is "so ordered" by the Bankruptcy Court, and this Stipulation may not be modified other than by a signed writing executed by the Parties or by further order of the Bankruptcy Court.

4.      Upon this Stipulation being "so-ordered" by the Bankruptcy Court, the Motion and the Complaint shall be deemed to have been resolved by an order of the Bankruptcy Court.

*Approved by Judge Michael Kaplan November  04, 2009*

**(Page 5)**

Debtor:                    Michael and Irene Bezenyan

Case No.:                Chapter 7, 09-25115 (MBK)

Caption of Order:    Stipulation and Agreed Order Between the Debtor Michael Bezenyan and Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company and Allstate Property and Casualty Insurance Company

5.    This Stipulation contains the entire agreement by and between the Parties.

6.    This Stipulation may be signed in counterpart originals, which, when fully executed, shall constitute a single original.

7.    Facsimile copies of signatures on this Stipulation are acceptable, and a facsimile copy of a signature on this Stipulation is deemed an original.

8.    This Stipulation shall have no impact on the Debtor Michael Bezenyan's discharge on his other pre-petition debts.

Dated: October 30, 2009

STIPULATED AND AGREED:

By: _____
Wendy M. Fiel
Christopher R. Mirick (*Pro Hac Vice* to be filed)
Christopher J. Updike (*Pro Hac Vice* to be filed)
CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:    (212) 504-6000
Facsimile:    (212) 504-6666
*Attorneys for Allstate Insurance Company, et al.*

STIPULATED AND AGREED:

By: _____
Leonard C. Walczyk
WASSERMAN, JURISTA & STOLZ, P.C.
225 Millburn Avenue, Suite 207
Millburn, New Jersey 07041
Telephone: (973) 467-2700
Facsimile:  (973) 467-8126
*Attorney for the Debtors*

STIPULATED AND AGREED:

By: _____
Michael Bezenyan
*Debtor*

*Approved by Judge Michael Kaplan November 04, 2009*