**STERN & MONTANA, LLP**
ONE WORLD FINANCIAL CENTER, 30TH FLOOR
NEW YORK, NEW YORK 10281

TELEPHONE: (212) 532-8100
FACSIMILE: (212) 532-7271
E-MAIL: info@stern-montana.com
www.stern-montana.com

May 20, 2016

**VIA ECF**

Magistrate Judge Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:     *Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (SLT) (PK)
        **Plaintiffs' Opposition to Motion to Quash Post-Judgment Subpoena**

Dear Judge Kuo:

We represent Plaintiffs-Judgment Creditors ("Plaintiffs') in the above-referenced matter and respectfully submit, pursuant to Rules 26(c), 37(a)(5), 45(d), and 69(a)(2) of the Federal Rules of Civil Procedure (the "F.R.C.P.") and Rule V(A)(1)(e) of Your Honor's Individual Practice Rules, this letter in opposition to nonparty Queens Billing, Inc.'s ("Queens Billing" or "Movant") May 4, 2016 letter motion (the "Motion")[1] to quash Plaintiffs' post-judgment, third-party subpoena *duces tecum* (the "Subpoena") issued to nonparty JPMorgan Chase Bank, N.A. ("Chase").  *See* ECF No. 344.  For the reasons set forth herein, in is respectfully submitted that the Motion should be denied.

By way of brief background, by Decision and Memorandum dated March 31 2015 (ECF No. 297), this Court adopted Magistrate Judge Viktor V. Pohorelsky's Report and Recommendation (ECF No. 293) recommending that judgment by default be entered against certain defendants (the "Judgment Debtors) and that Plaintiffs be awarded trebled damages of $45,657,401.01, for which the Judgment Debtors were held jointly and severally liable in connection with their participation in a systematic scheme to defraud and steal insurance payments from Plaintiff automobile insurers.  *See Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (SLT) (VVP), 2015 WL 1539671, at *1 (E.D.N.Y. Mar. 31, 2015), *appeal dismissed* (2d Cir. July

---

1.  The Motion was referred to this Court pursuant to the Endorsed Order of District Judge Sandra L. Townes entered on May 13, 2016.  *See* ECF No. 358.

Hon. Peggy Kuo
May 20, 2016
Page 2

20, 2015).  The Judgment Debtors include Nortmed Management, Inc. ("Nortmed"), a sham corporate entity to which the illicit proceeds of the scheme to defraud described in the Complaint were siphoned.  *See* Compl. ¶ 19 (Nortmed "entered into management, premises and equipment lease agreements [ ], ostensibly in connection with providing management services to [professional medical corporations] . . . . [but that instead] were used to funnel millions of dollars in fraudulently obtained insurance payments.").  In seeking to enforce their judgment, Plaintiffs served a restraining notice pursuant to Section 5222 of the C.P.L.R. upon Chase, which advised Plaintiffs by letter dated July 28, 2015 that Judgment Debtor Nortmed's account (and its balance of just $2,632.26) would be restrained.  *See* **Exh. "A"** (Chase Attorney Response Letter).  Chase subsequently produced records concerning Nortmed's account.  Plaintiffs then served the Subpoena on April 5, 2016, after their review of those records revealed more than a dozen transfers totaling tens of thousands of dollars from Queens Billing's Chase account in 2014 and 2015, long after the commencement of this case and continuing shortly after the judgment was entered on May 5, 2015 (ECF No. 303), when Nortmed knew Plaintiffs now had the ability to pursue supplementary proceedings to enforce the judgment.[2]  In that regard, these frequent transfers abruptly ended following Queens Billing's final payment on July 28, 2015, the very date of Chase's letter advising Plaintiffs that Nortmed's account would be restrained.[3]

Against the foregoing backdrop, Queens Billing seeks to have the Subpoena quashed on the grounds that (1) its bank records in the possession of non-party Chase contain "confidential commercial information, including how Queens [Billing] competitively prices its services," and (2) such records are "irrelevant" to satisfaction of the Judgment.  As set forth herein, both of those grounds are baseless.  Not only does Movant overlook the broad post-judgment discovery afforded to judgment creditors by federal and New York law, but it also utterly fails to establish the existence of any "confidential commercial information" in its bank records held by a third party or any legal basis for such protection.  Moreover, the Motion is supported by a sworn declaration which not only contains multiple false statements, but also is proffered by an individual (Roman Matatov) who has previously been accused of the very same type of fraud alleged in the Complaint.[4]  Specifically, Matatov swore falsely that Queens Billing has never

---

2.  Queens Billing admits that it made sixteen (16) cash transfers to Nortmed totaling $23,644.86 between August 2014 and July 2015.  *See* Mot. Exh. 2 (ECF No. 344-4).  On average, the frequency of these payments was well over once per month.

