# Exhibit "K"



## NASSAU COUNTY CLERK'S OFFICE
### ENDORSEMENT COVER PAGE

Recorded Date: 08-19-2005
Recorded Time: 10:41:43 a

Liber Book: M  29257
Pages From:      333
         To:      346

Record and Return To:
NATIONWIDE
SOUTHPOINT PLAZA II STE. 300
380 SOUTHPOINTE BLVD.
CANONSBURG, PA  15317

Control Number: 1931
Ref #: CW  042804
Doc Type: M01  MORTGAGE

Location:                  Section   Block        Lot      Unit
HEMPSTEAD (2820)           0042      00266-00    00001

Consideration Amount:      750,000.00

KAL001

Taxes Total         7,845.00
Recording Totals       77.00
Total Payment       7,922.00

THIS PAGE IS NOW PART OF THE INSTRUMENT AND SHOULD NOT BE REMOVED
KAREN V. MURPHY
COUNTY CLERK



2005081901931

M01.
14

Parcel #
x 42/266/1

Prepared By:
NICOLE VERDILE

Record and Return Address:

NATIONWIDE   Southpointe Plaza II
              Suite 300
              380 Southpointe Blvd.
              Canonsburg, PA 15317
60 70162      (800) 920-0050
              C
              FL. - HE

S 42
B 266
L 1

Reference # ████2453
Servicing # ████5266

# NEW YORK
# CREDIT LINE MORTGAGE
(Open End)

## WORDS USED OFTEN IN THIS DOCUMENT

(A) "Mortgage" means this document, which is dated **March 29, 2005**.

(B) "Borrower" means
**MARK MIRVIS and LYUBOV MIRVIS**

who shall also be the person(s) who signs this Mortgage. Borrower will sometimes be referred to as "I" and shall be deemed to be plural if more than one person signs this Mortgage. Borrower's address is
**289 BAYBERRY DR, HEWLETT, NY 11557**

(C) "Lender" means **JPMorgan Chase Bank, N.A.**  . Lender is a national banking association.
Lender's address is
**1111 Polaris Parkway, Columbus, OH  43240**
any communication to the Lender should be sent to
c/o Chase Home Finance LLC, 250 West Huron Road, P. O. Box 93764, Cleveland, OH  44113

(D) "Agreement" means the Home Equity Line of Credit Agreement dated the same date as this Mortgage. Under the Agreement, I may borrow up to a maximum principal amount of
**Seven Hundred Fifty Thousand and 00/100**  Dollars
(U.S. $ **750,000.00**  ) subject to the terms of the Agreement. The amount I owe may fluctuate from time to time. Lender and I contemplate, as provided in the Agreement, that there will be a series of advances, payments and readvances during the period of time when I can "draw" against the line of credit. The aggregate amount of principal available to Borrower will never exceed the maximum principal amount shown above. I agree that this Mortgage shall continue to secure all sums advanced under the terms of the Agreement including, without limitation, any sums that are advanced by Lender whether or not at the time the sums are advanced there is any principal sum outstanding under the Agreement. The parties to the Agreement intend that this Mortgage shall secure unpaid balances, and all other amounts due to Lender under this Mortgage and under the Agreement, including any extensions, renewals or modifications of the Agreement. For example, should the Agreement be amended to extend the period during which the Borrower can obtain advances, or a similar modification, this Mortgage will continue to secure the indebtedness owed under the Agreement.

(E) "Property" means the property that is described below in the section titled "Description of the Property."

NYLCMT (Rev. 01/10/06)                Page 1 of 12

(F) "Sums Secured" means the amounts described below in the paragraph titled "Borrower's Transfer to Lender of Rights in the Property." The Sums Secured by this Mortgage will not exceed the amounts owed under the Agreement together with any expenses/costs incurred by Lender due to Borrower's default in meeting Borrower's obligations under the Mortgage which qualify as Incidental Amounts.

(G) "Incidental Amounts" include amounts permitted under Part 648 of the New York Tax Regulations as disbursements made to protect the security of the Mortgage and the value of the Property, with interest on such disbursements at the periodic rate stated in the Agreement, including for example, where the payments represent:

    (i) expenses incurred by Lender on behalf of Borrower in the event of Borrower's failure to perform a covenant or obligation relating to maintaining the Property or preserving its value and protecting Lender's lien under this Mortgage that would result in an event of default under the terms of this Mortgage;

    (ii) expenses incurred by Lender in the event of a foreclosure, and

    (iii) interest and late payment charges.

