

**GTPC** GARY TSIRELMAN P.C.

ATTORNEYS & COUNSELORS AT LAW

129 LIVINGSTON STREET
SECOND & THIRD FLOORS
BROOKLYN, NY 11201
T: (718) 438-1200 • F: (718) 438-8883
nbowers@gtmdjd.com

| Gary TSIRELMAN M.D. | Stefan BELINFANTI | Douglas MACE |
| Darya KLEIN | Ilya MURAFA | Stephen GURFINKEL |
| Selina CHIN | Nicholas BOWERS | Jennifer RAHEB |
| Irena GOLODKEYER | Sebastian MELO | Evan POLANSKY |
| David GOTTLIEB | Joseph PADRUCCO | |

06/10/2016

BY ECF
Honorable Peggy Kuo
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:** *Allstate Ins. Co., et al.*, v Mirvis, et al., (08-CV-4405): **Reply in support Motion to Quash Subpoena from Plaintiffs to JPMorgan Chase for non-party's bank records**

Dear Judge Kuo:

      We submit this letter reply in support of the previous motion quash the third-party subpoena on behalf of non-party Queens Billing, Inc. ("Queens"), pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure. Queens also submits the supplemental declarations of Roman Matatov and Rina Esterov, Esq., C.P.A., in support of the motion. Queens also submits a corrected list of all payments made by Queens to Nortmed Management, Inc. ("Nortmed") as Exhibit 1.

**I. Plaintiffs Fail to Demonstrate the Subject Subpoenas Seek Relevant Documents**

      Federal Rule of Civil Procedure 69(a)(2) does not allow a judgment creditor to issue a post-judgment subpoena for the financial records of a non-party because "disclosure concerning the assets of a non-party is not generally contemplated by Rule 69(a)." *Uniden Corp. of America v. Duce Trading Co., ltd.*, 1993 WL 286102 at *1 (W.D.N.Y. 1993). To the extent that non-parties may be targeted for discovery at all under Rule 69(a), they may "only be examined about the assets of a judgment debtor and cannot be required to disclose their own assets." *Castomar Shipping Co., Ltd. V. Kim-Sail, Ltd.*, 1995 WL 736907 at *3 (S.D.N.Y. 1995). Thus, any discovery served upon a third party under Rule 69(a) must be "tailored to the search for the debtor's hidden assets." *Jacobson v. Moller & Moller*, 2007 U.S. Dist. LEXIS 48646, 2007 WL 1989260 (E.D.N.Y. July 5, 2007)(citing *D'Avenza S.P.A. v. Garrick & Co.*,

96 Civ. 0166 (DLC)(KNF), 1998 U.S. Dist. LEXIS 243, at *9 (S.D.N.Y. Jan. 14, 1998)). Furthermore, post-judgment discovery may be permitted against a third party only "upon a somewhat heightened showing of necessity and relevance -- i.e., at least some demonstration of concealed or fraudulent transfers or alterego relationship with the judgment debtor." *Uniden Corp. v. Duce Trading Co.*, 89-CV-0878E, 1993 U.S. Dist. LEXIS 10441, at *2 (W.D.N.Y. July 19, 1993) (citing *Blaw Knox Corp. v. AMR Industries, Inc.*, 130 F.R.D. 400, 403 (E.D.Wis. 1990); *Strick Corp. v. Thai Teak Products Company, Ltd.*, 493 F. Supp. 1210, 1217-1218 (E.D.Pa. 1980); *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559, 562 (S.D.N.Y. 1977); *Caisson Corp. v. County West Bldg. Corp.*, 62 F.R.D. 331, 333-335 (E.D.Pa. 1974)). Contrary to Plaintiffs' assertions in their opposition, "[w]hile the discovery standard [under Rule 69(a)] is broad, '[t]hat is not to say, however, that plaintiff may embark on a fishing expedition" of third parties' documents and accounts. *GMA Accessories v. Elec. Wonderland, Inc.,* 2012 U.S. Dist. LEXIS 72897, at *19 (S.D.N.Y. May 22, 2012)(quoting *D'Avenza S.P.A.*. 1998 U.S. Dist. LEXIS 243 at *9).

It is the Plaintiffs' burden to demonstrate that "the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 562 (S.D.N.Y. 1977); *see also GMA Accessories,* 2012 U.S. Dist. LEXIS 72897, at *24. Courts have found such relationships in a number of situations, none of which apply here. For example, such a relationship has been found to exist when the third party was an employee or board member of the judgment debtor and therefore had control of the judgment debtor's assets. *See D'Avenza S.P.A.* 1998 U.S. Dist. LEXIS 243 at *9-*11. Courts have also found such a relationship when the third parties are secured creditors or otherwise directly implicated in the operations of the judgment debtor or the facts giving rise to judgment. *Universitas Educ., LLC v. Nova Group, Inc.*, 2013 U.S. Dist. LEXIS 1720, *13-*18 (S.D.N.Y. Jan. 4, 2013) (in a case based on a suit for defendant benefit plan trustee's failure to pay life insurance benefits, the court denied motions to quash subpoenas served on various third parties including secured creditors of judgment debtor, employees of judgment debtor, an administrator of the subject trust, and insurers who had paid trustee on the policies at issue).

