UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE CO., et al.,

Plaintiffs,

-against-

MARK MIRVIS, et al.

Defendants.

Civ. Action No. 08-CV-4405(SLT)(PK)

SUPPLEMENTAL AFFIDAVIT OF
TATYANA MIRVIS IN OPPOSITION TO
MOTION TO AVOID
FRAUDULENT TRANSFER

STATE OF NEW YORK   )
                    ).ss:
COUNTY OF NASSAU     )

TATYANA MIRVIS, duly sworn, deposes and says:

1.      I am a non-party in this action but caught in its ever expanding web by virtue of the fact that I am the daughter of defendant Mark Mirvis.  In this motion, plaintiff Allstate Insurance Co., seeks to take the home where my parents and my family live (we share one house—we always did).  That property, which I own, is located at 289 Bayberry Drive North, Hewlett Harbor, New York (the "Property").

2.      This Supplemental Affidavit is submitted with the Court's consent, granted on December 2, 2016, during oral argument on a different motion where I have also been drawn in, as a non-party, defending some $180,000 of non-party funds that Allstate has enjoined.

3.      In this Affidavit, I clarify some of the inconsistent statements made in a prior Affidavit that I submitted in connection with this motion, dated May 19, 2016.  Also submitted is the Affidavit of Mark Mirvis, sworn to December 15, 2016.

4.      Between 2010 and 2013, a great deal of the expenses in not just carrying the Property, but also in supporting my parents, were paid out of bank accounts that I opened

and own.

5.      In early 2010, my parents sold a condominium in Brooklyn.  Due to significant real estate investments in Florida that turned on them in 2008 and 2009, their access to their bank accounts had been restricted.  I did not know the extent of those restrictions or the details of why they were put in place, but when my parents asked me to open an account at HSBC Bank to receive proceeds of the condominium sale, I was happy to oblige. Two deposits, in the amounts of $258,129 and $46,675, for a total of $304,804 was deposited there.

6.      Over time, I deposited to that HSBC account my own funds.

7.      The funds generated by the condominium sale were completely exhausted by sometime in 2012.  From that point on, whatever expenses were paid out of that HSBC account represented my money.

8.      Between 2010 and 2013, $540,023 was expended from the HSBC account. While my father received some income and the proceeds from a pension account over the next five years, and he used those funds to pay expenses, I carried the payment of the bulk of our collective bills.

9.      While this may seem odd, it is not uncommon in our Russian community, in the same way that multiple generations of families living together in one house is not uncommon.

10.     In his accompanying Affidavit, my father explains the reason that the Property was transferred to me but then reversed.

11.     I confess to not knowing the details of why those transfers took place, only that my parents told me that it was the proper way to proceed.

12.     At the time of the 2013 transfer, I had vague knowledge of Allstate's lawsuit

2

against my father.  In fact, despite Allstate's innuendo, until I was pulled into this case as a non-party, I knew no details of that lawsuit.  I never asked for details and my parents did not volunteer any.

13.     From 2013 through today, I paid almost all of our collective bills, from the proceeds of an investment I have in a pharmacy and other money I and my husband earned or had in the bank.

14.     Allstate claims that I was a young woman and can show no source of funds.

15.     Ignoring the gross stereotype that a young woman cannot have a source of funds, that is not true.

16.     I was a partner in a restaurant, I sell clothing, and have an investment in a pharmacy.[1]  To my knowledge, these businesses are not restricted to a specific gender or age.  In fact, despite Allstate's mountain of paper and its regular claims that I was too young (or too female?) to earn an income, it can point to nothing that supports its claim that this income is not mine—all of it.  It is.  I earned it, I reported it on my tax returns, and I paid the taxes on those earning.  Anything Allstate claims in response is fiction and the product of twisted words and intimation.

17.     My husband's and my income in 2013 was $250,392, $646,066 in 2014 and $560,316 in 2015.  That money did not fall from the sky and I was the source of those earnings, not my parents.  That Allstate cannot accept this fact does not change it.

18.     My father did pay some bills since 2013, but they were much smaller amounts.  They are detailed in his accompanying Affidavit.

19.     I know that Allstate challenges my representations made in my earlier

_____

[1]     My day to day involvement has been more limited since my son was born.

3

Affidavit addressed to the payments, made since 2010.  Allstate calls me a liar after I wrote that I paid the Property's carrying costs but did not account for payments made by my parents toward the carrying costs of the Property.

20.     I never intended to make sweeping statements that only I paid these costs, I did not.  From 2010 through approximately 2012, more than $300,000 of my parents money, from the sale of their Brooklyn condominium, funded the payment of our bills.  In this period, my father earned some money and also paid some bills.  That decreased after 2013, but never completely, and between 2013/14 and 2016, I paid some $300,000 in our collective expenses.

21.     That Allstate can point to payments my father made for sundry expenses in carrying the Property, as it does in its motion papers, proves nothing.  First, many of those payments were from 2010-2013, when my father earned some money and withdrew funds from his pension so that he could pay whatever expenses he could.  Second, he made every effort to pay expenses, as he could, even after the Property was transferred to me.  Finally, that he paid approximately $130,000 is not terribly relevant when he admits some income and when contrasted to what I paid.  It certainly does not—cannot—support Allstate's contention that the Property is "really" his.

22.     Concerning the Property transfers, as I mentioned, I did not know their details.  I do know that in 2015, our accounting firm, Rozel & Haykin, CPA, while preparing the tax returns for me and my husband, informed us that I could not deduct the Property's deductible carrying cost because I was not the owner of the Property.  The timing of our accountant's suggestion and the subsequent transfer was completely coincidental and unrelated to Allstate's entry of a judgment against my father.  I certainly had no knowledge of that judgment.  This transfer was made because I essentially paid for the Property by

4

now, or a large part of it, and done to allow me to deduct the Property's carrying costs.

23.     And while Allstate points to the date of the 2015 transfer, it ignores the five-plus years of my involvement, or the fact that we have *all* lived at the Property since we moved there, in 1999.

24.     There can be no argument that the payments I made, and which directly carried the Property, of which I now own outright, were not reasonable and fair consideration for my parents' transfer of the Property to me.

25.     But in any event, there was *nothing* fraudulent about the Property's transfer from my parents—one of whom is also a non-party—to me. Everything about the transfers was legitimate, despite Allstate's endless spin and dark tales. Had my father undertaken all of this to hide his assets or his conduct, he did a remarkably bad job of doing so.

26.     At bottom, there was, and remains, nothing nefarious about what took place, and looking beyond Allstate's baseless accusations, anchored in innuendo and red herrings, makes that pain and obvious.

27.     There is no basis to give my father's transferred interest in the Property to Allstate, and this motion should be denied.

Tatyana Mirvis

Sworn to before me this ___
day of December 2016,

Notary Public

5