UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY, *et al.*,

Plaintiffs,

-against-

MARK MIRVIS, *et al.*,

Defendants.

08-CV-4405 (SLT) (PK)

**REPLY MEMORANDUM OF LAW IN RESPONSE TO SUPPLEMENTAL OPPOSITION AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO AVOID FRAUDULENT CONVEYANCES BY JUDGMENT DEBTOR MARK MIRVIS**

MORRISON MAHONEY LLP
ATTORNEYS FOR PLAINTIFFS
ALLSTATE INSURANCE COMPANY, ET AL.
120 BROADWAY, SUITE 1010
NEW YORK, NEW YORK 10271
TELEPHONE: (646) 870-1741

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ........................................................................................................................ 4

   I.   THE MIRVIS NON-PARTIES' NEW C.P.L.R. § 5225(b) ARGUMENT IS NOT ONLY UNTIMELY AND UNAUTHORIZED, BUT ALSO MERITLESS ................................ 4

   II.   THE 2nd TM AFFIDAVIT AND THE MM AFFIDAVIT ARE IMPLAUSIBLE, CONTRADICTORY, AND PROVIDE NO DEFENSE TO THE MOTION ................... 7

      A.   The Incredible and Wildly Different 2nd TM Affidavit is not a mere "Clarification" of the 1st TM Affidavit, but a Desperate Fraud Upon the Court ....................................... 8

      B.   The MM Affidavit is Implausible and Incomplete, to the Extent it is Properly Considered by the Court at All ................................................................................. 11

CONCLUSION .................................................................................................................... 13

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Am. Fed. Title Corp. v. GFI Mgmt. Servs., Inc.,*
   126 F. Supp. 3d 388, 401 (S.D.N.Y. 2015)................................................................................. 6

*Governale v. Environmental Hydronics, Inc.*,
   No. 87 Civ. 1700, 1992 U.S. Dist. LEXIS 1300 (E.D.N.Y. 1992) .......................................... 7

*Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*
   41 A.D.3d 25 (1st Dep't 2007) .............................................................................................. 6, 7

*HBE Leasing Corp. v. Frank*,
   48 F.3d 623 (2d Cir. 1995)..................................................................................................... 5, 6

*In re Rudgayzer*,
   915 N.Y.S.2d 22 (1st Dep't 2010) .......................................................................................... 12

*Mitchell v. Lyons Prof'l Servs., Inc.*,
   727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010) ............................................................................. 4

*Mitchell v. Lyons Prof'l Servs., Inc.*,
   109 F. Supp. 3d 555 (E.D.N.Y. 2015), *aff'd sub nom. Mitchell v. Garrison Protective Servs.,*
   *Inc.*, 819 F.3d 636 (2d Cir. 2016) ........................................................................................... 6

*Neshewat v. Salem*,
   365 F. Supp. 2d 508 (S.D.N.Y. 2005), *aff'd*, 194 F. App'x 24 (2d Cir. 2006)....................... 5, 6

*Resolution Trust Corp. v. Ruggiero*,
   994 F.2d 1221 (7th Cir. 1993) ................................................................................................. 5

*Sardis v. Frankel*,
   113 A.D.3d 135 (1st Dep't 2014) ............................................................................................ 5

*Universitas Educ., LLC v. Nova Grp., Inc.*,
   No. 11 CIV. 1590 LTS HBP, 2013 WL 6123104, at *3 (S.D.N.Y. Nov. 20, 2013) ................. 6

<u>Statutes</u>

Fed. R. Civ. P. 2 ........................................................................................................................... 6

Fed. R. Civ. P. 69 ................................................................................................................. *passim*

C.P.L.R. § 5225.................................................................................................................... *passim*

Uniform Fraudulent Conveyance Act ("UFCA"), D.C.L. Article X, §§ 270, *et seq*. ............ *passim*

D.C.L. § 273–a ................................................................................................................... 3, 5

D.C.L. § 278 ........................................................................................................................ 3, 5

