UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE CO., et al.,

                      Plaintiffs,

-against-

MARK MIRVIS, et al.

                      Defendants.

Civ. Action No. 08-CV-4405(SLT)(PK)

SUPPLEMENTAL AFFIDAVIT OF MARK MIRVIS IN OPPOSITION TO MOTION TO AVOID FRAUDULENT TRANSFER

STATE OF NEW YORK   )
                              ).ss:
COUNTY OF NASSAU   )

MARK MIRVIS, duly sworn, deposes and says:

1. I am a defendant in this action. I submit this Affidavit in conjunction with the Supplemental Affidavit of my daughter Tatyana Mirvis, sworn to December 15, 2016.

2. I do not restate Tatyana's discussion about expenses paid, and the sources of those payments. That information is correct.

3. This Affidavit is directed to the explanation for the transfer of our home to Tatyana, located at 289 Bayberry Drive North, Hewlett Harbor, New York (the "Property").

4. Initially, I wish to explain the circumstances surrounding the sale of a Brooklyn, New York condominium, in 2010, owned by my wife and me.

5. Separate from the condominium, I, with partners, owned property in Florida. We had overleveraged our properties, so that when the 2008 real estate crash hit, the banks foreclosed on those properties. In a number of cases, we were liable to the lenders for some of the deficiencies. As a result, my access to bank and banking services became limited and accounts that I had, in Chase, for example, were unusable.

6. Therefore, my wife and I asked Tatyana to open an account and receive the

proceeds of the condominium sale.

7. I emphasize that there was nothing wrong with this and we were not trying to avoid any party or obligation in doing it. It was a combination of easier access to the sales proceeds and the difficulty in doing it our self. Those sales proceeds amounted to approximately $304,804 and were used for our family's expenses (which included Tatyana and her family), including housing and household expenses. I cannot detail exactly for how long these funds carried us, but I would estimate that the period was approximately 18-24 months.

8. Since then, my income was varied and limited. Specifically, in 2012 I pulled $53,431 from my pension held at MetLife, and earned $213,138; in 2013 I withdrew and additional $48,000 from my pension, and earned $813; in 2014 I earned $29,322; and in 2015 I earned $20,141.

9. Since 2013, my wife and I were able to pay slightly less than $70,000 toward our housing expenses. In 2013, my wife and I paid approximately $23,807. In 2014, we paid approximately $18,792. In 2015 we paid less than $3,000.

10. Tatyana and her husband contributed the difference to cover what my wife and I could no longer pay.

11. Currently, and for the last three years, inclusive of 2016, she carried almost all of the Property's carrying costs and family expenses.

12. In early 2013, a friend and attorney, Albert Rudgayzer, Esq., suggested that my wife and I transfer a 50% interest in the Property to Tatyana. He said it would be a good idea as she was paying so much of its carrying costs and for estate planning purposes, in case either my wife or I passed away.

13. I confess to not understanding exactly the benefits, but I trusted his advice

and followed his suggestion.

14. Thereafter, for reasons that I cannot explain, we were informed that the transfer documents for that 50% interest were recorded incorrectly. Additionally, we were advised by others that given Allstate's pursuit of my assets, transferring the interest was not a good idea. So, that 50% was transferred back to me and my wife.

15. Tatyana had only a vague idea of what happened and why.

16. As the years went by, Tatyana paid hundreds of thousands of dollars to carry the Property and pay the household expenses, in excess of $300,000. I know because I prepared many of the bills and accounted for her income and expenses.

17. Later, in or about 2015, Tatyana tried to deduct the carrying costs for the Property. She was advised that because she did not own the Property, even though she made the payments, she could not take any deductions.

18. We promptly transferred the Property to her. Effectively and certainly by this date, she had paid for the Property and it was absurd that she could not take the deductions entitled to her under the law.

19. I do not ignore the fact that, in hindsight, some of what was done appears to be a clumsy attempt to hide from Allstate. That was not the case. Everything we did was done for a valid reason, and every action has an explanation.

20. I am sure that Allstate will ask if our lenders were made aware of these changes. They were not.

21. It would be manifestly unfair for Tatyana's Property, for which she has paid and continues to pay, to be taken from her based on Allstate's innuendo-based arguments of my wrongdoing.

22. Tatyana has paid and continues to pay for virtually all of the Property's

3

expenses.

23. As such, Allstate's motion should be denied.

_____
Mark Mirvis

Sworn to before me this 15th
day of December 2016

_____
Notary Public

[Notary Seal: DEVORAH ROTH, No. 01RO6190602, Exp. 07/28/20, NASSAU COUNTY, STATE OF NEW YORK]

4