UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
ALLSTATE INSURANCE COMPANY, et al., :
:
                    Plaintiffs, :     **MEMORANDUM AND ORDER**
:     08-CV-4405 (SLT)(PK)
              -against- :
:
MARK MIRVIS, et al., :
                    Defendants. :
------------------------------------------------------------ x

**Peggy Kuo, United States Magistrate Judge:**

Before the Court is Queens Billing, Inc.'s ("Queens Billing") Motion to Quash Subpoena, regarding a third-party subpoena served by Plaintiffs upon JPMorgan Chase seeking bank records of Queens Billing. (See Queens Billing Mot. to Quash, Dkt. 344; Subpoena, Dkt. 344-3.) The subpoena is part of Plaintiffs' post-judgment discovery, pursuant to Rule 69 of the Federal Rules of Civil Procedure (see Pls.' Resp. at 1, Dkt. 364), seeking to locate the assets of Nortmed Management, Inc. ("Nortmed") and other judgment debtors (*id.* at 2).

For the reasons discussed below, Queens Billing's motion is denied.

## **DISCUSSION**

Rule 69(a)(2) provides:

> In aid of [a money] judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

F. R. Civ. P. 69(a)(2). This post-judgment discovery must be "calculated to assist in collecting on a judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). Discovery sought pursuant to Rule 69, therefore, must relate to the existence or transfer of a judgment debtor's assets. *See id.*; *see also GMA Accessories, Inc. v. Electric Wonderland, Inc.*, No. 07-CV-3219 (PKC)(DF), 2012 WL 1933558, at *4 (S.D.N.Y., May 22, 2012); *Costomar Shipping Co., Ltd. v. Kim-Sail, Ltd.*, No. 95-CV-3349

1

(KTD)(JCF), 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y. 1977). However, post-judgment discovery is broad. *EM Ltd.*, 695 F.3d at 207.

In post-judgment discovery, "[p]laintiff is entitled to examine third parties to determine if a judgment debtor has concealed or transferred assets applicable to satisfying its judgment." *D'Avenza S.p.A. in Bankr. v. Garrick & Co.*, No. 96-CV-166 (DLC)(KNF), 1998 WL 13844, at *3 (S.D.N.Y. Jan. 15, 1998). "It is not uncommon to seek asset discovery from third parties…that possess information pertaining to the judgment debtor's assets." *EM Ltd.*, 695 F.3d at 207. Such discovery is permitted when the non-party and the judgment debtor have a relationship "sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Costomar*, 1995 WL 736907, at *3 (internal citations omitted). Whether to limit Rule 69 post-judgment discovery remains within the discretion of the district court pursuant to its powers under Federal Rule of Civil Procedure 26(b)(2). *EM Ltd.*, 695 F.3d at 207.

Queens Billing purports to handle insurance billing for medical offices and is not a party to the suit giving rise to the judgment Plaintiffs seek to enforce. (Queens Billing Mot. to Quash, Dkt. 344.) It does not dispute that it paid money to Nortmed, purportedly for "prepar[ing] physical litigation and arbitration files." (Decl. of Matatov ¶ 10, Dkt. 344-1.) However, it denied ever receiving money from Nortmed. According to a declaration submitted by Roman Matatov, who represents himself as the owner of Queens Billing, "I state unequivocally that Queens [Billing] has never received any money from any Defendant in the above-captioned suit or on behalf of any Defendant in this suit."[1] (*Id.* ¶ 7.)

After being confronted by a check from Nortmed to Queens Billing, submitted by Plaintiffs in support of their opposition to the instant Motion, Matatov submitted another unnotarized

---

[1] Although Matatov makes the declaration "under penalty of perjury," the statement is not notarized.

declaration admitting that he had "misstated the amount of money and checks that Queens [Billing] had written to Nortmed," and that he had "failed to recall" that Nortmed made a payment to Queens Billing for $3,000. (Suppl. Decl. of Matatov ¶¶ 2 & 8-9, Dkt. 377-2). He attributed this discrepancy to a "miscommunication" with his accountant. (*Id.* ¶ 2.) He tried to explain the $3,000 as a "partial refund" because Nortmed did not fully complete work it had agreed to do. (*Id.* ¶¶ 8-9.)

The information presented from both Plaintiffs and Queens Billing establishes that there were, in fact, transfers of assets between Queens Billing and Nortmed. The nature of these transfers, along with the relationship between these two entities, raises questions about the transfers' legitimacy. When default judgment was granted in this case, Nortmed was found to have participated in a RICO conspiracy in which it served as a clearinghouse "by receiving significant transfers of cash and checks from the [medical service provider] Defendants, which the Management Defendants [including Nortmed] funneled back to the Principal Defendants." *Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (SLT)(VVP), 2015 WL 1247103, at *5 (E.D.N.Y. Mar. 2, 2015), *R&R adopted*, 2015 WL 1539671 (E.D.N.Y. Mar. 31, 2015). This finding alone raises the specter that any services Nortmed claimed to have performed for a medical insurance billing entity such as Queens Billing were purely illusory, and that, therefore, any payments (or refunds) connected with such services were not legitimate. Matatov's conflicting statements, along with his strained explanations for them, do nothing to allay those suspicions.

The undersigned finds, therefore, that the relationship between Queens Billing and Nortmed "is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." *Costomar*, 1995 WL 736907, at *3. Because Queens Billing may be holding assets of the judgment debtors, or it may have been used to funnel money that is subject to judgment collection to other entities, Plaintiffs are entitled to obtain the discovery sought by the subpoena.

Queens Billing asks that, if the Court denies its motion, a protective order between Plaintiffs

and Queens Billing be ordered. (See Queens Billing Mot. to Quash at 3, Dkt. 344.) Plaintiffs do not object. (See Pls.' Resp. at 6, Dkt. 364.) The Court therefore orders Plaintiffs and Queens Billing to submit by **February 3, 2017** a joint proposed Protective Order for the Court to so-order.

## CONCLUSION

The Motion to Quash Plaintiffs' subpoena served on JPMorgan Chase that seeks records related to Queens Billing is denied. The documents are to be produced once the Protective Order is so-ordered.

Dated: Brooklyn, New York
      January 25, 2017

                              **SO ORDERED:**

                              *Peggy Kuo*
                              PEGGY KUO
                              United States Magistrate Judge