```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
ALLSTATE INSURANCE COMPANY, et al.   :
                                     :
                    Plaintiffs,      :
                                     :              REPORT AND
             -against-               :              RECOMMENDATION
                                     :
MARK MIRVIS, et al.,                 :              08-CV-4405 (SLT)(PK)
                                     :
                    Defendants.      :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company, and Allstate Property & Casualty Insurance Company ("Plaintiffs") brought this action pursuant to the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c)-(d), and 1964(c), and New York common law on October 30, 2008.  (Compl., Dkt. 1.)  On May 5, 2015, default judgment was entered for Plaintiffs in the amount of $45,657,401.01, for which the defaulting defendants are jointly and severally liable.  (Dkt. 303.)  On referral from the Honorable Sandra L. Townes is Plaintiffs' Motion to Avoid Fraudulent Conveyances ("Plaintiffs' Motion" or "the Motion") as to judgment debtor Mark Mirvis (Dkt. 335; Dkt. 357), which is part of Plaintiffs' efforts to enforce the default judgment.  A hearing on the Motion was held before the undersigned on June 6, 2017.

For the reasons discussed below, the undersigned respectfully recommends that Plaintiffs' Motion be granted.

## BACKGROUND

The subject of the instant motion is the real property located at 289 Bayberry Drive North in Hewlett Harbor, New York ("the Property").[1]  (Pls.' Mem. of Law at 1, Dkt. 335-1.)  Mark Mirvis

---

[1] Plaintiffs note that this address is sometimes listed as 289 Bayberry Drive in Hewlett, New York.  (Pls.' Mem. of Law at

1

("Mark") and his wife, Lyubov Mirvis ("Lyubov"), purchased the property in 1999 for $740,000.00. (See Sept. 1999 Deed, Exh. B to Marvin Decl., Dkt. 335-4.) The parties agree that in 2016 the fair market value of the Property was $1,020,000.00. (See Exh. C to Marvin Decl., Dkt. 335-5; Tatyana Mirvis Aff. ¶ 8, Dkt. 363-1.)

On May 20, 2013, Mark and Lyubov executed a bargain and sale deed (the "May 2013 Deed") through which they transferred 50 percent of the interest in the Property to their daughter, Tatyana Mirvis ("Tatyana" or "Movant"; collectively with Mark and Lyubov, the "Mirvises"). (See May 2013 Deed, Exh. D to Marvin Decl., Dkt. 335-6; Hr'g Tr. at 12, Dkt. 500.) The May 2013 Deed is blank in the section for denoting the consideration paid. (See Exh. D to Marvin Decl., Dkt. 335-6.) On October 20, 2013, Mark, Lyubov, and Tatyana executed a second bargain and sale deed (the "October 2013 Deed") through which Tatyana returned the 50 percent interest to Mark and Lyubov.[2] (See Oct. 2013 Deed, Exh. E to Marvin Decl., Dkt. 335-7.)

Mark and Lyubov executed a third bargain and sale deed on May 11, 2015 (the "May 2015 Deed") through which they transferred all interest in the Property to Tatyana. (See May 2015 Deed, Exh. F to Marvin Decl., Dkt. 335-8.) The consideration recited in the May 2015 Deed is "Ten Dollars and other valuable consideration." (*Id.*) Movant contends that the "other valuable consideration" refers to antecedent debt.

Plaintiffs address all three transfers in their papers, but it is the final transfer that, if not

---

1, n.1, Dkt. 335-1.)

[2] The Mirvises offer conflicting explanations for the May 2013 and October 2013 transfers. Initially, Tatyana stated that she returned the interest in the Property because she was unable to secure a mortgage for the Property. (Tatyana Mirvis Aff. ¶ 5, Dkt. 363-1.) But in a supplemental affidavit, Tatyana refers the court to her father's affidavit for an explanation, while stating: "I confess to not knowing the details of why [the May 2013 and October 2013] transfers took place, only that my parents told me that it was the proper way to proceed." (Suppl. Tatyana Mirvis Aff. ¶¶ 10-11, Dkt. 459-1.)

