UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
ALLSTATE INSURANCE COMPANY, et al., :
 :
                             Plaintiffs, : **MEMORANDUM AND ORDER**
 : 08-CV-4405 (SLT)(PK)
                  -against- :
 :
MARK MIRVIS, et al., :
                            Defendants. :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Before the Court are Motions by third-party Movants Central Pharmacy Boston, Inc. ("Central") and Century Pharmacy, Inc. ("Century") (together, "the Pharmacies") to Quash or Limit third-party subpoenas served by Plaintiffs upon three banks: Bank of America ("BOA"), seeking records regarding Central ("the Subject BOA Account"), TD Bank ("TD"), seeking records regarding Century ("the Subject TD Account"), and Salem Five Bancorp ("Salem 5"), seeking records regarding Century ("the Subject Salem 5 Account") (collectively, "the Subject Accounts"). (See Central Mot. to Quash, Dkt. 409; Century Mot. to Quash, Dkt. 410.) The subpoenas are part of Plaintiffs' post-judgment discovery, pursuant to Rule 69 of the Federal Rules of Civil Procedure (see Pls.' Mem. in Opp'n at 9-10, Dkt. 412), seeking to locate the assets of Mark Mirvis ("Mark Mirvis" or the "Judgment Debtor") (*id.*). Mark Mirvis's daughter, Tatyana Mirvis ("Tatyana") is one of four owners[1] of Central and Century. (*Id.* at 1.)

For the reasons discussed below, the Pharmacies' motions are denied.

## DISCUSSION

Rule 69(a)(2) provides:

In aid of [a money] judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the

---

[1] The Pharmacies describe Tatyana as a "shareholder" (Bespalko Decl. re Century ¶ 15, Dkt. 410-2), but the corporate structure of the Pharmacies is not clear.

1

judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

F. R. Civ. P. 69(a)(2). This post-judgment discovery must be "calculated to assist in collecting on a judgment." *EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 207 (2d Cir. 2012). Discovery sought pursuant to Rule 69, therefore, must relate to the existence or transfer of a judgment debtor's assets. *See id.*; *see also GMA Accessories, Inc. v. Electric Wonderland, Inc.*, No. 07-CV-3219 (PKC)(DF), 2012 WL 1933558, at *4 (S.D.N.Y. May 22, 2012); *Costomar Shipping Co., Ltd. v. Kim-Sail, Ltd.*, No. 95-CV-3349 (KTD)(JCF), 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995); *Magnaleasing, Inc. v. Staten Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y. 1977).

However, post-judgment discovery is broad. *EM Ltd.*, 695 F.3d at 207, and "[p]laintiff is entitled to examine third parties to determine if a judgment debtor has concealed or transferred assets applicable to satisfying its judgment." *D'Avenza S.p.A. in Bankr. v. Garrick & Co.*, No. 96-CV-166 (DLC)(KNF), 1998 WL 13844, at *3 (S.D.N.Y. Jan. 15, 1998). "It is not uncommon to seek asset discovery from third parties…that possess information pertaining to the judgment debtor's assets." *EM Ltd.*, 695 F.3d at 207. Such discovery is permitted when the non-party and the judgment debtor have a relationship "sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them," *Costomar*, 1995 WL 736907, at *3 (internal citations omitted), or when the non-party and the judgment debtor's relationship "is such that the non-party may possess concealed or fraudulently transferred assets of the judgment debtor," *Vazquez v. Ranieri Cheese Corp.*, No. 07-CV-464 (ENV)(VVP), 2013 WL 101579, at *2 (citations omitted). Whether to limit Rule 69 post-judgment discovery remains within the discretion of the district court pursuant to its powers under Federal Rule of Civil Procedure 26(b)(2). *EM Ltd.*, 695 F.3d at 207.

Central purports to be a "community retail pharmacy operating in and servicing the prescription needs of the population of Greater Boston, Massachusetts." (Central Mem. of Law at 1, Dkt. 409-1.) Century purports to be a "community retail pharmacy operating in and servicing the

2

prescription needs of the population of Lowell, Massachusetts." (Century Mem. of Law at 1, Dkt. 410-1.)  Neither is a party to the suit giving rise to the judgment Plaintiffs seek to enforce.

The Pharmacies insist that they have "absolutely no connection with this case or the underlying events or transactions." (Central Mem. of Law at 1, Dkt. 409-1; Century Mem. of Law at 1, Dkt. 410-1.)  They add that "none of the judgment debtors in this case is or has ever been an owner, manager, director, employee, contractor or agent of" Central or Century (Central Mem. of Law at 2, Dkt. 409-1; Century Mem. of Law at 2, Dkt. 410-2).  The Pharmacies also suggest that Plaintiffs' inquiry should be limited to transactions involving Mark Mirvis, arguing that the subpoenas in their current form are too broad in asking for "any and all" records, and would result in the Pharmacies' disclosing trade secrets. (Central Mem. of Law at 7-8, Dkt. 409-1; Century Mem. of Law at 7-8, Dkt. 410-1.)

