FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ DEC 05 2017 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ALLSTATE INSURANCE COMPANY, *et al.*,

                Plaintiffs,

-against-

MARK MIRVIS, *et al.*,

                Defendants.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**

08-cv-4405 (SLT) (PK)

**TOWNES, United States District Judge:**

For the reasons set forth herein, the Report and Recommendation of United States Magistrate Judge Peggy Kuo ("Judge Kuo"), dated July 31, 2017, recommending that Plaintiffs' Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company, and Allstate Property & Casualty Insurance Company ("Plaintiffs") Motion to Avoid Fraudulent Conveyance by Judgment Debtor Georgy Statnrosh a/k/a Gary Statnigrosh a/k/a Georgy Statnigrosh ("Statnigrosh") (the "Motion") be granted and that Plaintiffs' proposed Order (ECF No. 501-3) be issued, is ADOPTED in its entirety. (ECF Nos. 391, 506.)

## BACKGROUND

In 2005, Statnigrosh and his wife, Alvina Rozenfeld a/k/a Alvina Kunevskaya ("Rozenfeld"), purchased the real property located at 72 Laguna Hills in Holmdel, New Jersey ("the Property") for $680,000.00. (Deed, Ex. C to Decl. of Daniel S. Marvin in Supp. of Pls.' Mot. to Avoid Fraudulent Conveyances by Judgment Debtor Georgy Statnrosh a/k/a Gary Statnigrosh a/k/a Georgy Statnigrosh Pursuant to F.R.C.P. 69(a), C.P.L.R. § 5225(b), and DCL §§ 273-a and 278 ("Marvin Decl."), ECF No. 391-5.) Subsequently, Rozenfeld signed a Rent to Own Agreement whereby her sister and Statnigrosh's sister-in-law, Nelly Zhuravsky

("Zhuravsky"), who is also married to Defendant and Judgment Debtor Igor Zhuravsky, would rent the Property for $4,500 a month. ("Lease Payments[,]" Ex. A to Zhuravsky Aff.[1], ECF No. 396-2). Both Rozenfeld and Zhuravksy signed the Rent to Own Agreement but did not date it. (Ex. A to Zhuravsky Aff., ECF No. 396-2). The Agreement states that it became effective on August 8, 2008, has a "lease term" from August 8, 2008, to August 8, 2028, that Zhuravsky would pay a $67,000 "security deposit[,]" and that Zhuravksy had the option to buy the Property for $720,000 at the end of the lease term. (*Id.*) Zhuravsky has been living at the Property with her husband, Igor Zhuravsky, since January 2009. (Marvin Decl. ¶ 6, ECF No. 391-2; WestLaw PeopleMap, Exh. F to Marvin Decl., ECF No. 391-8; June 6, 2017 Tr. of Hearing on Mot. 62, ECF No. 500.)

On October 30, 2008, Plaintiffs brought this action pursuant to the United States Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, 1962(c)-(d), and 1964(c), and New York common law against multiple defendants including Statnigrosh and Zhuravsky's husband, Igor Zhuravsky. (Compl., ECF No. 1.) About a month later, on December 1, 2008, Zhuravsky issued a check to Rozenfeld for $68,000 that states "'Laguna' down payment" in the memo line. (Ex. C to Zhuravksy Aff., ECF No. 396-4.)

On January 29, 2009, Plaintiffs moved for a Certificate of Default against Statnigrosh, which was subsequently granted. (ECF Nos. 57, 80.) On February 14, 2012, Plaintiffs moved for a default judgment against multiple defendants including Statnigrosh and Igor Zhuravsky. (ECF No. 258.) Plaintiffs amended/supplemented the default judgment motion on February 22, 2013. (ECF No. 265.) A few weeks later, on May 3, 2013, Statnigrosh and Rozenfeld sold 50 percent of the interest in the Property to Zhuravksy for ten dollars. (Deed 1 ("May 2013 Deed"), Ex. E to

---

[1] "Zhuravsky Aff." refers to the Affidavit of Nelly Zhuravsky, dated July 26, 2016, in opposition to Plaintiffs' Motion. (ECF No. 396-1.)

