UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALLSTATE INSURANCE COMPANY, *et al.*,

                            Plaintiffs,

        -against-

MARK MIRVIS, *et al.*,

                            Defendants.

                                08-CV-4405
                                (PKC) (PK)

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO DIRECT U.S. MARSHALS TO CONDUCT EXECUTION SALE OF
REAL PROPERTY OWNED BY JUDGMENT DEBTOR MARK MIRVIS**

MORRISON MAHONEY LLP
WALL STREET PLAZA
88 PINE STREET, SUITE 1900
NEW YORK, NEW YORK 10005
TEL: (212) 825-1212

CADWALADER, WICKERSHAM & TAFT LLP
ONE WORLD FINANCIAL CENTER
NEW YORK, NEW YORK 10281
TEL: (212) 504-6531

ATTORNEYS FOR ALLSTATE PLAINTIFFS-JUDGMENT CREDITORS

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................................ii

INTRODUCTION ........................................................................................................................1

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...............................................................................................................................4

I.  THE COURT SHOULD NOT PREVENT THE LAWFUL
    EXECUTION SALE OF THE JUDGMENT DEBTOR'S
    INTEREST IN THE SUBJECT PROPERTY ...................................................................4

  A.  The Opposition Fails to Substantiate
      Dubious Claims of Hardship .....................................................................................4

  B.  The Opponents' Conduct
      Undermines Any Equitable Argument .......................................................................6

II. NON-DEBTOR LYUBOV MIRVIS' ENTIRETIES INTERESTS,
    IF ANY, DO NOT INSULATE JUDGMENT DEBTOR'S
    INTEREST FROM EXECUTION SALE ..........................................................................9

  A.  Conduct of Lyubov Mirvis has Terminated
      Relevant Entireties Interests in 289 Bayberry .......................................................9

  B.  The Judgment Debtor's Property Interest in 289 Bayberry
      is Subject to Execution Sale under New York Law ..............................................10

CONCLUSION ..........................................................................................................................11

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Amev Capital Corp. v. Kirk*,
   180 A.D.2d 791 (2nd Dep't 1992) ...............................................................................7

*Allstate Ins. Co. v. Mirvis*,
   No. 08-CV-4405 (PKC) (PK), 2018 WL 4921631 (E.D.N.Y. Sept. 4, 2018) .......................4, 6

*Allstate Ins. Co. v. Mirvis*,
   No. 08-CV-4405 (SLT) (PK), 2017 WL 4287778 (E.D.N.Y. July 31, 2017),
   *report and recommendation adopted*, 2017 WL 3981297 (E.D.N.Y. Sept. 8, 2017) .................5

*Braz v. Shvartsman*,
   300 A.D.2d 582 (2nd Dep't 2013)................................................................................4

*Clarkson Co. Ltd. v. Shaheen*,
   533 F. Supp. 905 (S.D.N.Y. 1982). ...........................................................................10

*Gard Entm't v. Block*,
   960 N.Y.S.2d 50 (Table) (E.D.N.Y. Dec. 24, 2014) ...............................................10

*Gilchrist v. Commercial Credit Corp.*,
   66 Misc.2d 791, 322 N.Y.S.2d 200 (Sup. Ct. Nassau Cnty. 1971) ............................8

*Hammond v. Econo-Car of the North Shore, Inc.*,
   71 Misc.2d 546, 336 N.Y.S.2d 493 (Sup. Ct. Nassau Cnty. 1972) ...........................8

*Hiles v. Fisher*,
   144 N.Y. 306 (1895) ...............................................................................................8

*Holmes v. W.T. Grant, Inc.*,
   336 N.Y.S.2d 601 (Sup. Ct. Nassau Cnty. 1972) .....................................................8

*Orbach v. Pappa*,
   482 F. Supp. 117 (S.D.N.Y. 1979) ...........................................................................9

*In re Persky*,
   893 F.2d 15 (2d Cir. 1989) ....................................................................................10

*Putnam Cnty. Nat'l Bank of Carmel v. Pryschlak*,
   226 A.D.2d 358 (2nd Dep't 1996)..........................................................................7, 8