3.  Movant, without any factual support beyond the bare declaration of its owner Roman Matatov, conveniently maintains that these frequent payments coincidentally ended with the termination of its purported "short business relationship" (by oral agreement) with Nortmed, a relationship that just happened to end at about the same time Nortmed's account was restrained, with, according to Movant, no further payments be made thereafter to Nortmed. *See* Matatov Decl. ¶¶ 9, 13. To the contrary, the facts demonstrate that the restraint placed on Nortmed's Chase account was the event that precipitated the cessation of payments by Movant to Nortmed's account.  Moreover, as discussed further herein, Matatov's declaration contains patently false statements concerning the nature and duration of Queens Billing's relationship with Nortmed.  As there is no credible evidence of any legitimate business purpose for the payments to Nortmed, Plaintiffs must be afforded post-judgment discovery to determine if Queens Billing continued to issue payments to another account of Nortmed, other Judgment Debtors, and/or their intermediaries.

4.  In *GEICO v. Dublin*, plaintiff insurers asserted RICO claims against Matatov and his company Sum Billing Corp. ("Sum Billing"), among others, for their own involvement in a fraudulent scheme similar to the one at issue here. 11-CV-4018 (PKC) (RER) (E.D.N.Y. Aug. 19, 2011) ("*GEICO*") (ECF No. 1).  Specifically, the *GEICO* plaintiffs alleged that Matatov and Sum Billing generated bills and fictitious reports for medical PCs, *see id*. at ¶ 142, and were the true owners of medical PCs despite being laypersons, in violation of B.C.L. § 1507, *see id*. at ¶ 144.

Hon. Peggy Kuo
May 20, 2016
Page 3

received money from Nortmed,[5] and that Queens Billing never made any payments to Nortmed other than those in 2014 and 2015, as part of their "short business relationship."[6]  When these falsehoods are considered in conjunction with Matatov's prior alleged engagement in the same type of fraudulent activity in *GEICO*, through his operation of a billing management company similar to Nortmed in this case, it is manifestly apparent that the Motion is merely another device to frustrate Plaintiffs' efforts to satisfy the judgment.

As a threshold matter, and one that was completely ignored by Movant, it is well-settled that broad post-judgment discovery in aid of execution is the norm in federal and New York state courts.  *See, e.g., Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254, 189 L. Ed. 2d 234 (2014) (Scalia, J.) ("New York law entitles judgment creditors to discover 'all matter relevant to the satisfaction of [a] judgment,' [C.P.L.R. § 5223], permitting 'investigation [of] any person shown to have any light to shed on the subject of the judgment debtor's assets or their whereabouts.'") (emphasis added) (quoting Siegel, N.Y. Prac. § 509 (5th ed.)); *see Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 57892, at *8 (S.D.N.Y. Jan. 4, 2013) ("Judgment creditors are given a wide berth in discovery under Rule 69 to locate and identify the judgment debtor's assets."); 12 Fed. Prac. & Proc. Civ. § 3014 (2d ed.) (scope of post-judgment discovery "is very broad, as it must be if the procedure is to be of any value"); *see also Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 CIV. 9649 (JFK), 2006 WL 3456521, at *9 (S.D.N.Y. Nov. 30, 2006) ("[E]ven if the discovery request is a 'fishing expedition,' as [counsel] claims, this Court recognized long ago that 'a judgment creditor is entitled to fish for assets of the judgment debtor.'") (quoting *Capital Co. v. Fox*, 15 F. Supp. 677, 678 (S.D.N.Y. 1936), *aff'd*, 85 F.2d 97 (2d Cir. 1936) ("Otherwise he will rarely obtain satisfaction of his judgment from a reluctant judgment debtor.")).

Moreover, "[b]ecause the scope of Rule 69 discovery includes any information reasonably calculated to lead to the discovery of a judgement debtor's assets, it may necessarily be aimed at non-parties, such as Queens Billing (or its bank), with information related to those assets, including financial records."  *Universitas*, 2013 WL 57892, at *6 ("It is not uncommon to seek asset discovery from third parties, including banks, that possess information pertaining to the judgment debtor's assets.") (quoting *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d

---

5.  In his declaration, Matatov states that "[a]fter reviewing the [S]ubpoena, I state unequivocally that Queens [Billing] has never received any money from any [Judgment Debtor] . . . or on behalf of any [Judgment Debtor]." Matatov Decl. ¶ 7 (emphasis added).  That statement is untrue.  By way of example and not limitation, on April 10, 2012, well over three years after the commencement of the present case, Queens Billing received a payment of $3,000 from Nortmed which was deposited into the very account which is the subject of the Subpoena.  *See* **Exh. "B"** (2012 Check from Nortmed to Queens Billing).