## CREDIT LINE MORTGAGE

This is a credit line mortgage as that phrase is defined in New York Real Property Law §281. The Mortgage secures the original indebtedness and also the indebtedness created by future advances made under the Agreement within 20 years from the date this Mortgage is recorded, to the same extent and with the same priority of lien as if such future advances had been made at the time this Mortgage was recorded, although there may have been no advances made at the time of execution and acknowledgement of the Mortgage and although there may be no indebtedness outstanding at the time any advance is made. The total amount of indebtedness secured by this Mortgage at any one time shall not exceed the Maximum Principal Amount, plus interest, and plus any additional Incidental Amounts.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Mortgage. This means that, by signing this Mortgage, I am giving Lender those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A)  Pay all the amounts that I owe Lender as stated in the Agreement;

(B)  Pay, with interest, any amounts that Lender spends under this Mortgage, to protect the value of the Property and Lender's rights in the Property;

(C)  Keep all of my other promises and agreements under this Mortgage.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (I) below:

(A)  The Property which is located at
    **289 BAYBERRY DRIVE, HEWLETT HARBOR, NY 11557-2721**
    This Property is in     **NASSAU**     County in the State of New York. It has the following legal description:

SEE ATTACHED "EXHIBIT A" FOR THE DESCRIPTION OF THE PROPERTY

THE ABOVE MENTIONED PROPERTY IS OR WILL BE IMPROVED BY A 1-2 FAMILY DWELLING ONLY.

NYLCMT              Page 2 of 12

(B) All buildings and other improvements that are located on the Property described in Paragraph (A) of this section;

(C) All rights in other property that I have as owner of the Property described in Paragraph (A) of this section included in the phrase "together with the appurtenances and all the estate and rights of the grantor in and to said premises" as described in §255 of New York's Real Property Law;

(D) All rents or royalties from the Property described in Paragraph (A) of this section;

(E) All mineral, oil and gas rights and profits, water rights and water stock that are part of the Property described in Paragraph (A) of this section;

(F) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in paragraph (A) of this section;

(G) All fixtures that are now or in the future will be on the Property described in Paragraphs (A) and (B) of this section, and all replacements of and additions to those fixtures, except for those fixtures, replacements and additions that under the law are "consumer goods" and that I acquire more than ten days after the date of the Agreement. Usually, fixtures are items that are physically attached to buildings, such as hot water heaters;

(H) All of the rights and property described in Paragraphs (B) through (F) of this section that I acquire in the future; and

(I) All replacements of or additions to the property described in Paragraphs (B) through (F) and Paragraph (H) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that except for the "exceptions" listed in any title insurance policy which insures Lender's rights in the Property: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender, and (C) There are no outstanding claims or charges against the Property except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE MORTGAGE

This Mortgage contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

I promise and I agree with Lender as follows:

1. **BORROWER'S PROMISE TO PAY PRINCIPAL AND INTEREST UNDER THE AGREEMENT AND OTHER PAYMENT OBLIGATIONS**

I will promptly pay to Lender when due: principal, interest, prepayment, late charges and all other charges due under the Agreement.

## 2. AGREEMENTS ABOUT PAYMENTS OF TAXES AND INSURANCE

I will pay, when due, all taxes, assessments, leasehold payments or ground rents (if any), and hazard insurance on the Property and mortgage insurance (if any). Lender specifically reserves to itself and its successors and assigns the unilateral right to require that I pay to it on the day monthly payments are due an amount equal to one-twelfth (1/12) of the yearly taxes, and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth (1/12) of yearly premium installments for hazard and mortgage insurance, all as Lender reasonably estimates initially and from time to time, as allowed by and in accordance with applicable law.

## 3. BORROWER'S OBLIGATION TO PAY CHARGES AND ASSESSMENTS AND TO SATISFY CLAIMS AGAINST THE PROPERTY

I will pay all taxes, assessments, and any other charges and fines that may be imposed on the Property and that may be superior to this Mortgage. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this by making the payments that are described in Paragraph 2 above when they are due, directly to the person, organization, governmental authority, or other party. Promptly after making any of those payments I will give Lender a receipt which shows that I have done so.

Any claim, demand or charge that is made against property because an obligation that has not been fulfilled is known as a "lien." I will promptly pay or satisfy all liens against the Property that may be superior to this Mortgage. However, this Mortgage does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) I, in good faith, argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up.