Here, Plaintiffs admit that the amounts paid to Nortmed were relatively small, on the order of "tens of thousands" of dollars. Plfs. Opp. at 2. Queens' submissions corroborate that small amount. *See* Exhibit 1. Plaintiffs' attempts to link payments to the Judgment Debtors utterly fail to offer any substantial evidence that Queens is in receipt of any of Nortmed's assets aside from a single check for $3,000 issued a few months after a payment Queens made to Nortmed. As set forth in the accompanying declaration of Roman Matatov, such payment was a refund based on Nortmed's failure to perform all the work promised in exchanged for the

check dated January 31, 2012. Second Matatov Decl. ¶¶5-9. Plaintiffs submit no other evidence that Queens is in possession of Nortmed's assets, nor do Plaintiffs present any evidence that Queens' accounts will reveal information about Nortmed's assets.[1]

Plaintiffs make no such showings of a close relationship. Rather, they base their right to unbounded discovery of Queens' financial records entirely upon a relatively small number of payments Queens made to Nortmed. Plaintiffs do not submit evidence showing that Queens controlled or was a partner with Nortmed; they do not submit evidence showing that Nortmed transferred any significant assets to Queens; they submit no evidence showing that Queens' relationship with Nortmed was anything other than a business relationship.

It is notable that Plaintiffs are unable to cite a single decision upholding a post-judgment subpoena of a third party on the basis that such third party transferred money to the judgment debtor. It of course makes sense that an entity openly paying a judgment debtor would not be the vehicle for illicitly hiding funds from the judgment creditor because it stands to reason the judgment debtor would be transferring money out of its accounts to hide them rather than into its accounts that would be inevitably seized by the judgment creditors. Furthermore, Mr. Matatov has already stated that Queens has done no further business with Nortmed; Queens thus cannot owe Nortmed any more money. Plaintiffs' apparent argument in the alternative that somehow a single $3,000 payment to Queens, made shortly after a payment from Queens to Nortmed and thus is clearly a refund check, gives rise to a reasonable expectation that Queens' corporate accounts will somehow uncover a vast network of accounts hiding Nortmed's assets is similarly ludicrous.[2] It is clear from all submissions that the relationship between Queens and Nortmed was a business relationship.

Plaintiffs have also not stated with specificity how the accounts would uncover other entities Plaintiffs' believe are involved in secreting Nortmed's assets. Plaintiffs' rely on vague assertions that Queens' accounts will somehow reveal entities involved in hiding Nortmed's assets without naming such entities. Plaintiffs could have narrowly tailored the subpoena to seek information about transfers to or from entities it suspects are involved with hiding Nortmed's assets and to any transactions involving the known accounts of the other Judgment Debtors. Instead,

---

[1] Instead, Plaintiffs resort to implying that because a different insurance company sued Mr. Matatov and a different company owned by him in a case not involving the judgment debtor and that never went to trial, Plaintiffs ought to be allowed unbounded discovery of Queens's financial records. Indeed, Plaintiffs admit that they rely only on allegations and not proven facts. Such submission by Plaintiffs is tantamount to name-calling, as it neither is connected to the narrow allowable purpose of third-party discovery under Rule 69(a) nor actually reflects any proven facts.

[2] Plaintiffs also brazenly assert that Queens is hiding the assets of other Judgment Debtors without submitting a single piece of evidence in support. Plfs. Opp. at 4.

Plaintiffs seek unfettered access to a third-party's banking records without seeming to know for what they are even looking. Plaintiffs also do not set forth how they would know which payments to and from Queens would be legitimate or made in furtherance of a scheme to hide the Judgment Debtor's assets.

Plaintiffs thus appear to be engaging in an impermissible fishing expedition into Queens' financial records. *See D'Avenza S.P.A.*, 1998 U.S. Dist. LEXIS 243, at *9. Should this motion be denied, Plaintiffs will likely issue further subpoenas seeking the financial records for entities with which Queens does business based only on the fact that Queens has paid or been paid by such entities. Such unlimited discovery would prejudice Queens because it would come to appear that if a company does business with Queens, Plaintiffs will subpoena its corporate bank accounts. This would impede Queens's ability to do business, s it would deter businesses that do not wish to be turn over their bank accounts to Plaintiffs from doing business with Queens.

Plaintiffs have thus failed to fulfill their burden to establish that all contents of Queens' bank accounts are relevant and that Queens had a relationship with the Judgment Debtors sufficient to warrant unlimited discovery of its bank accounts. The motion to quash therefore ought to be granted.

## II. The Esterov and Matatov Declarations and Exhibit 1 to the Motion Contained Correctable Errors

Plaintiffs make much of an additional pair of checks, one written by Queens and made out to Nortmed for $8,829.00 on January 31, 2012, and the other written by Nortmed and made out to Queens for $3,000.00 on April 12, 2012. As set forth in the attached Declarations of Roman Matatov, owner of Queens, and the accountant for Queens Rina Esterov, Esq., C.P.A., this omission was the result of a miscommunication; Ms. Esterov failed to do a comprehensive search of its files from Queens for years prior to 2013. Second Esterov Decl. ¶¶4-7. Mr. Matatov further based his earlier Declaration upon the data provided to him by his accountant and therefore also omitted the subject checks. Second Matatov Decl. ¶¶2-5. Furthermore, after conducting a full review of the Queens files, Ms. Esterov also discovered she had omitted a payment of $270.00 made by Queens to Nortmed on September 30, 2014. Second Esterov Decl. ¶7. Attached hereto as Exhibit 1 is the full list of all the payments made by Queens to Nortmed, reflecting the two corrections.

## III. Conclusion

Thus, for the foregoing reasons, Plaintiffs' subpoena served on JPMorgan Chase should be quashed insofar as it seeks bank records related to Queens Billing, Inc.

Thank you for your consideration of this letter.

Respectfully,

/s/ _____
Nicholas Bowers, Esq.
*Counsel for Queens Billing, Inc.*
Gary Tsirelman P.C.
129 Livingston, 2nd Floor
Brooklyn NY 11201

Cc: All Counsel via ECF