**INTRODUCTION**

Plaintiffs-Judgment Creditors ("Plaintiffs") respectfully submit this reply memorandum of law, along with the accompanying declaration of Kristy R. Eagan, Esq. and exhibits thereto, in response to the supplemental opposition affidavits (ECF No. 459) (the "2nd Opposition") filed by the Mirvis Non-Parties pursuant to the Court's Minute Order dated December 2, 2016 (ECF No. 454)[1], and in further support of Plaintiffs' motion to avoid fraudulent conveyances made by the Judgment Debtor (Mark Mirvis) and his wife L. Mirvis to their daughter, Transferee Tatyana Mirvis ("T. Mirvis") (ECF No. 335) (the "Motion").[2]

**PRELIMINARY STATEMENT**

There can be no mistake that the purpose of the 2nd Opposition is to back-peddle on the perjurious, self-serving statements made by T. Mirvis in her previous opposition affidavit (ECF No. 363-1) (the "1st TM Affidavit"), which her subsequent deposition testimony confirmed was not only false in several material respects, but was also prepared entirely with information supplied to her counsel not by her, but by the Judgment Debtor and/or L. Mirvis. In yet another gambit by the Mirvis family to frustrate (or at least delay) Plaintiffs' enforcement of the entirely-unpaid Judgment, the 2nd Opposition asks the Court to entertain a new version of events which is wholly inconsistent with the 1st Affidavit (though unsupported by any independent documentary evidence whatsoever), under the euphemistic guise of providing "clarification." However, common sense, as well as any objective evaluation of the implausible 2nd Opposition, permits only one reasonable

---

[1] Although the Court's December 2nd Order only permitted the Mirvis Non-Parties "to file a supplemental affidavit of Tatyana Mirvis," *see* ECF No. 454 at ¶ 5, the 2nd Opposition also consists of a declaration by counsel containing legal arguments (ECF No. 459) (the "Silber Declaration") and an affidavit of the Judgment Debtor (Mark Mirvis) (ECF No. 459-2) (the "MM Affidavit"), in addition to the new affidavit of Tatyana Mirvis (ECF No. 459-1) (the "2nd TM Affidavit"). To the extent the Court decides to consider the extraneous Silber Declaration and MM Affidavit, this Reply will address all three documents included in the 2nd Opposition.

[2] Terms used but not defined herein shall have the meanings ascribed to such terms in the Motion and/or in the parties' briefs submitted in connection therewith. *See* ECF Nos. 335-1, 363, 367, 427, 429, & 459.

explanation: that T. Mirvis was caught in the lies of the 1st TM Affidavit and is now attempting to paper over those lies with the 2nd Opposition and the 2nd TM Affidavit.  Furthermore,  the affidavit of the Judgment Debtor included with the 2nd Opposition (ECF No. 459-2) (the "MM Affidavit") is quite clearly missing its third page, and all or part of 10 numbered paragraphs.  Plaintiffs' counsel alerted counsel for the Mirvis Non-Parties of this omission and were told that it would be investigated, but the missing pages were never provided or filed with the Court.  Simply put, even before turning to the substance of the nonsensical (and incomplete) 2nd Opposition, there is no reason to believe it is any more truthful than the first.

With respect to the new affidavits, both are riddled with surplusage, yet both tell the same story.  Because the Judgment Debtor defaulted on real estate loans in Florida and was admittedly liable to lenders there (ultimately yielding a $3 million judgment against him and three other judgment debtors in this action), he asked T. Mirvis to open an account at HSBC in her name for his and L. Mirvis' use.  Both affidavits agree that this account was initially funded with about $300,000 in proceeds from the sale of the Judgment Debtor's Brooklyn condominium, and both agree that T. Mirvis has paid about $300,000 in household expenses, including carrying costs on the Subject Property.  Thus even if the new version of the facts represented by the 2nd Opposition were credited, the affidavits concede that any "consideration" purportedly paid by T. Mirvis actually consisted of money that belonged not to her, but to her parents.  The 2nd TM Affidavit provides no explanation for the purpose and timing of the three Transfers and defers to the MM Affidavit, which explains only that the first Transfer was made on the advice of a certain attorney (who was previously convicted in connection with a No-fault insurance fraud scheme).  Moreover, the concession that $300,000 was transferred to a sham account in T. Mirvis' name, because the

Judgment Debtor faced liability from Florida banks and could not use an account in his own name, appears to amount to an admission of an additional fraudulent conveyance of cash in this amount.