Mark, too, "confess[es] to not understanding exactly the benefits" of the May 2013 transfer. (Suppl. Mark Mirvis Aff. ¶ 13, Dkt. 466-1.) However, after going forward with the transfer, "for reasons [he] cannot explain, [he and Lyubov] were informed that the transfer documents for [Tatyana's] 50% interest were recorded incorrectly." (*Id.* ¶ 14.) He and Lyubov were also "advised by others that given Allstate's pursuit of [Mark's] assets, transferring the interest was not a good idea. So, that 50% was transferred back to [Mark and Lyubov]." (*Id.*)

2

fraudulent, would result in the Property's belonging to Tatyana.

# DISCUSSION

## I. Legal Procedure and Standard

Federal Rule of Civil Procedure 69 governs execution of a judgment, stating:

> The procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1).

No federal statute is applicable to the instant motion. The relevant New York state procedure is dictated by New York Civil Practice Law and Rule 5225(b), which "enables a judgment creditor to initiate special proceedings against transferees to set aside fraudulent transfers made by the judgment debtor." *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-CV-2609 (NG)(SMG), 2015 WL 269529, at *2 (E.D.N.Y. Jan. 21, 2015). Although the rule refers to "special proceedings," "[n]early every court in [the Second] Circuit to consider the issue has held that parties can bring a motion under [Rule] 69(a), rather than instituting a special proceeding under the New York state law." *N. Mar. I. v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (internal footnote omitted); *see Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-25 (E.D.N.Y. 2010); *see also S.E.C. v. Vuono*, No. 13-MC-405 (JFB), 2013 WL 6837568, at *3 (E.D.N.Y. Dec. 26, 2013); *S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07-CV-8849 (PKC), 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010). Thus, no special proceeding is necessary, and Plaintiffs may proceed with the instant motion.[3]

Plaintiffs seek to void a purportedly fraudulent conveyance. The New York Debtor and Creditor Law ("NYDCL") defines both actually and constructively fraudulent conveyances. *See* N.Y. Debt. & Cred. Law §§ 273-76. Section 273-a of the NYDCL ("Section 273-a") defines

---

[3] Movant argues in her papers that Plaintiffs' Motion is procedurally defective because a special proceeding is required. (Mem. of Law in Opp'n at 3-6, Dkt. 363.) However, at oral argument Movant withdrew this objection. (Hr'g Tr. at 3, Dkt. 500.)

3

constructive fraud in a conveyance when it is "a conveyance by a debtor in a judgment action for money damages where no payment has been made to the creditor." *Integrity Elecs., Inc. v. Garden State Distribs., Inc.*, No. 14-CV-3197 (BMC), 2016 WL 3637004, at *7 (E.D.N.Y. June 30, 2016). It provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273-a. "To prevail under [Section 273-a], a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636, 641 (2d Cir. 2016) (citation omitted). Proving the conveyor's intent is not a necessary element. *See Ostashko v. Ostashko*, No. 00-CV-7162 (ARR), 2002 WL 32068357, at *21 (E.D.N.Y. Dec. 12, 2002) ("None of [the NYDCL sections regarding constructive fraud] requires the plaintiff to show that the defendant acted with actual intent."); *U.S. v. Alfano*, 34 F. Supp. 2d 827, 844 (E.D.N.Y. 1999).

Whether there was fair consideration for a conveyance is a fact-specific inquiry, *In re Palermo*, No. 08-CV-7421 (RPP), 2011 WL 3874866, at *4 (S.D.N.Y. Sept. 2, 2011), and "general[ly], a fraudulent conveyance claim brought under section 273 places the burden of proving the lack of fair consideration upon the party challenging the conveyance." *U.S. v. McCombs*, 30 F.3d 310, 324 (2d Cir. 1994) (citation omitted). Certain factors may shift this burden, however, which are discussed further *infra*.