The Pharmacies do not dispute, however, that Mark Mirvis's daughter Tatyana has a significant ownership interest in Central and in Century.  They also do not dispute that, after the litigation against the Judgment Debtor was commenced in 2008, the Pharmacies issued checks to Tatyana that she deposited into two HSBC Accounts (the "Mirvis Accounts") which, despite bearing Tatyana's name, are likely controlled by Mark Mirvis.[2] (See generally Reply Mem., Dkts. 415, 435; Bespalko Decls., Dkts. 409-2, 410-2.) Specifically, after 2008, Century issued checks to Tatyana for at least $105,750.00 from the Subject Salem 5 Account that were deposited into the Mirvis Accounts (see Pls.' Sur-Reply at 5 n.9, Dkt. 424); Central issued checks to Tatyana for at least $586,135.00 from the Subject BOA Account that were deposited into the Mirvis Accounts (see Marvin Decl. ¶ 4, Dkt. 412-1); and Century issued checks to Tatyana for at least $244,464.20 from the Subject TD

---

[2] By Court Order dated December 8, 2016, the undersigned found the evidence that the Mirvis Accounts were actually controlled by Mark Mirvis sufficient to grant a preliminary injunction enjoining transfers into and out of the accounts. (Pls.' Mem. in Opp'n at 2, Dkt. 412; see Order Granting Prelim. Injs., Dkt. 456.)

Account that were deposited into the Mirvis Accounts (see *id.*). In addition, Central issued a check from the Subject BOA Account to the Judgment Debtor's wife (Tatyana's mother), Lyubov Mirvis, for $28,800.00. Century issued checks from the Subject TD Account to the Judgment Debtor himself that total $11,155.19. (*Id.*) All these transfers, together with Mark Mirvis's likely control of the Mirvis Accounts, raise questions about the bona fides of the transfers and the identity of their recipient. *See Costomar*, 1995 WL 736907, at *3.

Defendants argue that if the subpoenas are not quashed, they should be limited to payments *from* the Subject Accounts, rather than including transfers *to* the Subject Accounts, or they should be limited to transactions involving Mark Mirvis. However, because large sums of money were going from the Pharmacies, without explanation, to accounts likely controlled by the Judgment Debtor, Plaintiffs are entitled to discover whether the money going into the Subject Accounts actually constitutes assets of the Judgment Debtor that are subject to collection. The Judgment Debtor also has a history of using intermediaries, as when he fraudulently transferred his house to Tatyana, *see Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (SLT)(PK), Dkt. 505 (E.D.N.Y. July 31, 2017), *R&R adopted*, 2017 WL 3981297 (E.D.N.Y. Sept. 8, 2017), so payments issued to names other than his may nonetheless be his assets. When default judgment was entered in this case, Mark Mirvis was found to be a principal defendant responsible for having "created a criminal enterprise…that included, among other things, illegally owned and fraudulently licensed medical professional corporations which were used to fraudulently bill insurance companies." *Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (SLT)(VVP), 2015 WL 1247103, at *4 (E.D.N.Y. Mar. 2, 2015), *R&R adopted*, 2015 WL 1539671 (E.D.N.Y. Mar. 31, 2015). He was found liable for committing mail fraud, laundering money, and violating the Racketeer Influenced and Corrupt Organizations Act. *Id.*, at *8.

Based on Mark Mirvis's activities as described in the default judgment, and the deposit of checks from the Subject Accounts into accounts he likely controls, the undersigned finds that the

Subject Accounts may be holding assets of the Judgment Debtor, or may have been used as a conduit for money that is subject to judgment collection. Plaintiffs are entitled to obtain the discovery sought by the subpoenas.

The Pharmacies ask that, if the Court denies their motions, a protective order between Plaintiffs and the Pharmacies be ordered. (See Dkts. 409-1, 410-1.) Plaintiffs do not object. The Court therefore orders Plaintiffs and the Pharmacies to file by **October 2, 2017** a joint proposed Protective Order for the Court to so-order.

## CONCLUSION

The Motions to Quash Plaintiffs' subpoenas served on Bank of America, TD Bank, and Salem Five Bancorp, seeking records of the Pharmacies, are denied. The documents are to be produced once the Protective Order is so-ordered.


Dated: Brooklyn, New York
　　　　September 22, 2017

　　　　　　　　　　　　　　　　　　**SO ORDERED:**

　　　　　　　　　　　　　　　　　　*Peggy Kuo*
　　　　　　　　　　　　　　　　　　PEGGY KUO
　　　　　　　　　　　　　　　　　　United States Magistrate Judge