2

Marvin Decl., ECF No. 391-7.) The only consideration mentioned in the May 2013 Deed is ten dollars. (*Id.*) In 2013, the Property value was assessed at $592,600 (Ex. D to Marvin Decl., ECF No. 391-6); thus, half the Property was valued at $296,000. Statnigrosh and Rozenfeld also executed two tax documents (the "Tax Declarations") swearing to the State of New Jersey, under penalty of fine or imprisonment, that the consideration for the transfer was ten dollars. (Seller's Residency Certification/Exemption and Aff. of Consideration for Use by Seller, Ex. E to Marvin Decl., ECF No. 391-7.) No other consideration is mentioned in the Tax Declarations.

In one of the Tax Declarations, Statnigrosh and his wife checked off a box stating that "[t]he total consideration for the property is $1,000 or less and as such, the seller is not required to make an estimated payment pursuant to N.J.S.A. 54A:5-1-1 et seq.[,]" (Seller's Residency Certification/Exemption, Ex. E to Marvin Decl., ECF No. 391-7), which is the New Jersey Gross Income Tax Act, codified at N.J.S.A. §§ 54A:1-1, *et seq.* (Memo. of Law in Supp. of Pls.' Mot. to Avoid Fraudulent Conveyance by Judgment Debtor Statnigrosh 5, ECF No. 391-1.) In the other Tax Declaration, Statnigrosh and his wife checked off the box stating "that this deed transaction is fully exempt from the Realty Transfer Fee imposed by C. 49, P.L.1968, as amended through C. 66,P.L. 2004" because "[f]or consideration of less than $100[.]" (Aff. of Consideration for Use by Seller at (4), Ex. E to Marvin Decl., ECF No. 391-7.)

On May 5, 2015, default judgment was entered in this litigation awarding Plaintiffs $45,657,401.01 in trebled damages jointly and severally liable against certain defendants including Statnigrosh and Igor Zhuravsky ("Default Judgment"). (Corrected Default Judgment, ECF No. 303.) On July 13, 2016, Plaintiffs filed this Motion seeking a Court Order cancelling the May 2013 Deed on the grounds that Statnigrosh's and Rozenfeld's May 2013 transfer of 50 percent of the interest in the Property to Statnigrosh's sister-in-law, Zhuravsky, for ten dollars

was a fraudulent conveyance to avoid paying Statnigrosh's obligations under the Default Judgment. (Memo. of Law in Supp. of Pls.' Mot. to Avoid Fraudulent Conveyance by Judgment Debtor Statnigrosh, ECF No. 391-1.). As of the date of the Motion, the Default Judgment remained unsatisfied. (*Id.* at 3.) Zhuravsky opposed the Motion. (ECF No. 396.) The Court referred the Motion to Judge Kuo for a report and recommendation, and a hearing if deemed necessary. (ECF No. 392.) On June 6, 2017, Judge Kuo held a hearing on the Motion at which time Judge Kuo asked for proposed Orders for the Motion. On June 12, 2017, Plaintiffs filed proposed Orders resolving the Motion. (ECF No. 501.) On July 15, 2017, Zhuravksy also filed a proposed Order resolving the Motion. (ECF No. 502.)

On July 31, 2017, Judge Kuo filed and served via ECF a Report and Recommendation ("R&R") recommending, under Federal Rule of Civil Procedure 69 and New York Debtor and Creditor Law § 273, that Plaintiffs' Motion be granted because the May 2013 transfer was a fraudulent conveyance. (ECF No. 506.) Accordingly, Judge Kuo recommended that under New York Debtor and Creditor Law § 278, Plaintiffs' proposed Order be issued wherein the Court orders: (1) the cancellation and discharge of the May 2013 Deed; and (2) that Statnigrosh's interest in the Property be subject to levy toward satisfaction of the Default Judgment. (R&R 13, ECF No. 506; Plaintiffs' proposed Order, ECF No. 501-3.)

On August 14, 2017, in a letter to the Court, Zhuravsky objected to the R&R on the following three grounds: that the R&R "erroneously concludes that ten dollars is not fair consideration" for the Property; that there was no basis for finding that the transfer was made in bad faith; and that Judge Kuo should have permitted the submission of additional documents

before oral argument on the Motion.[2] (ECF No. 507.) On September 5, 2017, Plaintiffs argued that Zhuravsky's objections are meritless. (Pls.' Memo. of Law in Resp. to Objections of non-party Nelly Zhuravsky to July 31, 2017 Report and Recommendation Concerning Mot. to Avoid Fraudulent Conveyance ("Pls.' Resp. to Zhuravsky's Obj."), ECF No. 510.)