*Rothschild v. Lincoln Rochester-Tr. Co.*,
   212 F.2d 584 (2d Cir. 1954) ) ...............................................................................10

*Secrist v. Secrist*,
  284 A.D. 331 (4th Dep't 1954), *aff'd*, 308 N.Y. 750 (1955) ................................................9, 10

*Seyfarth v. Bi-County Electric Corp.*,
  73 Misc.2d 363, 341 N.Y.S.2d 533 (Sup. Ct. Nassau Cnty. 1973). ...........................................8

*Stern v. Hirsch*,
  79 A.D.3d 1046 (2nd Dep't 2010) ...........................................................................................8

*In re Waxman*,
  128 B.R. 49 (Bankr. E.D.N.Y. 1991)........................................................................................7

*William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh*,
  131 A.D.3d 960 (2nd Dep't 2015) ..........................................................................................10

## INTRODUCTION

Plaintiffs-Judgment Creditors ("Plaintiffs") respectfully submit this Reply Memorandum of Law in further support of their June 17, 2019 motion for an order directing law enforcement to conduct an execution sale of the Judgment Debtor M. Mirvis' interest in the realty known as "289 Bayberry" (*see* ECF No. 631) (the "Motion"),[1] and in response to the July 23, 2019 opposition memorandum (ECF No. 646) (the "Opposition") of Mirvis Non-Parties L. Mirvis and T. Mirvis (the "Opponents") and the supporting affidavit of L. Mirvis (ECF No. 646-1).[2]

## PRELIMINARY STATEMENT

For more than four years, M. Mirvis has avoided paying anything on the Judgment exceeding $45 million, even as he continues to live an extravagant lifestyle, residing in an upscale neighborhood with documented millions of dollars flowing into the very household now claiming hardship. Owing perhaps to recognition of the Plaintiffs' clear statutory right to seek, and of the Court's clear statutory authority to grant, the relief sought in the Motion, the Opponents lead with a newly-constructed emotional argument rather than a legal one: that the sale of the Judgment Debtor's executable interest in the Subject Property would visit undue hardship upon a four year-old child. Allstate of course recognizes the importance of the well-being of a child, yet here the evidence shows not family hardship but quite the opposite, and it is unequivocally the Mirvises' own actions that have brought them to this point. Inviting the Court through the looking-glass, the Opposition upends the facts to cast the Mirvises as the victims, while absolving the Judgment Debtor of any responsibility for the large-scale medical billing fraud that led to the entry of the

---

[1] Terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] Neither the Judgment Debtor (M. Mirvis) nor his daughter (T. Mirvis) submitted any opposing affidavit. Moreover, as detailed herein, the sole opposition affidavit of his wife L. Mirvis provides no meaningful or specific support for the arguments now advanced by the Opponents against the long-overdue execution on the Subject Property.

Judgment, and while ignoring the Opponents' complicity in extensive efforts to conceal his assets or otherwise frustrate enforcement. That they would now inject a child into these proceedings, in a last-ditch effort to help the Judgment Debtor evade his obligations, speaks volumes.

Contrary to the Opponents' posturing, in reality there is no danger that the Judgment Debtor and his family will be forced to live "on the streets of New York." As discussed more fully herein, the Mirvis Non-Parties do not, because they cannot, offer any evidence that they lack the financial means to live elsewhere, either through the purchase of a new home or by renting a new home through the same financial resources that they currently allocate to maintain their exorbitant living expenses including, *inter alia*, paying more than $4,000 monthly for mortgages and leasing high-end cars. The Mirvises clearly have the means to find another suitable residence if needs be, and they will have (and have had) ample time to do so. Thus, any suggestion that the family would be homeless is a farce, and there is no reason to expect any hardship beyond what a move would ordinarily entail. In any event, an aversion to moving is no defense to Allstate's legal right to execute on the Subject Property to the extent of the Judgment Debtor's interest, which Judge Townes adjudged "subject to levy toward satisfaction of the [J]udgment."