6.  *See* Matatov Decl. ¶¶ 9, 13. Once again, Matatov's declaration represents a desperate attempt to minimize the extent and nature of Queens Billing (and Matatov's) relationship with Nortmed and/or other Judgment Debtors and their complicity in efforts to evade enforcement of the judgment.  Matatov seeks to truncate the duration of Queens Billing's supposed "short business relationship" with Nortmed to a two-year period, between 2014 and 2015, *see id.*, but this claim is belied by a check issued by Queens Billing to Nortmed dated January 31, 2012 in the amount of $8,829.00.  See **Exh. "C"** (2012 Check from Queens Billing to Nortmed).  In that regard, Matatov has made misrepresentations to this Court concerning not only the period in which payments were being made from Queens Billing to Nortmed, but also, as indicated above, its receipt of a payment from Nortmed in April 2012.

Hon. Peggy Kuo
May 20, 2016
Page 4

Cir. 2012), *aff'd sub nom. Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014) (citing cases)).  Indeed, a judgment creditor is entitled to seek discovery concerning the assets of a third party, particularly where (as here) there is evidence of potential fraudulent conveyances between the third party and a judgment debtor.  *See Jacobson v. Moller & Moller, Inc.*, No. CV2002-6316(ERK) (MDG), 2007 WL 1989260, at *1 (E.D.N.Y. July 5, 2007) ("[A] judgment debtor is entitled to examine third parties to determine if a judgment debtor has concealed or transferred assets applicable to satisfying its judgment."); *Costomar Shipping Co. v. Kim-Sail, Ltd.*, No. 95 CIV. 3349(KTD), 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995) ("[D]iscovery may be "permitted against a non-party where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them".); *see also Koon Chun Hing Kee Soy & Sauce Factory, LTD. v. Star Mark Mgmt., Inc.*, No. CV-04-2293, 2010 WL 3780275, at *3 (E.D.N.Y. Sept. 22, 2010) (subpoena of non-party's financial records may be permitted where judgment creditor furnishes "evidence of direct or indirect transfers of relevant assets from [judgment debtors], to any of these non-parties, or if any other evidence is developed that renders the discovery plaintiff seeks relevant to locating defendants' assets.").

At bar, the requested bank records are manifestly relevant to satisfaction of the Judgment. Queens Billing has already acknowledged that it made sixteen (16) payments for so-called "management services" to Nortmed in 2014 and 2015.  *See* Matatov Decl. ¶¶ 9-13; Mot. Exh. 2 (ECF No. 344-4).  As noted above, these payments only ended once Nortmed's Chase account had been restrained pursuant to Section 5222 of the C.P.L.R.  *See* Exh. "A."  Not only were those payments made to Nortmed at a time when it had defaulted in this matter, but the provision of so-called "management services" is precisely the type of fraudulent activity that gave rise to Plaintiffs' Complaint here.  *See* Mot. Exh. 2.  Additionally, and despite the sworn statement of its owner to the contrary, Queens Billing received at least one transfer <u>from</u> Nortmed, s*ee* Exh. "B," and made at least one transfer <u>to</u> Nortmed years before their "short business relationship" purportedly began, *see* Exh. "C."  Under these circumstances, it certainly cannot be said that Queens Billing's bank records are not relevant, as Plaintiffs reasonably expect those documents will reveal (1) any bank account(s) of Nortmed, another Judgment Debtor or any intermediary to which QB diverted the frequent payments it had been making to Nortmed's Chase account following Plaintiffs' July 28, 2015 restraint of that account, (2) any additional transfers between Nortmed (or other Judgment Debtors or their intermediaries) and Queens Billing which were made in an effort to frustrate Plaintiffs' judgment, as well as the ultimate destination of those funds, (3) the sources of funds that were transferred from Queens Billing to Nortmed, which may have very well come directly from other Judgment Debtors or through their intermediaries and may lead Plaintiffs to property of the Judgment Debtors, (4) the existence of any other bank account(s) which may contain (or lead to) property of Nortmed or another Judgment Debtor, and (5) any debts owed by Queens Billing to Nortmed that might be restrained or subject to turnover proceedings.  Given the broad scope of discovery afforded to judgment creditors, Plaintiffs have clearly established the relevance of the records sought.

With the relevance of the requested documents established, Movant faces a heavy burden of proof that they are not discoverable.  *See Kirschner v. Klemons*, No. 99 CIV. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) ("[T]he party seeking to quash a subpoena