## 4. BORROWER'S OBLIGATIONS TO OBTAIN AND KEEP HAZARD INSURANCE ON THE PROPERTY

I will obtain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies, and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. It is possible that the insurance policy will have provisions that may limit the insurance company's obligation to pay claims if the amount of coverage is too low. Those provisions are known as "coinsurance requirements." Lender may not require me to obtain an amount of coverage that is more than the larger of the following two amounts: either (i) the amount that I owe to Lender under the the Agreement and under this Mortgage; or (ii) the amount necessary to satisfy the coinsurance requirements. In addition to the hazard insurance required above, if the Property is located in a Special Flood Hazard area I will obtain and maintain flood damage insurance coverage equal to the lower of the unpaid principal balance of the Agreement or the maximum amount available from time to time under the National Flood Insurance Act of 1968 as amended.

I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. Lender will have the right to hold the policies and renewal notices that I receive.

I will pay premiums on the insurance policies by making payments as described in Paragraph 2 above by paying the insurance company directly when the premium payments are due. If Lender requires, I will promptly give Lender all receipts of paid premiums and all renewal notices that I receive.

If there is a loss of or damage to the Property, I will promptly notify the insurance company and Lender.

If I do not prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds." The proceeds will be used to repair or to restore the damaged Property unless: (a) it is not economically possible to make the repairs or restoration; or (b) the use of the proceeds for that purpose would lessen the protection given to Lender by this Mortgage; or (c) Lender and I have agreed in writing not to use the proceeds for this purpose. If the repair or restoration is not economically possible or if it would lessen Lender's protection under this Mortgage, then the proceeds will be used to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. The use of the proceeds to reduce the amount that I owe to Lender will not be a prepayment that is subject to the prepayment charge provisions, if any, under the Agreement.

If I abandon the Property, or if I do not answer, within 30 days, a notice from the Lender stating that the insurance company has offered to settle a claim for insurance benefits, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. The 30-day period will begin on the date the notice is mailed or, if it is not mailed, on the date the notice is delivered.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Agreement, that use will not delay the due date or change the amount of my monthly payments under the Agreement and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes. If Lender acquires the Property under Paragraph 17 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater than the amount that I owe to Lender under the Agreement and under this Mortgage immediately before the Property is acquired by Lender or sold.

If I fail to maintain coverage as required in this section, I authorize Lender to obtain such coverage as Lender in its sole discretion determines appropriate to protect its interest in the Property in accordance with the provisions of Paragraph 6. I understand and agree that any coverage Lender purchases may cover only its interest in the Property and may not cover my interest in the Property or any personal property therein. I also understand and agree that the premium for any such insurance may be higher than the premium I would pay for such insurance.

## 5. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL OBLIGATIONS IN LEASE

I will keep the Property in good repair. I will not destroy, damage or substantially change the Property, and I will not allow the Property to deteriorate. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. If I acquire fee title to the Property, the leasehold and fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

## 6. LENDER'S RIGHT TO TAKE ACTION TO PROTECT THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Mortgage, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's right in the Property (such as for example, a legal proceeding in bankruptcy, in probate, for condemnation, or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions under this Paragraph 6 may include, for example, paying any sums secured by a lien which has priority over this Mortgage or any advance under the Agreement or this Mortgage, appearing in court, paying reasonable attorneys' fees, paying any sums which I am required to pay under this Mortgage, and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. I will pay to Lender any amounts which Lender spends under this Paragraph 6. I will also pay interest on those amounts at the same rate stated in the Agreement. However, if payment of interest at that rate would violate the law, I will pay interest on the amounts spent by Lender under this Paragraph 6 at the highest rate that the law allows. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph.

This Mortgage will protect Lender in case I do not keep this promise and pay those amounts with interest. Although Lender may take action under this Paragraph 6, Lender does not have to do so.

## 7. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before one of those inspections is made, Lender must give me notice stating a reasonable purpose for the inspection, that purpose must be related to Lender's rights in the Property.

## 8. AGREEMENTS ABOUT CONDEMNATION OF THE PROPERTY

A taking of property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds deriving from all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following amount: (A) the total amount that I owe to Lender under the Agreement and under this Mortgage immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me. The use of the proceeds to reduce the amount that I owe to Lender will not be a prepayment that is subject to the prepayment charge provisions, if any, under the Agreement.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, then Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. The 30 day period will begin on the date the notice is mailed or, if it is not mailed, on the date the notice is delivered. If any proceeds are used to reduce the amount of principal which I owe to Lender under the Agreement, that use will not delay the due date or change the amount of any of my monthly payments under the Agreement and under Paragraphs 1 and 2 above.