In addition to the affidavits, the Mirvis Non-Parties filed the Silber Declaration, which is nothing more than an improper memorandum of law devoted to the argument that the Motion's invocation of C.P.L.R. Section 5225(b) is fatal, simply because the Motion does not seek "money or personal property." That argument must be rejected. First and foremost, the Mirvis Non-Parties were not granted leave to do anything other than supply a factual affidavit to the Court, and their attempt to proffer new legal arguments for the first time now must be cast aside. Moreover, even if the Court were to consider this new argument, it completely ignores that the Motion seeks reversal of the Transfers or execution pursuant to the UFCA, codified as Article X of the Debtor & Creditor Law (the "D.C.L."). According to clear Second Circuit precedent, a district court enforcing a judgment under Federal Rule 69(a) may order post-judgment remedies in accordance with substantive state law (such as the D.C.L.) through motion practice in the original action. Clearly, D.C.L. Sections 273–a and 278 contain no such limitation as to the type of property conveyed. Indeed, the Mirvis Non-Parties fail to mention that there is no C.P.L.R. provision similar to Section 5225 providing for a special proceeding and turnover with respect to real property, and that Section 5225 is frequently invoked nonetheless. Moreover, the Motion also sought relief with respect to any cash or other proceeds generated by the fraudulently conveyed Subject Property, such as the proceeds of any sale to a subsequent transferee, which could be subject to turnover or judgment directly under Section 5225(b).

Accordingly, and as discussed herein, the 2nd Opposition contains new allegations and arguments which, to the extent they are properly considered, provide no defense to the Motion.

## ARGUMENT

**I.    THE MIRVIS NON-PARTIES' NEW C.P.L.R. § 5225(b) ARGUMENT IS NOT ONLY UNTIMELY AND UNAUTHORIZED, BUT ALSO MERITLESS**

To the extent the Court considers the Silber Declaration, which is plainly beyond the scope of the Court's December 2nd Order, *see* ECF No. 454 at ¶ 5 (authorizing only supplemental affidavit of Tatyana Mirvis), it purports to "highlight a dispositive legal argument that prior counsel . . . did not make."  ECF No. 459 at ¶ 4.  In reality, however, this new argument is nothing more than a refashioning of a red herring already deployed in T. Mirvis' first opposition to the Motion (ECF No. 363) (the "1st Opposition"), *i.e.* that the apparent textual limitations of C.P.L.R. Section 5225(b) prevent Plaintiffs from avoiding these fraudulent conveyances.  As the Court is aware, Section 5225(b) authorizes a "special proceeding" in New York state courts to recover "money or other personal property" of a judgment debtor in the possession of a third party.  In other words, Section 5225(b) provides New York state courts with a procedure for seeking a turnover order as to personalty, but there is no equivalent provision in Article 52 of the C.P.L.R. specifically addressing real property.  The 1st Opposition had argued, despite clear Second Circuit precedent to the contrary, that Section 5225(b)'s reference to a "special proceeding" rendered the Motion procedurally improper, and that the Court therefore lacks personal jurisdiction over T Mirvis.  *See* ECF No. 363 at pp. 3-6.[3]  Of particular relevance here, the 1st Opposition's argument completely ignored the availability of post-judgment remedies for fraudulent conveyances authorized directly by the UFCA,[4] without reference to either the form of the proceeding or the

---

[3] Plaintiffs discussed that argument's utter lack of merit in their first reply.  *See* ECF No. 367, at pp. 2-4.