Fair consideration is comprised of "two elements – good faith and the payment of a fair equivalent value for the property interest conveyed." *Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 447 (S.D.N.Y. 2014); *see In re Sharp Int'l Corp.*, 403 F.3d 43, 53-54 (2d Cir. 2005). "To show fair

4

equivalent value, neither mathematical precision nor a penny-for-penny exchange is required." *Chen*, 8 F. Supp. 3d at 448 (citation omitted). Nonetheless, Section 272(b) of the NYDCL, which defines fair consideration as it concerns the discharge of an antecedent debt, "provides for an amount not disproportionately small as compared with the value of the property." *Id.* (citation omitted); *see Priestley v. Panmedix Inc.*, 18 F. Supp. 3d 486, 498 (S.D.N.Y. 2014).

"Value alone, however, even if given for the satisfaction of an antecedent debt, is not enough to rebut allegations of fraud." *Ostashko*, 2002 WL 32068357, at *22. "Even where there is a fair exchange of value to satisfy an antecedent debt, the conveyance may be set aside if good faith is lacking." *Palermo*, 2011 WL 3874866, at *4; *see also Sharp*, 403 F.3d at 54. Because "good faith is a somewhat elusive concept when dealing with claims of constructive fraud," *Chen*, 8 F. Supp. 3d at 448, it is more usefully defined in the negative. It "may be deemed lacking if there is no honest belief in the propriety of the activities in question, or if there is knowledge of the fact that the activities in question will hinder, delay, or defraud others." *Id.* (citation omitted); *see also Integrity Elecs.*, 2016 WL 3637004, at *8. "In short, the lack of good faith imports a failure to deal honestly, fairly and openly." *Ostashko*, 2002 WL 32068357, at *23 (citation omitted).

Some courts in the Second Circuit have taken the position that only the good faith of the transferee is relevant. *See, e.g., Integrity Elecs.*, 2016 WL 3637004, at *8; *Analogic Corp. v. Manuelian*, No. 12-CV-1428 (SLT)(VVP), 2014 WL 1330774, at *3 n.1. Others, however, consider the good faith of both the transferor and the transferee. *See Tube City IMS, LLC v. Anza Capital Partners, LLC*, No. 14-CV-1783 (PAE), 2016 WL 5864887, at *4 (S.D.N.Y. Oct. 6, 2016) ("The requirement of good faith is imposed on both the transferor and the transferee."); *Priestley*, 18 F. Supp. 3d at 498; *Chen*, 8 F. Supp. 3d at 447; *see also Integrity Elecs.*, 2016 WL 3637004, at *8 ("courts have considered that of both the transferor and the transferee"). At least one New York state court has argued that the proper interpretation of New York state law is to consider both. *See Chen*, 8 F. Supp. 3d at 447 n.15.

"[G]ood faith may be lacking because of a transferee's knowledge of a transferor's unfavorable financial condition at the time of the transfer." *Ostashko*, 2002 WL 32068357, at *23 (citation omitted).

## II. Analysis

It is uncontested that a judgment in an action for money damages was docketed against Mark Mirvis before he and Lyubov conveyed the Property to their daughter Tatyana. Plaintiffs named Mark as a defendant in this action in 2008 (Compl., Dkt. 1), and default judgment was entered against him in the amount of $45,657,401.01 on May 5, 2015 (Dkt. 303). Movant also does not contest that Mark has failed to satisfy the judgment. (Marvin Decl. ¶ 5, Dkt. 335-2; see generally Mem. in Opp'n, Dkt. 363.) This analysis therefore focuses on the question of fair consideration.