## DISCUSSION

### A. STANDARD OF REVIEW FOR OBJECTIONS TO A REPORT AND RECOMMENDATION

When a magistrate judge issues a report and recommendation, a party may "file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). A proper objection requires reference to a specific portion of the report and recommendation. *Williams v. Woodhull Med. and Mental Health Ctr.*, 891 F.Supp.2d 301, 310 (E.D.N.Y. 2012) (citations omitted); *Pall Corp. v. Entegris, Inc.*, 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citation omitted). A court reviews *de novo* any part of the findings and recommendations that are "properly objected to." FED. R. CIV. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C). "The goal of the federal statute providing for the assignment of cases to magistrates is to 'increas[e] the overall efficiency of the federal judiciary,'" *Nettles v. Wainwright*, 677 F.2d 404, 406 (Former 5th Cir.1982) (*en banc*) (quoting S.Rep. No. 12, 90th Cong., 1st Sess. 11 [1967]) while preserving for litigants the opportunity to have their claims heard by a district judge. *See Sick v. City of Buffalo*, 574 F.2d 689, 692-693 (2d Cir.1978)." *McCarthy v. Manson*, 554 F. Supp. 1275, 1285-86 (D. Conn. 1982), *aff'd*, 714 F.2d 234 (2d Cir. 1983). "Requiring a de novo determination absent the filing of a timely objection" defeats the

---

[2] This third argument is not properly before the Court because the R&R does not address this issue. Therefore, the Court will not rule on it. Moreover, it was Zhuravksy's husband, Igor Zhuravsky, and not Zhuravsky who sought leave a few days before the hearing on the Motion to submit additional materials. (ECF No. 498.)

goal of efficiency in assigning cases to magistrate judges. *Id.* at 1286 (citing *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603, 605 (1st Cir.1980)).

"If a party 'makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.'" *Williams*, 891 F.Supp.2d at 310 (quoting *Pall Corp.*, 249 F.R.D. at 51 and citing *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir.2002)); *see also Ortiz v. Barkley*, 558 F.Supp.2d 444, 451 (S.D.N.Y. 2008). While "district courts have the discretion to consider additional *evidence* after a magistrate judge has issued her report, ... a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate ...." *Ortiz*, 558 F. Supp. 2d at 451 (internal quotation marks and citations omitted) (emphasis in original); *see also In re: Madison Bentley Assoc., LLC*, 516 B.R. 724, 731 n.21 (S.D.N.Y. 2014); *Borden v. Sec. of Health and Human Serv.*, 836 F.2d 4, 6 (1st Cir. 1987) (affirming "[t]he district court['s] refus[al] to rule on" the issue of emotional stress on the grounds that "it had been waived by failing to raise it before the magistrate"). A district court "'may adopt those portions of the Report to which no objections have been made and which are not facially erroneous.'" *Williams*, 891 F.Supp.2d at 310 (quoting *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000)); *see also* 28 U.S.C. § 636(b)(1)(A) (a district court "may reconsider any" portion of an R&R that "is clearly erroneous or contrary to law"). After the review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

B.  **STANDARD OF REVIEW FOR FRAUDULENT CONVEYANCE UNDER NEW YORK LAW**

Under New York law,[3] "[e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." N.Y. DEBT. CRED. L. § 273. Moreover, "[e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment." N.Y. DEBT. CRED. L. § 273-a. "To prevail under … [§ 273-a], a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636, 641 (2d Cir. 2016) (internal quotation marks and citation omitted). To show "a fair consideration[,] … (1)… the recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; … (2) such exchange must be a fair equivalent of the property received; and (3) such exchange must be in good faith." *In re: Sharp International Corp.*, 403 F.3d 43, 53-4 (2d Cir. 2005) (internal quotation marks and citations omitted) (interpreting "fair consideration" under New York Debtor and Creditor Law § 272). A plaintiff who proves all the elements under § 273-a may seek a court order that "a. [h]a[s] the conveyance set aside or obligation annulled to the extent necessary to satisfy … [the creditor's] claim, or b. [d]isregard[s]

---

[3]  Zhuravsky does not object to Judge Kuo's recommendation that the Court find that New York law applies to the Motion. (R&R 3-5.) Finding no clear error, the Court adopts this recommendation.