To be clear, it is not the conduct of Allstate which has necessitated these proceedings, but rather the actions of the Judgment Debtor, L. Mirvis, and T. Mirvis. Those actions began years before the minor in question was even born, and the most recent were undertaken precisely because they knew that this or a similar motion by creditors would someday come, and was in fact imminent. Indeed, rather than engaging in efforts to resolve this matter, to prepare for this eventuality, and/or to sell the Subject Property, the Judgment Debtor and the Opponents instead, between 2013 and 2015, executed a multi-step fraudulent conveyance. They have also engaged in a panoply of other post-judgment diversions of assets, misrepresentations, and other bad-faith conduct which should not be rewarded with extraordinary or discretionary judicial intervention on their behalf.

2

In terms of actually addressing whether Plaintiffs' requested relief is authorized, the Opposition's only argument is essentially that property held in a New York tenancy by the entirety ("TBTE") should be categorically immune from application to money judgments entered against one spouse but not the other, apparently without regard for its value. In other words, the Opponents' position is that TBTE property in New York (which also includes personalty in other States) is, when owned jointly by debtor and non-debtor spouses, *per se* unreachable by judgment creditors. However, even if L. Mirvis still enjoys any relevant entireties or survivorship interest notwithstanding her role in fraudulent conveyances, courts have consistently held that a TBTE with a non-debtor does not immunize the debtor's interest from execution sale, and the Opposition fails to cite any decision to the contrary. Were it otherwise, judgment debtors could simply convert their ill-gotten gains into realty of conceivably limitless value with a non-debtor spouse, enabling them not only to wait out the creditor (or the judgment itself), but also to profit from the investment over time. Such an absurd and unjust result, *i.e.* the very approach of the Mirvises here, must be rejected.

Accordingly, Plaintiffs respectfully submit that because the interest of the Judgment Debtor in 289 Bayberry is subject to execution sale under New York law, and because the Opposition fails to substantiate any hardship or other good cause which would move the Court to exercise its discretion to prevent such a sale, the Motion should be granted. Plaintiffs nevertheless would not oppose a short stay of the sale for up to three months to enable the Opponents to find a new residence.

## ARGUMENT

## I.

### THE COURT SHOULD NOT PREVENT THE LAWFUL EXECUTION SALE OF THE JUDGMENT DEBTOR'S INTEREST IN THE SUBJECT PROPERTY

Before making any argument that Plaintiffs are not legally entitled to the relief sought in the Motion, *see* Sec. II, *infra*,[3] the Opponents first lodge an emotional offensive, seeking to win special consideration from the very Court whose Judgment they have flouted, by suggesting that a sale of the Subject Property would cause hardship to a merely unfortunate Judgment Debtor and innocent, unsuspecting Mirvis Non-Parties. Conspicuously omitted by the Opponents, however, is any documentary or other evidence of the financial condition of any of the Mirvis Non-Parties, or the Judgment Debtor himself, or of any particular burdens associated with moving the child, and it rests solely on the self-serving, nonspecific affidavit of L. Mirvis. Naturally glossing over any discussion of financial means and any objective measure of hardship, then, the Opposition pursues instead an appeal to equity through a counterfactual narrative that the predicament allegedly facing the Mirvises now was unexpected, or that it is somehow unjust. Neither is in fact the case here.

### A.    The Opposition Fails to Substantiate Dubious Claims of Hardship

Plaintiffs recognize the practical and equitable implications which might otherwise accompany the sale of a judgment-debtor husband's interest in a home owned with his wife, were it actually the case that this situation was foisted on an innocent non-debtor spouse facing unexpected circumstances. However, under the facts of this case – where L. Mirvis has been a knowing and willing participant in numerous schemes to evade the Judgment, including a multi-

---

[3] The Opposition also reattempts in a footnote the incorrect and now-familiar procedural argument that the formalities of a "special proceeding" are required for the Motion, notably citing a decision not from federal motion practice, but from the New York state courts. Opp'n p. 5 (quoting *Braz v. Shvartsman*, 300 A.D.2d 582, 583 (2nd Dep't 2002)). This Court and others have rejected that reasoning in federal post-judgment motion practice. *See Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (PKC) (PK), 2018 WL 4921631, at *4 (E.D.N.Y. Sept. 4, 2018) (collecting cases).

year, multi-transaction fraudulent conveyance of the Subject Property itself – any equitable considerations which might ordinarily weigh on the Court ought not trouble its conscience here.