Hon. Peggy Kuo
May 20, 2016
Page 5

bears a heavy burden of proof.") (quoting *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C. Cir. 1995)); *see generally Sea Tow Int'l, Inc. v. Pontin*, 246 F.R.D. 421, 424 (E.D.N.Y. 2007) ("The burden of persuasion in a motion to quash a subpoena . . . is borne by the movant."); *Venustas v. Venustas Intern., LLC*, 07 CIV 4530 LTS THK, 2008 WL 619028 (S.D.N.Y. Mar. 5, 2008) (party moving to quash subpoena has burden of establishing that requested information is not discoverable). At bar, the Movant attempts to meet that burden with a vague and unsupported claim that its bank records contain "trade secret or . . . commercial information," a claim which has long been tried and rejected in similar cases. Indeed, the Supreme Court has long held that a person has no "expectation of privacy" in records in the possession of a third party bank. *See United States v. Miller*, 425 U.S. 435, 442 (1976) (Powell, J.) ("[C]hecks are not confidential communications but negotiable instruments to be used in commercial transactions[, and these and other] documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business.").[7] Moreover, even if Movant could assert a legitimate privacy interest in its bank records, it does not and cannot "identify any <u>specific harm</u> that [it] will suffer as a result of production, other than having to produce information in which they have [asserted a general] privacy interest." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald*, L.P., No. 13 CIV. 1654 RA HBP, 2014 WL 5420225, at *8 (S.D.N.Y. Oct. 24, 2014) (acknowledging standing but denying motion of defendant and <u>non-party</u> to quash subpoena to third party IPO audit firm for documents including their bank records, tax returns, valuation materials, and auditor's work product spanning more than a decade, where documents "unlikely to contain commercially sensitive information"); *see F.T.C. v. Trudeau*, No. 5:12MC35, 2012 WL 5463829, at *3 (N.D. Ohio Nov. 8, 2012) (movants cannot "demonstrate[] any harm or prejudice flowing from the release of banking records").[8] Without such demonstration of specific harm, Queens Billing's Motion must fail.

Indeed, the sole piece of evidence offered by Movant in support of its "trade secret" argument is its owner's vague and unsubstantiated assertion that its bank records contain "trade secrets, the publication (sic) of which would damage the business of Queens [Billing] by revealing how Queens [Billing] competitively structures its pricing to attract clients." Matatov

---

7. Numerous courts have applied *Miller* in civil actions, when addressing challenges to subpoenas for bank records in the possession of a third party. *See, e.g., Popoli v. Ft. Myers Lodge #1899 Loyal Order of Moose, Inc.*, No. 2:15-CV-311-FTM-29CM, 2015 WL 9031929, at *4-5 (M.D. Fla. Dec. 16, 2015) ("[The] contents of original checks and deposit slips in the possession of a bank [are the] bank's business records and not the customer's private papers."); *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-CV-11500, 2013 WL 10572229, at *2-3 (E.D. Mich. Aug. 13, 2013) ("[I]n order to have a privacy interest or privilege in subpoenaed information such that Rule 45(c)(1)(A) applies, an origin for that interest or privilege must exist."); *Robertson v. Cartinhour*, No. CIV.A. AW-09-3436, 2010 WL 716221, at *1-2 (D. Md. Feb. 23, 2010) ("The bank customer has no inherent right to assert either ownership, possession, or inferentially, control over the release of a bank's records of his transactions.") (citation omitted); *Najjar v. U.S. Dep't of Treasury*, No. 102CV1807JDTWTL, 2003 WL 21254772, at *2 (S.D. Ind. Apr. 11, 2003) (checks represent "commercial transactions [and] disclose the identity and other identifiers of the parties to the transaction to the third party banking institution").

8. Even if Movant could establish the existence of any legitimate "trade secret" or "confidential commercial information" in its bank records, which it cannot, any concerns about their disclosure are obviated by the fact that Plaintiffs are not business competitors of Queens Billing. *See Refco*, 2014 WL 5420225, at *8 (noting that plaintiff "not a competitor of movants" and that appropriate protective order could guard against plaintiff's disclosure to other persons).

Hon. Peggy Kuo
May 20, 2016
Page 6

Decl. ¶ 15.  Nothing more is offered.  Thus, even if Matatov were a credible witness (which he is not, given his false declaration and history of involvement in alleged schemes to defraud such as the one alleged in the Complaint), the nebulous reason he put forth simply does not establish any grounds for granting the Motion.  Such evidence is plainly insufficient to establish any purported "trade secret" or "commercially confidential information" (let alone any specific harm that would result from disclosure), or to enable Plaintiffs to analyze such claims and respond. Indeed, the Motion does not even attempt to explain which of the requested documents might contain such information, or what the information is.  Accordingly, Queens Billing has failed to carry its burden of establishing that the documents requested by the Subpoena are not discoverable.  *See Universitas*, 2013 WL 57892, at *2 ("The movant bears the burden of persuasion on a motion to quash.").

Finally, to the extent that the Court denies the Motion, Plaintiffs do not object to a confidentiality order limiting disclosure of the records to Plaintiffs in this action.

Thank you for your consideration in this regard.

Respectfully submitted,

Stern & Montana, LLP

By: _____/s/ Daniel S. Marvin_____
Daniel S. Marvin

cc:     All Counsel (via E-filing)