## 9. CONTINUATION OF LENDER'S RIGHTS

Even if Lender does not exercise or enforce any right of Lender under this Mortgage or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will still have the right, under Paragraph 17 below, to demand that I make Immediate Payment in Full (See Paragraph 17 for a definition of this phrase) of the amount that I owe to Lender under the Agreement and under this Mortgage.

## 10. LENDER'S ABILITY TO ENFORCE MORE THAN ONE OF LENDER'S RIGHTS

Each of the Lender's rights under this Mortgage is separate. Lender may exercise and enforce one or more of those rights under law, one at a time or all at once.

## 11. OBLIGATIONS OF BORROWERS; AGREEMENTS CONCERNING CAPTIONS

If more than one person signs this Mortgage as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Mortgage. Lender may enforce Lender's rights under this Mortgage against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under the Agreement and under this Mortgage. However, if one of us does not sign the Agreement, then (A) that person is signing this Mortgage only to give that person's rights in the Property to Lender under the terms of this Mortgage; (B) that person is not personally obligated to make payments or to act under the Agreement or under this Mortgage; and (C) agrees that Lender and anyone else who signs this Mortgage may agree to extend, modify, forbear or make any accommodations regarding the terms of this Mortgage or the Agreement without that person's consent. The captions and titles of this Mortgage are for convenience only. They may not be used to interpret or to define the terms of this Mortgage.

NYLCMT

## 12. AGREEMENTS ABOUT GIVING NOTICES REQUIRED UNDER THIS MORTGAGE

Unless the law requires otherwise, any notice that must be given to me under this Mortgage will be given by delivering it or by mailing it addressed to me at the address stated in the section above titled "Description of the Property."

A notice will be delivered or mailed to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Mortgage will be given by mailing it to Lender's address stated in Paragraph (C) of the section above entitled "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of a different address. A notice required by this Mortgage is given when it is mailed or when it is delivered according to the requirements of this Paragraph 12.

## 13. GOVERNING LAW; SEVERABILITY.

The extension of credit secured by this Mortgage is governed by federal law, which for the purposes of 12 USC § 85 incorporates Ohio law. However, the interpretation and enforcement of this Mortgage shall be governed by the law of the jurisdiction in which the Property is located, except as preempted by federal law. In the event that any provision or clause of this Mortgage or the Agreement conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Agreement which can be given effect without the conflicting provision. To this end the provisions of this Mortgage and the Agreement are declared to be severable.

## 14. BORROWER'S COPY OF THE AGREEMENT AND OF THIS MORTGAGE

I will be given a copy of the Agreement and of this Mortgage. Those copies must show that the original Agreement and Mortgage have been signed. I will be given those copies either when I sign the Agreement and this Mortgage or after this Mortgage has been recorded in the proper official records.

## 15. BORROWER'S OBLIGATION TO PAY MORTGAGE INSURANCE PREMIUMS

If Lender requires mortgage insurance as a condition of making the loan that I promise to pay under the Agreement, I will pay the premiums for that mortgage insurance. I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums in the manner described in Paragraph 2 above.

## 16. TRANSFER OF THE PROPERTY OR OF A BENEFICIAL INTEREST IN BORROWER WHICH IS NOT A NATURAL PERSON

If all or any part of the Property or any interest in the Property is sold or transferred by me (or if Borrower is not a natural person but is a corporation, partnership, trust or other legal entity and if a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, except as otherwise provided, Lender may, at Lender's option, declare all the Sums Secured by this Mortgage to be immediately due and payable. This requirement is called "Immediate Payment in Full." Lender shall have no right to declare all sums immediately due and payable in the event of (a) the creation of a lien or encumbrance subordinate to this Mortgage which does not relate to a transfer of rights of occupancy in the Property; (b) the creation of a purchase money security interest for household appliances; (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant; or (d) the grant of any leasehold interest of three years or less containing an option to purchase.

If Lender exercises its option to declare the Sums Secured by this Mortgage to be immediately due and payable, Lender shall give me a notice of acceleration in accordance with Paragraph 12 hereof. Such notice shall provide for a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay the sums declared due. If I fail to pay such sums prior to the expiration of this period Lender may, without further notice or demand on me, invoke any remedies permitted by this Mortgage.