[4] Like its previous iteration, this updated Section 5225 argument ignores not only the independent fraudulent conveyance provisions of the D.C.L., but also the flexible manner in which federal courts have applied Federal Rule 69, in view of the imperfect fit between federal and state procedure.  *See Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 121 (E.D.N.Y. 2010) ("[Rule] 69(a) does not require strict adherence to state procedural law, and [] the judgment creditor may seek the relief provided under state law through a motion made in the original federal

nature of the property in question. *See* D.C.L. §§ 273–a (defining constructively fraudulent conveyance where transferor was defendant at time of transfer and where judgment remains unsatisfied) & 278 (authorizing avoidance of fraudulent conveyance and/or execution on property fraudulently conveyed); *see also Neshewat v. Salem*, 365 F. Supp. 2d 508, 521 (S.D.N.Y. 2005), *aff'd*, 194 F. App'x 24 (2d Cir. 2006) (avoiding intrafamily fraudulent conveyance of real property directly under D.C.L. 273–a); *Sardis v. Frankel*, 113 A.D.3d 135, 147 (1st Dep't 2014) (same).

This quixotic preoccupation with the wording of Section 5225(b) continues with the Silber Declaration, which is more akin to a memorandum of law and whose submission (as noted above) clearly exceeds the bounds of the December 2nd Order.[5]  According to this new and untimely argument, which appears to be the sole purpose of the Silber Declaration, the Motion is deficient because it seeks relief with respect to fraudulently conveyed real property, not "money or other personal property."  ECF No. 459 at ¶¶ 5-6.  As before, the 2nd Opposition once again ignores Sections 273–a and 278 of the D.C.L., which supply independent substantive post-judgment remedies. *See Neshewat*, 365 F. Supp. 2d at 521; *Sardis*, 113 A.D.3d at 147.  Remarkably, among the authorities offered in support of this argument, *see* ECF No. 459 at ¶ 7, is a footnote from the Second Circuit's decision in *HBE Leasing Corp. v. Frank*, whose actual language was conspicuously omitted from the Silber Declaration (likely because it eviscerates the argument):

> C.P.L.R. § 5225(b) authorizes a special proceeding by judgment creditors against third parties to recover *money or personal property* in which a judgment debtor has an interest; it does not explicitly relate to interests in real property.  Nevertheless, all of the parties appear to have assumed that section 5225(b) provides the procedural basis for this proceeding.  In any event, since diversity jurisdiction exists, the District Court had jurisdiction to entertain what would otherwise have

---

action."); *see also Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993) ("We do not think the draftsmen of Rule 69 meant to put the judge into a procedural straitjacket, whether of state or federal origin.").

[5] Counsel explains that he has "opted not to prepare a separate memorandum of law" because of the "brevity" of the new argument he would like to make, and not, of course, because such a memorandum and new argument would be grossly untimely and wholly unauthorized.  ECF No. 459 at ¶ 4.

been a plenary action based on New York substantive law, and no aspect of our
disposition turns on the technical availability of section 5225(b).

*HBE Leasing Corp. v. Frank*, 48 F.3d 623, 633 (2d Cir. 1995) (emphasis added).  The Silber

Declaration disingenuously describes this note as "highlight[ing] the limiting language of 'money

or personal property,'" ECF No. 459 at ¶ 7, when in fact it plainly does quite the opposite.[6]  Indeed,

as the *HBE Leasing* court explained, while C.P.L.R. 5225(b) may supply a procedural setting in

state court and may be routinely cited in federal court, that procedural function is not strictly

necessary in the latter tribunal, where "special proceedings" do not exist, and where post-judgment

relief may be sought by motion under state substantive law, such as Article X of the D.C.L.  *See*

Fed. R. Civ. P. 2 ("There is one form of action—the civil action."); *Mitchell v. Lyons Prof'l Servs.,*

*Inc.*, 109 F. Supp. 3d 555, 565–66 (E.D.N.Y. 2015), *aff'd sub nom. Mitchell v. Garrison Protective*

*Servs., Inc.*, 819 F.3d 636 (2d Cir. 2016) ("[T]here is no such thing as a special proceeding in

federal practice, so a judgment creditor proceeding under Fed.R.Civ.P. 69 cannot be faulted for

citing to C.P.L.R. § 5225.").[7]

The remaining cases cited in the Silber Declaration, *see* ECF No. 459 at ¶ 7, are similarly

unavailing.  With respect to *Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., B.V.*, which was

---

[6] The Silber Declaration also mischaracterizes *Neshewat v. Salem*, describing it as a case "where relief was sought under CPLR 5225(b) for the garnishment of rent payments."  ECF No. 459 at ¶ 9 (citing 365 F. Supp. 2d 508)).  Although it is true that the plaintiff in *Neshewat* did also seek garnishment of "future rents" under Section 5225, the court had <u>already</u> ordered the reversal of the intrafamily fraudulent conveyance of the realty itself, directly under the D.C.L. and without any reference to Section 5225.  *See Neshewat*, 365 F. Supp. 2d at 521, 525.