The deed for the May 2015 transfer states as consideration "Ten Dollars and other valuable consideration." Although the burden to prove fraud lies initially with the plaintiff, there is a "presumption of fraud" when "[a] conveyance was made without evidence of any tangible consideration." *Tube City*, 2016 WL 5864887, at *4 (quoting *McCombs*, 30 F.3d at 325). Consideration of a *de minimis* amount, such as "ten dollars," could, and in this case does, constitute no tangible consideration. *See, e.g., Alfano*, 34 F. Supp. 2d at 845-46. Furthermore, a conveyance is also presumptively fraudulent if it "involved consideration of which the nature and value were within the exclusive control of" the parties to the transfer. *McCombs*, 30 F.3d at 324. Such a situation arises, as it does here, when consideration is listed as some *de minimis* amount "and other valuable consideration," the value of which is left open-ended, to be filled in with information possessed only by the Mirvises. *See id.* at 325. In these instances, "the burden of coming forward with evidence on the fairness of the considerations shifts" to the parties to the transfer. *Palermo*, 2011 WL 3874866, at *7 (quoting *ACLI Gov't Sec., Inc. v. Rhoades*, 653 F. Supp. 1388, 1391 (S.D.N.Y. 1987)).

Moreover, "[i]n instances where the allegedly fraudulent conveyance took the form of an intra-family transfer, courts have been particularly apt to shift the burden to prove fair consideration to the parties to the transfer." *Tube City*, 2016 WL 5864887, at *4; *see also In re Khan*, No. 10-46901-ess, 2014 WL 10474969, at *9 (E.D.N.Y. Bankr. Dec. 24, 2014); *U.S. v. Mazzeo*, 306 F. Supp. 2d 294, 311 (E.D.N.Y. 2004); *Alfano*, 34 F. Supp. 2d at 845.  Because "the evidentiary facts as to the nature and value of" any meaningful "consideration are exclusively within" the Mirvises' control, and because of the intra-family nature of the transfer, the May 2015 transfer is presumptively fraudulent. It is therefore Movant's burden to rebut the presumption of fraud.

A. *Fair Equivalent Value*

Tatyana states that she has paid all "carrying costs" on the Property since 2010, which she asserts "include but are not limited to the mortgage, the home equity line of credit, the home owner's insurance, and property taxes." (Tatyana Mirvis Aff. ¶ 3, Dkt. 363-1.)  Indeed, she asserts that the May 2015 transfer "took place because [she] was…paying all of the carrying costs on the [Property], and wanted to protect the payments [she] made." (*Id.* ¶ 6.)  Specifically, she says that since 2010 she has "paid close to $355,779.58 in costs associated with the [Property]." (*Id.* ¶ 7.)  In support of this contention, she provides purported "samples of the payments made to: a) the mortgage; b) taxes; c) utilities; and d) insurance." (*Id.*)  These "samples" are comprised of (1) an assortment of bills addressed to Mark, or Mark and Lyubov, dated between December 22, 2015 and April 12, 2016, for a home equity line of credit with Chase, for gas supplied by National Grid, and for water supplied by American Water; (2) checks dated April 14, 2016 and May 13, 2016, drawn on a TD Bank account[4] with the name Tatyana Mirvis on the account, payable to Chase; (3) a check dated May 8, 2016, drawn on a TD Bank account[5] with the names Tatyana Mirvis and Alexander

---

[4] The account number is redacted in full.
[5] The account number is redacted in full.

7

Boriskin on the account, payable to "Donald X Clavin, Reciever [*sic*] of Taxes"; and (4) online payment confirmations dated between November 16, 2015 and May 17, 2016[6] from two TD Bank checking accounts for payments to Ocwen Loan Servicing, National Grid, PSEG Long Island, and Chubb. (See Exh. 1 to Tatyana Mirvis Aff., Dkt. 363-2.) The bills total $12,099.07; the payments and debits total $41,935.69. (See *id.*) There is no explanation provided for how these payments might come close to the $355,779.58 in carrying costs that Tatyana claims to have paid.