7

the conveyance and attach[es] or levy[s] execution upon the property conveyed." N.Y. DEBT. CRED. L. § 278(1).

## C. ZHURAVSKY HAS WAIVED HER OBJECTION CONCERNING FAIR EQUIVALENT VALUE WHICH IS ALSO MERITLESS

Plaintiffs argue that Statnigrosh and Rozenfeld's transfer in May 2013 of fifty percent interest in the Property to Statnigrosh's sister-in-law, Zhuravsky, constitutes a fraudulent conveyance under New York Debtor and Creditor Law §§ 272 and 273-a because ten dollars was not fair equivalent value for half of a property assessed at $592,600 at the time, and the transfer was made in bad faith. (Memo. of Law in Supp. of Pls.' Mot. to Avoid Fraudulent Conveyance by Judgment Debtor Statnigrosh, ECF No. 391-1.) In opposing the Motion, Zhuravsky argued, *inter alia*, that the transfer was not a fraudulent conveyance because, by May 2013, she had already paid $268,000 for the Property and had no knowledge of the alleged fraud at the time of the May 2013 transfer. (Memo. of Law in Opp. to Pls.' Mot. to Avoid Fraudulent Conveyances by Judgment Debtor Georgy Statnrosh a/k/a Gary Statnigrosh a/k/a Georgy Statnigrosh ("Zhuravsky's Opp. Memo. of Law"), ECF No. 396.)

Judge Kuo recommends that the Court rule that "[b]ecause there was no tangible consideration for the transfer, because 'the evidentiary facts as to the nature and value of' any meaningful 'consideration are exclusively within' ... [Zhuravksy]'s control, and because of the intra-family nature of the transfer, the May 2013 transfer is presumptively fraudulent. It is therefore... [Zhuravksy]'s burden to rebut the presumption of fraud."[4] (R&R 7-8.) Judge Kuo made this recommendation based on her findings under New York law, including the ruling in *United States v. McCombs*, where the Court held that "shifting the burden of persuasion to an

---

[4] Zhuravsky does not object to Judge Kuo's finding that Zhuravsky bears the burden to rebut the presumption of fraud in the May 2013 transfer. (R&R 8, ECF No. 506.) Finding no clear error, the Court adopts this recommendation.

8

intrafamily transferee is triggered under New York law by the presence of one of two factors in the conveyance: (1) the absence of any tangible consideration, or (2) a clandestine transfer of property designed to conceal the nature and value of the consideration." 30 F.3d 310, 325 (2d Cir. 1994). Judge Kuo also relied, *inter alia*, on the ruling in *United States v. Alfano*, where the Court ruled that the debtor parents' transfer of their home to their children was a fraudulent conveyance under § 273-a, and found that $0 to ten dollars was not "tangible consideration" for the transfer. 34 F. Supp. 2d 827, 845-46 (E.D.N.Y. 1999).

Judge Kuo further recommends that the Court rule that Zhuravsky has failed to rebut the presumption of fraud. Specifically, Judge Kuo recommends ruling against Zhuravsky on her argument that ten dollars was fair equivalent value for her fifty percent interest in the Property because her sister and brother-in-law made the transfer to her to "discharge ... an antecedent debt[,]" where: (a) she had paid over $200,000 in Property costs, like the mortgage and Home Equity Line of Credit and; (b) she had paid Rozenfeld a down payment of $68,000 on a lease towards purchasing the Property, all before the May 2013 transfer. (Memo. of Law in Opp. to Pls.' Mot. to Avoid Fraudulent Conveyances by Judgment Debtor Georgy Statnrosh a/k/a Gary Statnigrosh a/k/a Georgy Statnigrosh ("Zhuravsky's Opp. Memo. of Law") 7-12, ECF No. 396; R&R 10-11, ECF No. 506.)

As to the Property costs, Judge Kuo found that:
- many of the Property cost payments that Zhuravsky purportedly made could not have been antecedent debt because they were made after the May 2013 transfer;
- some of the documented payments show no connection to the Property;
- there is no evidence that "Zhuravsky ever assumed either the mortgage or the home equity loan on the Property[;]" and

9

- even if Zhuravsky had proven that she made all of the purported payments for the Property costs before May 2013, the evidence shows only $47,811.17 in such payments, not over $200,000 as asserted by Zhuravsky.