Specifically as to the Subject Property, the first of three such transfers, by which the Judgment Debtor and L. Mirvis each conveyed half of their respective interests in the Subject Property (25% & 25%) to T. Mirvis for no consideration (*see* ECF No. 335-6) (May 20, 2013 Deed), came after almost 14 continuous years of ownership, *see* ECF No. 335-4 (1999 Deed), and only three months after Plaintiffs filed their second (operative) motion for default judgment, *see* ECF No. 265.  Several months later, T. Mirvis returned those interests to her parents in the second transfer.  *See* ECF No. 335-7 (October 20, 2013 Deed).  Finally, and less than one week after entry of the corrected Judgment, the Judgment Debtor and L. Mirvis doubled down on the first transfer with a third: this time granting T. Mirvis *all* of their interests in the Subject Property.  *See* ECF No. 335-8 (May 2015 Deed).  It is already established that this transfer was *not made or received in good faith* and was *fraudulent as to Plaintiffs as judgment creditors.  See generally Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405 (SLT) (PK), 2017 WL 4287778 (E.D.N.Y. July 31, 2017), *report and recommendation adopted*, 2017 WL 3981297 (E.D.N.Y. Sept. 8, 2017).  It defies credulity that L. Mirvis did not know the purpose or import of those transfers when she participated in them.[4]

To the extent the Mirvises' submissions hint at any financial hardship, by now it is unsurprising that the Opposition comes with no documentary or other support for such a claim. Much like the Judgment Debtor's threadbare applications for indigent relief, *see* ECF Nos. 632, 633, the Opponents are characteristically cagey and incredible on the subject of the family's

---

[4] While the Opposition makes much of the fact that L. Mirvis was not adjudged as having acted in bad faith, *see* Opp'n p. 12, her mental state was not then at issue, yet the Court found that good faith was lacking as to both M. Mirvis and T. Mirvis.  Moreover, T. Mirvis has testified that both her parents – not just the Judgment Debtor – had convinced her to participate.  *See* ECF No. 459-1 (Dec. 16, 2016 T. Mirvis Aff.), at ¶ 11.

financial condition.  Even before considering the specious support of inapposite case law, this nonfeasance alone merits rejection of any request for the Court's discretionary assistance.

Moreover, in stark contrast to the bleak portrait painted in the Mirvises' recent submissions, the Judgment Debtor and the Mirvis Non-Parties drive luxury vehicles, reside together in an upscale home, and take vacations.[5]  Inexplicably, however, and notwithstanding substantial income streams in their names,[6] the Mirvis Non-Parties allegedly do not pay anything on two mortgages.  It cannot seriously be believed that the Judgment Debtor pays monthly mortgage payments totaling $4,277.43, while his after-tax monthly income is only $1,847.17.  *See* ECF No. 633.[7]  Notably, and wholly omitted from the Opposition, it is undisputed that since entry of the Judgment, T. Mirvis and her "management company" Seta Group Ltd. (also at 289 Bayberry), have received millions of dollars in cash from two pharmacies in the Boston Metro Area (the "Pharmacies").  *See generally* ECF No. 533 (Pls. Mot. for turnover of fraudulently conveyed and other personal property).[8]

**B.    The Opponents' Conduct Undermines Any Equitable Argument**

Even were the Mirvises' representations regarding their financial condition not woefully deficient and arithmetically unsound, and even if their claims of hardship did not otherwise ring

---

[5] *See, e.g.,* Midgett Decl. ¶ 4, **Exhibit "A"** (June 6, 2017 H'g Tr. excerpt) (statement of counsel that "Mark and his wife used the money that belonged to them, it was their money in Tatyana's name, to pay the mortgage and to go on vacation . . ."); Midgett Decl. ¶ 5, **Exhibit "B"** (Aug. 17, 2016 T. Mirvis Dep. Tr. excerpt), at 147:9-148:20 (testifying that she and A. Boriskin lease Range Rover and BMW, with latter also used by Judgment Debtor).