## 17. LENDER'S RIGHTS IF I FAIL TO KEEP MY PROMISES AND AGREEMENTS

**Except as provided in Paragraph 16 above, I will be in default:**

**NYLCMT**

(A) I fail to make any payment required by this Mortgage or the Agreement when it is due;
(B) I have engaged in or I engage in fraud or material misrepresentation, either by act or omission, in connection with this Mortgage and Agreement at any time during the application process or during the term of this Mortgage and Agreement; or
(C) I act or fail to act in a way that adversely affects the Lender's security under this Mortgage or any right Lender has in such security under this Mortgage.

If a default occurs and all of the conditions stated in subparagraphs (D), (E) and (F) of this Paragraph 17 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Agreement and under this Mortgage. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 17 only if all of the following conditions are met:

(D) I am in default.
(E) Lender sends to me, in the manner described in Paragraph 12 above, a notice that states:
    (i) The promise or agreement that I failed to keep;
    (ii) The action that I must take to correct that default;
    (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
    (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
    (v) That if I meet the conditions stated in Paragraph 18 below, I will have the right to have Lender's enforcement of this Mortgage discontinued and to have the Note and this Mortgage remain fully effective as if immediate payment in full had never been required; and
    (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Mortgage, and to present any other defenses that I may have.
(F) I do not correct the default stated in the notice from Lender by the date stated in that notice.

## 18. MY RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS MORTGAGE DISCONTINUED.

Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Mortgage discontinued. I will have this right at any time before a judgment has been entered enforcing this Mortgage if I meet the following conditions:

(A) I pay to Lender the full amount that then would be due under this Mortgage and the Agreement as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Mortgage; and
(C) I pay all of Lender's reasonable expenses in enforcing this Mortgage including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Agreement and under this Mortgage continue unchanged.

NYLCMT

If I fulfill all of the conditions in this Paragraph 18, then the Agreement and this Mortgage will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Mortgage discontinued if Lender has required immediate payment in full under Paragraph 17 above.

## 19. DISCONTINUANCE OF ENFORCEMENT

Lender may discontinue any proceeding Lender begins to enforce the terms of this Mortgage. Lender may do so in its sole discretion.

## 20. LENDER'S RIGHTS TO RENTAL PAYMENTS FROM THE PROPERTY AND TO TAKE POSSESSION OF THE PROPERTY

As additional protection for Lender, I give to Lender all of my rights to any rental payments from the Property. However, until Lender requires Immediate Payment In Full under Paragraph 17 above, or until I abandon the Property, I have the right to collect and keep those rental payments as they become due if I have not given any of my rights to rental payments from the Property to anyone else, and I will not do so without Lender's consent in writing. If Lender requires Immediate Payment In Full under Paragraph 17 above, or if I abandon the Property, then Lender, persons authorized by Lender, or a receiver appointed by a court at Lender's request may:

(A) collect the rental payments, including overdue rental payments, directly from the tenants;
(B) enter on and take possession of the Property;
(C) manage the property; and
(D) sign, cancel and change leases.

I agree that if Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 19, the tenants may make those rental payments to Lender without having to ask whether I have failed to keep my promises and agreements under this Mortgage.

If there is a judgment for Lender in a lawsuit for foreclosure and sale, I will pay to Lender reasonable rent from the date the judgment is entered for as long as I occupy the Property. However, this does not give me the right to occupy the Property.

All rental payments collected by Lender or by a receiver, other than rent paid by me under this Paragraph 20, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the amount that I owe to Lender under the Agreement and under this Mortgage. The costs of managing the Property may include receiver's fees, reasonable attorneys' fees, and the costs of any necessary bonds. Lender and the receiver will be obligated to account only for those rental payments that they actually receive.

## 21. DEFAULT NOTICE

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, I MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF I HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE ME WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH I CAN EXERCISE THIS RIGHT.

## 22. LOAN CHARGES

If the loan secured by this Mortgage is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Agreement.