[7] In addition to mischaracterizing *Neshewat*, the Silber Declaration makes much of the fact that two other cases cited in Plaintiffs' September 7th Letter (ECF No. 429) did not involve fraudulent conveyances of real property under Section 5225(b), even though Plaintiffs never said they did.  *See* ECF No. 459 at ¶¶ 9-10.  Rather, these cases demonstrate that <u>the proceeds or dissipation</u> of fraudulently conveyed property may be "money or other personal property" subject to turnover or judgment directly under that provision.  *See* ECF No. 429, at pp. 2-3; *Am. Fed. Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F. Supp. 3d 388, 401 (S.D.N.Y. 2015) (Section 5225 "furnishes a mechanism" for obtaining money judgment if property fraudulently conveyed is sold or dissipated); *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11 CIV. 1590 LTS HBP, 2013 WL 6123104, at *3 (S.D.N.Y. Nov. 20, 2013) ("The property and casualty insurance proceeds that Petitioner seeks to have turned over in partial satisfaction of the Judgement are payable on account of storm damage to the Property."); *see also* ECF No. 335-1, at p. 16 (requesting relief with respect to the Judgment Debtor's interest in 289 Bayberry "and upon any proceeds thereof").

6

selectively quoted in the Silber Declaration, the First Department noted in passing the trial court's determination that "*delivery orders under CPLR 5225* can only apply to money or personal property." 41 A.D.3d 25, 30 (1st Dep't 2007) (emphasis added). Of course, it should come as no surprise that a New York state court would decline to issue a turnover order with respect to real property directly under Section 5225(b), and Plaintiffs have not requested that the Court do so here. Moreover, *Gryphon* involved neither fraudulent conveyances nor any part of the D.C.L. or other substantive state law providing post-judgment remedies. *See* 41 A.D.3d 25 at 36 (turnover order solely under Section 5225).[8]

Accordingly, the restriction of C.P.L.R. Section 5225(b) to "money or other personal property" provides no grounds whatsoever for denial of the Motion.

## II.    THE 2nd TM AFFIDAVIT AND THE MM AFFIDAVIT ARE IMPLAUSIBLE, CONTRADICTORY, AND PROVIDE NO DEFENSE TO THE MOTION

In addition to the legal argument improperly raised in the Silber Declaration, T. Mirvis and the Judgment Debtor also submitted sworn affidavits as part of the 2nd Opposition. Notably, the Judgment Debtor had not submitted any statement in connection with the 1st Opposition, likely because he was amply represented through T. Mirvis' 1st TM Affidavit, which he helped her former counsel prepare without any contribution from T. Mirvis. *See* ECF No. 424-2 at 98:14-100:15 (testimony of T. Mirvis that the 1st TM Affidavit was written by her former counsel with information not from her, but from her parents).[9] Now, T. Mirvis, having been caught at her

---

[8] The Silber Declaration also cites *Governale v. Environmental Hydronics, Inc.*, a decision which is unavailable to Plaintiffs, for the wholly irrelevant proposition that Section 5225(b) "applies to real property located outside the state because it is akin, legally, to personal property within the state." ECF No. 459 at ¶ 7 (citing No. 87 Civ. 1700, 1992 U.S. Dist. LEXIS 1300, at *5-8 (E.D.N.Y. 1992)). It is unclear, and the Mirvis Non-Parties make no attempt to explain, why this holding would have any bearing on the Motion, which concerns real property located in New York.