      Tatyana's argument appears to be that Mark and Lyubov accrued debt to her for these alleged payments. The plain language of NYDCL Section 273-a permits the discharge of antecedent debt to constitute fair consideration. However, Tatyana's sample documents all post-date May 2015, making it impossible for them to constitute *antecedent* debt. (See Exh. 1 to Tatyana Mirvis Aff., Dkt. 363-2.) Moreover, the "samples" provided by Tatyana are comprised of bills for the Property addressed to Mark, or Mark and Lyubov, with no indication that Tatyana made any of these payments; checks from Tatyana, with no indication that they relate to the Property; and online payment confirmations from TD Bank checking accounts that indicate neither who the account owner is nor how the payments relate to the Property. (See *id.*) In fact, bank statements and canceled checks dated between 2010 and May 2015 from the bank accounts of Mark and Lyubov reflect payments from those accounts for at least some of the Property's carrying costs, contradicting Tatyana's statement that she paid "all" of them. (See *id.*; Reply Mem. of Law, Dkt. 367; Exhs. A-I to Reply Mem. of Law, Dkts. 367-2 – 367-10.) "[P]ayments for undocumented or disproportionate loans do not constitute fair consideration." *Palermo*, 2011 WL 3874866, at *7. Where "no evidence has been presented…to indicate the amount of the debt, the amount by which the alleged debt was reduced, or even how such debt may have been incurred in the first place…a

---

[6] Some of the online payment confirmations list only a month and not a year, making it impossible to account for them in providing a date range.

conveyance will be found void." *Petersen v. Vallenzano*, 849 F. Supp. 228, 232 (S.D.N.Y. 1994).

Even if Tatyana were to have paid the carrying costs in the $355,779.58 amount that she claims, that figure is disproportionately small compared to the Property's agreed-upon market value of $1,020,000.00. Finally, there is no evidence that Tatyana assumed either the mortgage or the home equity loan on the Property. (See Tatyana Mirvis Aff. ¶¶ 7-10, Dkt. 363-1.) Accordingly, the undersigned respectfully recommends a finding that Movant has failed to show the transfer was made for a fair equivalent value.

B. *Good Faith*

Because the transfer was not made for a fair equivalent value, an absence of good faith need not be shown. In the alternative, however, the undersigned also respectfully recommends that the Court find an absence of good faith in the transfer.

The transfer was effected on May 11, 2015. At that time, Mark Mirvis had been a defendant in this action for seven years, and a $45,657,401.01 judgment had been docketed against him for two years. Tatyana was 30 years old. She initially states that at that time she "had no knowledge of [her] father's underlying conduct or of this lawsuit" (Tatyana Mirvis Aff. ¶ 12, Dkt. 363-1), but provides no explanation as to how she might have avoided this information for such an extended period of time. The undersigned finds her statement implausible. Moreover, in her supplemental affidavit, she suggests that perhaps she *did* know of the lawsuit, saying that two years earlier, in 2013, she "had vague knowledge of Allstate's lawsuit against [her] father….[but] knew no details…" (Suppl. Tatyana Mirvis Aff. ¶ 12, Dkt. 459-1.) The undersigned concludes that Tatyana knew of the lawsuit – and, therefore, of her father's financial condition – by the time the Property was transferred to her in May 2015. The transfer thus lacked good faith.

Because the transfer was not made for a fair equivalent value, and was not made in good faith, the undersigned respectfully recommends that it be deemed fraudulent.

9

**III.     Remedy**

The remedy for a conveyance deemed fraudulent pursuant to NYDCL Section 273-a is found at NYDCL Section 278, which provides: "[w]here a conveyance or obligation is fraudulent as to a creditor, such creditor…may…(a) Have the conveyance set aside…to the extent necessary to satisfy his claim, or (b) Disregard the conveyance and attach or levy execution upon the property." N.Y. Debt. & Cred. Law § 278(1)(a)-(b).  Plaintiffs request that the Court order (1) the cancellation and discharge of the May 2015 Deed; (2) the recording by the Nassau County Clerk of such cancellation and discharge; (3) that Mark Mirvis's interest in the Property be subject to levy toward satisfaction of the outstanding judgment; and (4) that the Property be levied upon by the United States Marshals in accordance with a writ of execution.  (See Pls.' Proposed Order, Dkt. 501-1; Proposed Writ of Execution, Dkt. 501-2.)  The undersigned respectfully recommends that this request be granted.

## CONCLUSION

Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

SO ORDERED:

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         July 31, 2017