(R&R 10-11, ECF No. 506.) As to the purported down payment, Zhuravsky relied on the Rent to Own Agreement to argue that the check she made out to her sister for $68,000, dated December 1, 2008, was a down payment to buy the Property, and that she began negotiating purchase of the Property in August 2008, over two months before Plaintiffs filed this lawsuit. (Zhuravsky Aff. ¶ 6, ECF No. 396-1; Ex. C to Zhuravsky Aff., ECF No. 396-4.) Plaintiffs argued, for various reasons, that "it is reasonable to conclude that the Lease [the Rent to Own Agreement] is not authentic and was backdated in an attempt to support the fiction that the Transfer took place prior to the Complaint being filed[.]"[5] (Pls-Judgment Creditors' Reply Memo. of Law in Further Supp. of Mot. to Avoid Fraudulent Conveyance by Judgment Debtor Statnigrosh 7-8, ECF No. 440.)

Judge Kuo found that "[b]ecause the signatures on the ... [Rent to Own Agreement] are undated, and the document is not notarized, it is impossible to know when it was executed[,]" even though it states that it is "effective as of August 08, 2008." (R&R 9; Ex. A to Zhuravsky Aff., ECF No. 396-2.) The Judge further found that there was no need to decide the authenticity of the document because it nonetheless fails to prove that Zhuravsky paid her sister $68,000 as a down payment to buy the Property. (R&R 11, ECF No. 506.) Judge Kuo's finding was based, in

---

[5] Plaintiffs argue that there is no explanation for the origins of the Rent to Own Agreement, that it is undated and therefore cannot confirm that Zhuravsky and her sister were negotiating it in August 2008, three months before Plaintiffs filed this lawsuit, that "[e]ach of their judgment debtor husbands were conspicuously omitted from the Lease, despite Statnigrosh's 50% ownership of, and I. Zhuravsky's residence at, the Subject Property at the time. See ECF No. 391-8[,]" that Plaintiffs' investigations show that the document is virtually identical to the Rent to Own Agreement template on Rocket Lawyer's website but that Rocket Lawyer's general counsel stated that the template was likely not even created until 2011, and that Igor Zhuravsky's company made a payment to Rocket Lawyer on September 9, 2015, six months after the Default Judgment was entered in this case. (Pls-Judgment Creditors' Reply Memo. of Law in Further Supp. of Mot. to Avoid Fraudulent Conveyance by Judgment Debtor Statnigrosh 7-8, ECF No. 440; Ex. C to Eagan Decl., ECF No. 440-4; Eagan Decl. ¶¶ 6, 10, ECF No. 440-1; Ex. E to Eagan Decl. at 9/08/15, $10.00, ECF No. 440-6.)

part, on the fact that there was no evidence that Zhuravsky paid $68,000 for the Property and that neither the Tax Declarations nor the May 2013 Deed mentioned the purported down payment or any other consideration, except ten dollars. (R&R 11, ECF No. 506.) Judge Kuo also found that Zhuravsky "represents that she has resided at the Property since 'the beginning of 2009' (Hr'g Tr. at 62, Dkt. 500), so any money she may have paid between 2008 and 2013 could just as easily have been consideration for her being allowed to live there, rather than antecedent debt constituting consideration for purchase of interest in the Property." (*Id.*) In other words, even if Zhuravsky had paid $68,000 on December 1, 2008, for the Property, it was to live on the Property; the payment did not constitute consideration for buying the Property.

Zhuravsky does not object to Judge Kuo's findings that: before the May 2013 transfer, Zhuravsky did not pay $268,000 in Property costs and as a down payment to buy the Property; consequently, Zhuravksy's brother-in-law and sister did not owe her $268,000 for Property payments; and consequently, the May 2013 transfer to Zhuravsky for ten dollars could not have satisfied $268,000 in antecedent debt because there was no such debt. Finding no clear error, the Court adopts these findings and Judge Kuo's recommendation that Zhuravsky failed to rebut the presumption of fraud in the May 2013 transfer.