[6] Although not joining the Opposition or otherwise responding, T. Mirvis' husband A. Boriskin, the father of the child mentioned therein, is a high-end real estate broker with several eight-figure listings.  *See* Midgett Decl. ¶ 6, **Exhibit "C"** (A. Boriskin company bio and sales listings as published on website of Douglas Elliman).

[7] The address of the Judgment Debtor's alleged employer ("ETCP") refers to the new Brooklyn address of eight turn crêpe, a restaurant formerly located in Manhattan and previously owned by 7E14, Inc., whose purported owner, his daughter T. Mirvis, testified as recently as January 10, 2018 that the business was "not financially viable" and closed in 2016.  *See* ECF No. 542-1, at ¶ 54.  Notably, ETCP is registered with NYDOS at 289 Bayberry.

[8] Funds sent in this way by the Pharmacies to T. Mirvis were deposited into her bank accounts nominally held jointly with one of the other two Mirvis Non-Parties (L. Mirvis or A. Boriskin), and these are among the same accounts which have also received other fraudulent conveyances of the Judgment Debtor's property, and/or which have been under the actual control of the Judgment Debtor himself.  *See generally Allstate Ins. Co. v. Mirvis*, 08-CV-4405 (PKC) (PK), 2018 WL 4921631 (E.D.N.Y. Sept. 4, 2018) (recommending, *inter alia*, avoidance of actual fraudulent conveyances).

hollow, both of the Opponents[9] have actively participated, over a period of years, in a family scheme to keep the Judgment Debtor's property well within his reach, yet out of his name.

Despite the Opponents' urging to the contrary, *see* Opp'n p. 11, the cited decision in *AMEV Capital Corporation v. Kirk* addresses the propriety of Section 5240 relief under similar circumstances, where a non-debtor spouse knowingly participated in judgment-evasion activities regarding the very property in question, 180 A.D.2d 791 (2nd Dep't 1992).  In the *AMEV Capital* special proceeding, the non-debtor spouse had likewise participated in a fraudulent conveyance of the realty at issue, though in that case she was the ultimate transferee, rather than (as here) eventually transferring all of her interest to another non-debtor family member (here, T. Mirvis), and the court held that a Section 5240 stay would not be available:

> [A]lthough the appellant's wife is a defendant in the action to set aside the fraudulent conveyance, her interest in the real property would not be affected by the sale.  Moreover, the petitioner's attempts to collect the substantial amounts owed have been repeatedly frustrated.  In short, there are no circumstances in this case on which an order staying the execution sale might appropriately be premised.

180 A.D.2d at 792 (citations omitted).  The Opposition's readily distinguishable case law does not compel or even support a different result, and none involves a culpable non-debtor spouse.  For example, the bankruptcy court in *Waxman* cited Section 5240 in granting an order permitting a sale of the debtor's interest directly to the non-debtor spouse without the need for an auction,[10] but such a proposal has not been made here.  *See* Opp'n pp. 6-7 (citing 128 B.R. 49, 51 (Bankr. E.D.N.Y. 1991)).  The Second Department fashioned different Section 5240 relief in *Putnam County*

---

[9] While T. Mirvis purports to join in the Opposition, it is doubtful that she has standing to challenge the Motion, which does not request eviction of the Mirvis Non-Parties from the Subject Property.  As a non-owner (following the Court's reversal of the fraudulent conveyance from her parents), no cognizable interest of T. Mirvis' is implicated here.

[10] *Waxman* also suggests that the Court could employ Section 5240 to permit or promote alternatives to the mode of sale for a TBTE, such as selling the debtor's interest directly to the non-debtor spouse, which might alleviate some of the discomfort of the process, reduce costs and delays, and/or obtain a higher price than a judicial auction.

*National Bank of Carmel v. Pryschlak*, staying the execution sale, but only on the condition that the debtor pay $2,000 per month. *See* Opp'n p. 7 (citing 226 A.D.2d 358 (2nd Dep't 1996)).