### 23. LENDER'S OBLIGATION TO DISCHARGE THIS MORTGAGE WHEN THE AGREEMENT AND THIS MORTGAGE ARE PAID IN FULL

When Lender has been paid all amounts due under the Agreement, and under this Mortgage, Lender will discharge this Mortgage by delivering a certificate stating that this Mortgage has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

### 24. AGREEMENTS ABOUT NEW YORK LIEN LAW

I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that if, on the date this Mortgage is recorded in the proper official records, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts, which I receive and which I have a right to receive from Lender under the Agreement, as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding these amounts as a "trust fund" means that I have a special responsibility under the law to use the amounts in the manner described in this Paragraph 24.

### 25. MORTGAGE RECORDING TAXES AND FILING FEES

To the extent permitted by law, I will pay any additional mortgage recording taxes and filing fees which may become due in connection with this Mortgage. This will include the costs of filing any affidavits or other documents which may become necessary in order to obtain the priority of this Mortgage's lien, release this lien or enforce this Mortgage.

If I fail to pay any of these mortgage recording taxes or filing fees which may become due, the Lender may make these payments and the amounts paid will be added to the amount due under the Agreement.

### 26. ADDITIONAL CHARGES

I agree to pay reasonable charges as allowed by law in connection with the servicing of this loan including, without limitation, the costs of obtaining tax searches and subordinations. Provided, however, that nothing contained in this section is intended to create and shall not be construed to create any duty or obligation by Lender to perform any such act, or to execute or consent to any such transaction or matter, except a release of the Mortgage upon full repayment of all Sums Secured thereby.

### 27. AFFIDAVITS AND OTHER DOCUMENTS

I will, on the Lender's request, sign any affidavits or other documents which may be necessary in order to maintain the priority of this Mortgage's lien, release the lien or enforce this Mortgage.

### 28. RIDERS TO THIS MORTGAGE.

If I execute one or more riders and recorded together with this Mortgage, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Mortgage as if the rider(s) were a part of this Mortgage. [Check applicable box(es)]

☐ Condominium Rider          ☐ 1-4 Family Rider
☐ Planned Unit Development Rider   ☐ Other(s) _____

By signing this Mortgage I agree to all of the above.

Witnesses                                              Borrower(s)

_____      _Mark Mirvis_____ (Seal)
                                                       **MARK MIRVIS**


_____      _Lyubov Mirvis_____ (Seal)
                                                       **LYUBOV MIRVIS**


                                     _____ (Seal)

                                     _____ (Seal)

                                     _____ (Seal)

                                     _____ (Seal)

## ACKNOWLEDGEMENT

STATE OF NEW YORK, COUNTY OF _Nassau_ SS:

On the _29_ day of _March_, in the year of _2005_ before me, the undersigned, personally appeared _Mark Mirvis, Lyubov Mirvis_ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
[Notary Public]

MARLISSA PINA
Notary Public, State of New York
No. 01PI6087977
Qualified in Queens County
Commission Expires March 03, 20_07_

[Note: For acknowledgments taken outside New York, use the following language

STATE, DISTRICT OF COLUMBIA, TERRITORY, POSSESSION OR FOREIGN COUNTRY )SS:

On the         day of                    , in the year of           before me, the undersigned, personally appeared                            , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual made such an appearance before the undersigned in the [insert the city (or political subdivision) and the state or country or other place where the acknowledgment was taken.]

_____
[Notary Public]

## LEGAL DESCRIPTION

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Hewlett Harbor, Town of Hempstead, County of nassau and State of New York, known and designated as and by lot 1 in Block 266 on a certain map entitled, "Map of Carvel Homes at Hewlett, Augusr, 1950, Vandewater & Lapp, Engineers and Surveyors" and filed in the Office of the Clerk of the County of Nassau on January 8, 1951, under file #5132, which said lot according to said map is bounded and described as follows:

BEGINNING at a point on the westerly side of Auerbach Avenue at the extreme southerly end of an arc connecting the westerly side of Auerbach Avenue with the southerly side of Bayberry North;

RUNNING THENCE along the westerly side of Auerbach Avenue, South 6 degrees 03 minutes East, 119.07 feet;

THENCE South 78 degrees 43 minutes 50 seconds West, 118.42 feet;

THENCE North 11 degrees 16 minutes 10 seconds West, 140.23 feet to the southerly side of Bayberry North;

THENCE along the southerly side of Bayberry North, North 83 degrees 52 minutes East, 120.50 feet to the extreme westerly end of the above mentioned arc;

THENCE southeasterly along said arc of a circle bearing to the right, having a radius of 10 feet, a distance of 15.71 feet to the point or place of BEGINNING.

Tax Id: 42#266/1