[9] Indeed, even as he evades the entirely unsatisfied Judgment, the Judgment Debtor has continued to pull the strings, not only working with T. Mirvis' former counsel to create sworn statements for his daughter to blindly sign, but even controlling and using bank accounts in her name.. *See, e.g.*, ECF No. 424-2 at 119:24-120:16 (testimony admitting accounts were created for the use of her parents and funded by cash proceeds of the sale of the Judgment Debtor's real

deposition in the lies in her first affidavit, we are supposed to believe that this second attempt to tell the truth is legitimate.  However, as set forth herein, there is no reason to believe that is the case; the Mirvis Non-Parties do not even bother attempting an innocent explanation as to why and how the admittedly false 1st TM Affidavit came to be created, or why it is now being replaced by two lengthier affidavits which present a vastly different version of events, ostensibly based on information which should have been available when the 1st Opposition was filed in May of 2016.[10] In any event, whether taken at face value or when viewed in the context of the Mirvis Non-Parties' conduct in this matter, the new affidavits are simply not credible, and the new story they tell is nonsensical and even, at times, puzzlingly unhelpful to their case.

A.    The Incredible and Wildly Different 2nd TM Affidavit is not a mere "Clarification" of the 1st TM Affidavit, but a Desperate Fraud Upon the Court

The Mirvis Non-Parties have described the 2nd Opposition as "clarify[ing] statements made by [T. Mirvis] in her prior Affidavit."  ECF No. 459 at ¶ 3; *see* ECF No. 459-1, at ¶ 3.  In their September 9, 2016 letter application for leave to file a second affidavit of T. Mirvis (ECF No. 427), the Mirvis Non-Parties provided only the vaguest of explanations for why any revision T. Mirvis' sworn statements is necessary.  Their counsel wrote that, after reviewing the 1st Opposition and 1st TM Affidavit, "it has become clear to me that there are factual statements and legal arguments concerning this opposition that are either inaccurate or incomplete."[11]  Of course,

---

property, because her parents did not want accounts in their own names); *id*. at 105:5-106:13, 122:14-125:23, 126:4-18, 157:5-158:12 (the Judgment Debtor uses the accounts to pay his personal expenses, writes checks on the accounts which he has T. Mirvis sign, and may even sign checks himself); *id*. at 222:9-223:3, 240:15-22, 248:25-249:7, 250:15-22, 251:21-252:21, 253:5-14, 316-2-7, 317-17-318:13, 319:10-320:4, 323:3-22 (the Judgment Debtor opened T. Mirvis' mail and deposited checks from the Massachusetts pharmacies in which she purportedly invested); ECF No. 386-39 (affidavit of handwriting expert that many of the checks and deposit slips drawn on accounts in T. Mirvis' name at TD Bank and HSBC were likely written by the Judgment Debtor himself).

[10] Once again, however, both of the new affidavits in the 2nd Opposition are devoid of any bank statements, communications, or other independent documentary evidence which would tend to support their new story.

[11] Underscoring the egregiousness of the "factual mulligan" T. Mirvis has attempted here, the September 9th application provided an example of one such "inaccurate" statement: "while [the 1st TM Affidavit] recites certain

8

the far more likely impetus for the 2nd Opposition is the fact that shortly before the September 9th application, on August 17, 2016, Plaintiffs deposed T. Mirvis in accordance with the Court's July 5, 2016 order (ECF No. 388), and that testimony was not only damning but directly contradicted her prior sworn statements. At her deposition, T. Mirvis acknowledged that four of the numbered paragraphs in the 1st TM Affidavit, *see* ECF No. 363 at ¶¶ 3-5 & 12, were <u>false</u> statements. *See* ECF No. 424-2 at 98:17-99:13. Specifically, T. Mirvis admitted that she (1) *did* know that the Judgment Debtor was a defendant in this action at the time of the transfer, (2) *did not* pay all of the carrying costs on the property since 2010, but instead since 2013 or 2014, and (3) that the first two transfers took place *not* because she wanted security for her payments and could not obtain a mortgage, but rather because "everything was filed incorrectly." *See id*. at 102:5-22, 103:16-105:16, 388:24-391:3. Plainly, these are not innocent mistakes or ancillary details, but calculated falsehoods concerning critical issues which simply did not weather the scrutiny of post-judgment discovery and enforcement proceedings.