In objecting to the R&R, Zhuravksy abandoned her original arguments concerning antecedent debt. She now argues that ten dollars was fair equivalent value because the Property was essentially worthless by the time she purportedly began negotiating its purchase in 2008. (ECF No. 507 at 2-3.) Zhuravsky begins her objection by stating "What is the value of a property so encumbered that there is no, or even negative equity? The Court has held that 'reasonably equivalent value' is the price in fact received for the property at a foreclosure sale, so long as that sale satisfied all the requirements of state foreclosure law. BFP v. Resolution Trust Corp., 511

U.S. 531 (1994)." (*Id.* at 2.) Zhuravsky argues that by August 8, 2008, the Property was "'underwater', ie: the amount of the outstanding mortgage to Countrywide Home Loans was higher than the original amount (Docket 396-5)[,]" and that "[t]herefore, the actual value of the property, must be based upon consideration of the negative mortgage." (*Id.*) Zhuravsky then misconstrues the R&R by arguing that since "Judge Kuo found that the actual payments made by Movant prior to the conveyance of 50% interest in the property was, at most, $47,811[,]" and that Judge Kuo "strongly suggested that these payments were the equivalent of 'rent for living in the premises during the period from approximately 2009 to May of 2013[,]" that "the actual value of the interest transferred was close to nothing, ie ten dollars. The fact that the mortgage was not assumed by the Movant is not an issue-the value of what was transferred was in fact almost worthless, and the deed and tax declarations were correct." (*Id.* at 2-3.)

But Zhuravsky has waived this argument because she failed to make the argument in her papers in front of Judge Kuo in opposition to the Motion. Nor is Zhuravsky presenting new facts or law that have arisen since the issuance of the R&R. *Ortiz*, 558 F. Supp. 2d at 451 ("While 28 U.S.C. § 636(b)(1) grants district courts discretion to consider additional evidence after a magistrate judge has issued her report, ... a district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate") (internal quotation marks and citations omitted); *In re: Madison Bentley Assoc., LLC*, 516 B.R. 724, 731 n.21 (S.D.N.Y. 2014) (regarding "the trustee's contention that the fraudulent transfer occurred when the defendants caused the debtor to abandon the premises and stop making lease payments[,]" it "was raised for the first time in the trustee's objections and the Court thus declines to entertain it." (citing *Ortiz*, 558 F. Supp. 2d at 451)).

Moreover, Zhuravksy's argument does not rebut the presumption of fraud. Zhuravsky cites to *BFP v. Resolution Trust Corp.*, 511 U.S. 531 (1994) in arguing essentially that bankruptcy law concerning foreclosure sales is applicable here. But she is wrong. In *BFP*, the Court interpreted the phrase "reasonably equivalent value" in 11 U.S.C. § 548(a)(2) of the Bankruptcy Code law to not mean "fair market value" for several reasons, including that "'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale[,]" a foreclosure sale in a bankruptcy proceeding, since property that must be "sold within the time and manner strictures of state prescribed foreclosure .... is simply *worth less*." 511 U.S. at 538, 539 (emphasis in original). This as compared to fair market value "fixed by negotiation and mutual agreement, after ample time to find a purchaser ...." *Id.* at 538. Here, no bankruptcy is at issue; the Bankruptcy Code is inapplicable. There was no foreclosure sale here that confined the May 2013 transfer to Zhuravksy to state foreclosure strictures, as was the case in *BFP*. In fact, from the beginning Zhuravksy has been arguing the opposite - that the May 2013 transfer to her was made for fair equivalent value. Moreover, Zhuravksy offers no support for her argument that the Property was essentially worthless because the mortgage owed Countrywide Home Loans was higher than the original mortgage amount, or that any rent she may have paid to live at the Property went towards purchasing it as well.

Zhuravsky also misconstrued Judge Kuo's findings. Judge Kuo specifically found that Zhuravksy failed to show that she paid over $200,000 in Property costs, that the evidence did show $47,811.17 in payments but that Zhuravsky failed to show that the money was paid for Property costs and/or before the May 2013 transfer. (R&R 10-11, ECF No. 506.) Judge Kuo further found no connection between the check from Zhuravksy to Rozenfeld for $68,000 on December 1, 2008, and the Property, but even so, it may have been for allowing Zhuravsky to

live at the Property from early 2009 through 2013, not antecedent debt that constituted consideration for buying the Property. (*Id.* at 11.) Judge Kuo, thus, specifically found that even if Zhuravksy could prove that the $68,000 was paid for the Property, it likely would have been for rent because there was no proof that it was a down payment to buy any interest in the Property. A review of the evidence by the Court supports Judge Kuo's findings. Zhuravksy's objections on this issue are meritless.