In *Stern v. Hirsch*, the court applied Section 5240 to enjoin any execution sale until the non-debtor wife's departure from the property, but again there was no indication of her involvement in fraudulent conveyances or other wrongdoing. *See* Opp'n p. 7 (citing 79 A.D.3d 1046, 1047 (2nd Dep't 2010)). Several courts in Nassau County during the early 1970s protected an ostensibly innocent non-debtor spouse under Section 5240, based in large part on proven hardship (a far cry from the Mirvises' opacity here), and/or on the lack of other, prior efforts to enforce the judgment. *See* Opp'n p. 7; *Seyfarth v. Bi-County Electric Corp.*, 341 N.Y.S.2d 533, 534 (Sup. Ct. Nassau Cnty. 1973)); *see also Gilchrist v. Commercial Credit Corp.*, 322 N.Y.S.2d 200, 202 (Sup. Ct. 1971) (staying sale where no other enforcement attempted for six years and interest of estranged non-debtor spouse worth more than amount of judgment); *Hammond v. Econo-Car of North Shore, Inc.*, 336 N.Y.S.2d 493, 496 (Sup. Ct. Nassau Cnty. 1972) (relief from sale premised on, *inter alia*, non-debtor spouse's long separate living, receipt of certain government benefits, and lack of any credible prior efforts to enforce judgment); *Holmes v. W.T. Grant, Inc.*, 336 N.Y.S.2d 601, 603 (Sup. Ct. Nassau Cnty. 1972) (stay where "family already living marginally" conditioned on debtor making regular payments). Facts of this sort simply are not present here.

Thus, for the foregoing reasons, including the case law offered as support in the Opposition, Section 5240 may appropriately be used to protect an innocent non-debtor spouse's enjoyment of entireties property, and/or to fashion remedies or relief that reasonably reduce disruptions or costs associated with the typical sale process. However, no such proposal appears in the Opposition, which seeks only the wholesale invalidation of Plaintiffs' rights, a position which is itself consistent with the Mirvises' prior behavior and blasé attitude regarding the Judgment Debtor's obligations.

## II.

### NON-DEBTOR LYUBOV MIRVIS' ENTIRETIES INTERESTS, IF ANY, DO NOT INSULATE JUDGMENT DEBTOR'S INTEREST FROM EXECUTION SALE

Only after seeking the Court's discretionary stay of the sale does the Opposition question the legal basis for subjecting the Judgment Debtor's interest in 289 Bayberry to an execution sale. In that regard, it is far from clear that L. Mirvis continues to hold any entireties interest as against Plaintiffs, parties she has already defrauded by participating in fraudulent conveyances of the Subject Property itself. Even if so, such a scenario would not be incompatible with the Motion, as New York law is clear that the Judgment Debtor's interest in the Subject Property – even if held as a TBTE – is subject to execution sale. The Opposition relies on speculative assumptions that such a sale would be impractical, or that the actual sale might not yield an adequate price. Yet those assumptions are based on circumstances that have been or will be determined by the Mirvises' own actions, and in any event they cannot override Plaintiffs' clear statutory rights. The structure and economics of any final transaction, and the alternatives available to parties in interest during the course of the sale process and related proceedings, simply are not at issue.

### A.    Conduct of Lyubov Mirvis has Terminated Relevant Entireties Interests in 289 Bayberry

Plaintiffs submit that any TBTE interest or right of survivorship of L. Mirvis has or should be deemed to have terminated, based on her participation in fraudulent transactions designed to frustrate enforcement of the Judgment. As discussed, *see* Sec. I(A), *supra*, the Judgment Debtor, L. Mirvis, and T. Mirvis all participated in a series of three fraudulent conveyances of all or some of the interests in 289 Bayberry, on dates suggesting the transfers were strategically informed by dates of the Judgment and related motion practice. Courts have held that a TBTE is "terminated when the husband and wife sell the property to a third party." *Orbach v. Pappa*, 482 F. Supp. 117, 121 (S.D.N.Y. 1979) (citing *Secrist v. Secrist*, 284 A.D. 331 (4th Dep't 1954), *aff'd*, 308 N.Y. 750