In the 2nd TM Affidavit, T. Mirvis laments the "ever expanding web" of this litigation, apparently imagining that this "web" is somehow Plaintiffs' desire, and not the result of her father's shell-game evasion of the Judgment and her well-documented role in the same. In this second chance at candor, T. Mirvis starts by stating that she only paid "a great deal" of the carrying costs on the Subject Property. ECF No. 459-1 at ¶ 4. She once again admits that she opened a bank account at HSBC for her parents in her own name because certain Florida real estate

---

payments that she has made in carrying the home since 2010, those payments and their source are not correctly described resulting in an incorrect factual statement as to the source of those payments." ECF No. 427, at p. 1. That vague sentence obscured a very serious admission: that T. Mirvis falsely claimed to have paid "all of the carrying costs" since 2010. ECF No. 363-1 at ¶ 4. This is no minor detail, but was central to the 1st Opposition. *See, e.g.*, ECF No. 363 at p. 2 (May 2013 Transfer "took place because Tatyana was already paying all of the carrying costs on the Subject Property and she wanted to protect her interest").

investments had "turned on them in 2008 and 2009,"[12] and that the account was initially funded with $304,804 of proceeds from the sale of her parents' Brooklyn condominium.  *Id*. at ¶ 5.[13] Perhaps realizing that using her parents' money to pay carrying costs would not help her, she tersely adds that "[o]ver time, [she] deposited to that HSBC account [her] own funds," *id*. at ¶ 6, and then indignantly suggests that Plaintiffs are being ageist or sexist for expecting her to explain how she came by hundreds of thousands of dollars independently of her parents (having already admitted to taking more than $300,000 from the sale of their condo).  *See id*. at ¶¶ 13-16.[14]

With respect to the strange sequence of three Transfers, by which she obtained an interest, reversed the transaction, and then took sole title to the Subject Property, she simply says that her father's affidavit would "explain[] the reason that the Property was transferred to me but then reversed," *id*. at ¶ 10, though the MM Affidavit says nothing of the sort.  Later, in a truly stunning effort to downplay her perjured statement that she paid "all of the carrying costs," she now says that the Judgment Debtor has actually been paying some of those expenses, and that his payment of "$130,000 is not terribly relevant."  *Id*. at ¶ 21.  Then, in stark contrast to her defensive self-portrayal as an independent businessperson, she claims that she participated in the three Transfers at issue but "did not know their details," simultaneously insisting that their timing had nothing to do with the entry of the Judgment in this action, and tacking on the totally new explanation that

---

[12] Despite T. Mirvis' feigned ignorance, this "turn" was a default on real estate loans, which resulted in a Florida lawsuit that produced a 2011 judgment in excess of $3 million against the Judgment Debtor, as well as judgment debtors Mark Lupolover, Ruven Katz, and Igor Zhuravsky.  *See* ECF No. 386-27 (Certified Judgment from Lee County, FL Clerk of Court).  In other words, T. Mirvis appears to admit that she accepted more than $300,000 from her parents in order to frustrate their other creditors, which likely amounts to another fraudulent conveyance.

[13] T. Mirvis later states that she "paid some $300,000 in our collective expenses," without explaining why using the proceeds from the sale of her parents' condominium would actually count as consideration from her.  *Id*. at ¶ 20.

[14] However, she fails to explain how, independently of the Judgment Debtor, she came to have the funds for an "investment in a pharmacy" (which we know are actually two Massachusetts pharmacies, *see* ECF No. 424), or how she became a "partner in a restaurant," activities for which she has purportedly earned nearly $1.5 million in just three years.  *Id*. at ¶¶ 16-17 ("I was the source of those earnings.").

the final Transfer was intended to allow her to deduct the carrying costs on her income taxes. *Id.* at ¶ 22. Clearly, T. Mirvis only projects business responsibility when it suits her interests.