### D. THERE IS NO CLEAR ERROR IN JUDGE KUO'S FINDING OF BAD FAITH

Judge Kuo recommends that the Court find that "[b]ecause the transfer was not made for a fair equivalent value, an absence of good faith need not be shown. In the alternative, however, the undersigned also respectfully recommends that the Court find an absence of good faith in the [May 2013] transfer." (R&R 12, ECF No. 506.) Judge Kuo addressed Zhuravsky's argument that "'she purchased the property without knowledge of the alleged fraud at the time of the purchase.'" (*Id.*) The Judge found that "[n]o support is offered for this conclusory statement, nor is there any mention of Zhuravsky's apparent ignorance in her Affidavit." (*Id.*) Judge Kuo also found that "[t]he transfer was effected on May 3, 2013. At that time, Statnigrosh had been a defendant in this action for five years, and a motion for default judgment against him – ultimately granted in the amount of $45,657,401.01 – had been pending for roughly three months. Statnigrosh is married to Zhuravsky's sister, and Zhuravsky's husband is also a judgment debtor in this action. The undersigned concludes that Zhuravsky knew of the lawsuit – and, therefore, of Statnigrosh's financial condition – by the time the Property was transferred to her in May 2013. The transfer thus lacked good faith." (R&R 12-13.)

Zhuravsky objects by arguing that "[f]irst, contrary to the Magistrate's finding, at the time of the conveyance in May, 2013, Movant's husband, Igor Zhuravsky, was not a judgment

debtor. The judgment in question was not procured until two years later in 2015. Second, we respectfully submit that the omission of a denial regarding knowledge of the alleged fraud in Movant's affidavit does not allow the Court to make a factual finding based upon the kinship of the parties." (ECF No. 3.)

Zhuravsky's objections are conclusory arguments warranting only clear error review. *Williams*, 891 F.Supp.2d at 310 ("[i]f a party 'makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error.'" (quoting *Pall Corp.*, 249 F.R.D. at 51 and citing *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 766 (2d Cir.2002))). The Court finds no clear error in Judge Kuo's findings and recommendations. First, only "a purchaser for fair consideration" can assert the affirmative defense against a creditor that she did not have "knowledge of the fraud at the time of purchase ...." N.Y. DEBT. CRED. L. § 278(1). Despite Zhuravsky's objection (ECF No. 507 at 3), Judge Kuo correctly found that the defense is inapplicable here because Zhuravsky was not "a purchaser for fair consideration ...." *See supra* 1. Second, reviewing the evidence, the Court comes to the same conclusion as Judge Kuo for the same reasons set forth in the R&R that good faith was lacking in the May 2013 transfer.

E. **UN-OBJECTED TO RECOMMENDATIONS IN THE R&R**

No objections have been filed to any other portions of the R&R. This Court has reviewed the record and those portions of the R&R not objected to for clear error and found none. Therefore, the Court adopts all other portions of the R&R not discussed herein.

Accordingly, for the reasons set forth above, the Court adopts Judge Kuo's recommendations that under New York Debtor and Creditor Law § 273-a and § 272, the May 2013 transfer to Zhuravsky was a fraudulent conveyance because: the May 2013 conveyance was

made without fair consideration; that one of the conveyors, Statnigrosh, is a Judgment Debtor under the Default Judgment seeking money damages; and that Statnigrosh has thus far failed to satisfy the judgment.

## CONCLUSION

For the reasons stated above, Judge Kuo's R&R dated July 31, 2017, recommending, under Federal Rule of Civil Procedure 69 and New York Debtor and Creditor Law § 273, that Plaintiffs' Motion be granted and that under New York Debtor and Creditor Law § 278, Plaintiffs' proposed Order be issued wherein the Court orders: (1) the cancellation and discharge of the May 2013 Deed; and (2) that Statnigrosh's interest in the Property be subject to levy toward satisfaction of the outstanding judgment, is ADOPTED in its entirety. (ECF Nos. 390, 501-3, 506.) The Court DENIES Zhuravsky's motion proposing a different Order. (ECF No. 502.)

**SO ORDERED.**

s/ SLT
SANDRA L. TOWNES
United States District Judge

Dated: November 22, 2017
Brooklyn, New York