(1955).  That is precisely what the Judgment Debtor and L. Mirvis did in executing the third and final fraudulent deed in May 2015, by which they each conveyed their entire interest to T. Mirvis. Furthermore, the non-debtor's survivorship interest, an incident of the TBTE that might otherwise remain following the sale, may be disregarded as to a defrauded creditor if, as here, the non-debtor "participated in the fraudulent conveyance and [] attempted to hide it from the court," deeming such actions "sufficient to strip her of the right of survivorship she would hold as a tenant by the entirety." *Hall-Mark Elecs. Corp. v. MGS Mktg., Inc.*, No. 86 C 4346, 1987 WL 13211, at \*9 (E.D.N.Y. June 29, 1987) (citing *Clarkson Co. v. Shaheen*, 533 F. Supp. 905, 924 (S.D.N.Y. 1982)).

**B.      The Judgment Debtor's Property Interest in 289 Bayberry**
**is Subject to Execution Sale under New York Law.**

Alternatively, even if any entireties interest of L. Mirvis' were determined to remain, it is long-settled that such an interest would not bar Plaintiffs from seeking an execution sale as to the Judgment Debtor's interest.  *See Rothschild v. Lincoln Rochester-Tr. Co.*, 212 F.2d 584, 585 (2d Cir. 1954) ("[T]he law seems quite clear . . . . [that h]usband and wife had an estate by the entirety under New York law, with the husband's interest liable to be taken on execution (subject to her right of survivorship) . . . .") (citing *Hiles v. Fisher*, 144 N.Y. 306 (1895)).  Again, the Judgment Debtor's "interest in a tenancy by the entirety is not exempt for enforcement purposes" and is subject to "sale and enforcement by execution," *Gard Entm't, Inc. v. Block*, 960 N.Y.S.2d 50, 2012 WL 3764525, at \*2-3 (Sup. Ct. N.Y. Cnty. 2012) (citing *In re Persky*, 893 F.2d 15, 19 (2d Cir. 1989)), and a TBTE "prior to the conveyance" does not bar a fraudulent conveyance claim, *William J. Jenack Estate Appraisers & Auctioneers, Inc. v. Rabizadeh*, 131 A.D.3d 960 (2nd Dep't 2015). *See AMEV Capital*, 180 A.D.2d at 792 (non-debtor interest "would not be affected by the sale).[11]

---

[11] Plaintiffs had also acknowledged the pre-conveyance TBTE in their original, April 4, 2016 motion to avoid the fraudulent conveyance of 289 Bayberry, *see* ECF No. 335-1, at p. 17, n. 8, but no opposition was raised on this point, and the Judgment Debtor's interest was adjudged subject to execution, *see* ECF No. 512, at p. 1.

10

**CONCLUSION**

Accordingly, for the reasons set forth herein and in their original moving papers, Plaintiffs respectfully submit that the Opposition is without merit, and that the Motion should be granted, provided that Plaintiffs would not oppose a short stay of the sale for up to three months to enable the Opponents to find a new residence.

Dated: August 6, 2019
     New York, New York

Respectfully submitted,

**MORRISON MAHONEY LLP**

By:    /s/ Andrew Midgett    
    Robert A. Stern, Esq.
    Daniel S. Marvin, Esq.
    Andrew S. Midgett, Esq.
    Wall Street Plaza
    88 Pine Street, Suite 1900
    New York, New York 10005
    Phone:  212-825-1212
    Fax:    212-825-1313

**CADWALADER, WICKERSHAM & TAFT LLP**

By:    /s/ William Natbony    
    William J. Natbony, Esq.
    One World Financial Center
    New York, New York 10281
    Phone:  212-504-6531

*    Attorneys for Plaintiffs-Judgment*
*    Creditors Allstate Insurance Company,*
*    Allstate Indemnity Company, Deerbrook*
*    Insurance Company, Allstate New Jersey*
*    Insurance Company, and Allstate*
*    Property & Casualty Insurance Company*