In any event, even accepting the 2nd TM Affidavit at face value, the only truly relevant facts are that she received about $300,000 from the sale of her parents' Brooklyn condominium (in what was likely itself a fraudulent conveyance meant to frustrate the Judgment Debtor's Florida creditors), and that she paid about $300,000 in "collective expenses," including the much-discussed carrying costs on the Subject Property. All of the window dressing concerning her and her husband's income, and her various purported vocations, is wholly irrelevant to the fact that the "consideration" she allegedly paid was admittedly provided by her parents.

**B.    The MM Affidavit is Implausible and Incomplete, to the Extent it is Properly Considered by the Court at All**

Although the Judgment Debtor declined to submit an affidavit or otherwise participate in the 1st Opposition, now he submits the MM Affidavit, notwithstanding the clear limits of the leave granted in the Court's December 2nd Order. *See* ECF No. 454 at ¶ 5. As an initial matter, only about 13 of the MM Affidavit's 23 numbered paragraphs was actually filed, with an entire page omitted; Plaintiffs alerted the Mirvis Non-Parties of this fact, but no corrective action has been taken. *See* Eagan Decl. ¶ 3. Concerning the portion that was actually filed, no cognizable defense to the Motion can be found. As in the 2nd TM Affidavit, the Judgment Debtor freely admits that about $300,000 in proceeds from the sale of his and his wife's Brooklyn condominium was used to fund a bank account in T. Mirvis' name, and those funds were then used to pay for the Mirvis' "housing and household expenses." ECF No. 459-2 at ¶¶ 5-7. Despite his insistence that the reason for doing this "was a combination of easier access to the sales proceeds and the difficulty in doing it our self (sic)," *id*. at ¶ 7, the MM Affidavit actually admits that an account in T. Mirvis'

name was used because "we were liable to the [Florida] lenders for some of the deficiencies[, and] my access to bank and banking services became limited," *id*. at ¶ 5.[15]

With respect to explaining the Transfers, the MM Affidavit in its complete form might have addressed all three, but the version that was actually filed only attempts to explain the first. According to the Judgment Debtor, in early 2013 Albert Rudgayzer, Esq., whom he calls "a friend and attorney," recommended that he and L. Mirvis transfer a 50% interest in the property for "estate planning purposes," though one is left to wonder why T. Mirvis would not simply inherit the property if her parents passed away. *Id*. at ¶ 12. Why T. Mirvis gave that 50% interest back in a second Transfer, only to later receive 100% in a third Transfer, is entirely unaddressed. Moreover, although the Judgment Debtor purportedly "trusted his advice," *id*. at ¶ 13, Rudgayzer was previously indicted for his participation in a no-fault medical billing fraud scheme, pled guilty in 2010 to offering a false instrument for filing in the second degree, and was sentenced to 1-year conditional discharge and restitution and suspended from the practice of law for two months. *See* Eagan Decl. ¶ 5; Exh. "A" (Nov. 28, 2005 Press Release by New York Attorney General and Insurance Superintendent); *In re Rudgayzer*, 915 N.Y.S.2d 22 (1st Dep't 2010) (disciplinary decision based upon criminal conviction). In any event, notwithstanding the inescapable observation that the Judgment Debtor may not have relied on the best legal advisor, nothing in the MM Affidavit actually excuses the Transfers at issue here.

Accordingly, the 2nd TM Affidavit and the MM Affidavit represent nothing more than a clumsy effort to fabricate retroactive justification for the fraudulent conveyances of 289 Bayberry, and they serve as no defense to the Motion.

---

[15] Thus, like the 2nd TM Affidavit, the MM Affidavit appears to admit that the disposition of the condo sale proceeds to an account in T. Mirvis' name was intended to defraud the Florida creditors of the Judgment Debtor.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully submit that the Motion should be granted.


Dated:  New York, New York,
        January 20, 2017

                                    MORRISON MAHONEY LLP


                                    By:_____/s/ Andrew S. Midgett_____
                                        Robert A. Stern, Esq.
                                        Daniel S. Marvin, Esq.
                                        Andrew S. Midgett, Esq.
                                        Kristy R. Eagan, Esq.
                                        120 Broadway, Suite 1010
                                        New York, New York 10271
                                        T: (212) 825-1212
                                        F: (212) 825-1313
                                        *Attorneys for Plaintiffs-Judgment Creditors*

13