```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
ALLSTATE INSURANCE COMPANY, et al.,    :
                                       :
                    Plaintiffs,        :
                                       :                **REPORT AND**
          -against-                    :                **RECOMMENDATION**
                                       :
MARK MIRVIS, et al.,                   :                08-CV-4405 (PKC)(PK)
                                       :
                    Defendants.        :
---------------------------------------------------------------- x
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company, and Allstate Property & Casualty Insurance Company ("Plaintiffs") brought this action pursuant to the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c)-(d), and 1964(c), and New York common law on October 30, 2008. (Compl., Dkt. 1.)  On May 5, 2015, default judgment was entered for Plaintiffs in the amount of $45,657,401.01, for which the defaulting defendants are jointly and severally liable (the "Judgment").  (Dkt. 303.)  In an effort to collect on the Judgment, Plaintiffs have filed a "Motion to Avoid Fraudulent Conveyance by or On Behalf Of, and to Turn Over Personal Property Of, Judgment Debtor Michael Bezenyan." ("the Motion").  (Dkt. 621.)  The Motion requests that the Court find a series of transactions (the "Subject Transfer") to be an actual or constructive fraudulent conveyance, and to turn over the contents of a TD Bank joint checking account ending in 3094 (the "Subject Account") held in the name of Michael Bezenyan ("M. Bezenyan") and his wife, Irene Bezenyan ("I. Bezenyan," together with M. Bezenyan, the "Bezenyans") as the property of M. Bezenyan.

The Honorable Pamela K. Chen has referred the Motion to the undersigned.  For the reasons discussed below, the undersigned respectfully recommends that the Motion be granted.

1

## **BACKGROUND**

On May 10, 2013, M. Bezenyan opened the Account in his name only. (Declaration of Andrew S. Midgett, Esq. ("Midgett Decl."), Ex. C, New Personal Account Form, Dkt. 621-5 at 1.) Four years later, on June 28, 2017, I. Bezenyan was added to the Account as a joint accountholder. (Midgett Decl., Ex. C, Personal Account Maintenance Form, Dkt. 621-5 at 2.)

In May of 2017, shortly before I. Bezenyan was added to the Account, it began receiving "commission" deposits allegedly from I. Bezenyan's employer, A&D Mortgage. (Letter from Michael Bezenyan dated December 21, 2018, Ex. 1, Schedule A: Questions in Connection with Information Subpoena, Dkt. 617-1 at 10.) On October 20, 2017, four months after I. Bezenyan was added as an accountholder, the Account received a $90,000 wire transfer from Plaza Abstract Services, Limited. (Midgett Decl., Ex. E, Payment Archive and Research Center, Query Results Report, Dkt. 621-7.) This transfer included a memo that read "Meerzon Mortgage Payoff" and listed "Irene Bezenyan" as the beneficiary. (*Id.*)

As part of their effort to enforce the Judgment, Plaintiffs issued a restraining notice to TD Bank on October 19, 2017 (Midgett Decl., ¶ 6), pursuant to which TD Bank restrained $83,091.90, the full amount in the Account on December 7, 2017. (Midgett Decl., Ex. B, Letter from TD Bank, N.A. dated 12/7/2017, Dkt. 621-4.)

In an Exemption Claim Form, dated March 7, 2018, M. Bezenyan challenged the restraint of these funds by notifying Plaintiffs that the restrained funds did not belong to M. Bezenyan. (Declaration of Andrew S. Midgett, Esq. in Support of Plaintiffs' *Ex Parte* Motion ("Midgett Decl. for *Ex Parte* Motion"), Ex. B, Exemption Claim Form, Dkt. 610-3 at 3.) Rather, it stated, "The funds were obtained/transferred into the account by a banking institution, for funds due and owing solely to Irene Bezenyan. Said funds were transferred due to a recorded mortgage solely between Izabella Meerzon and Irene Bezenyan …" (*Id.*) This November 7, 2013 mortgage agreement

2

between I. Bezenyan and Meerzon allegedly secured a loan from I. Bezenyan to Meerzon for $90,000, after the Bezenyans sold their property at 10 Seaman Court, Old Bridge, NJ 08857 to Meerzon.  (Midgett Decl. for *Ex Parte* Motion, Ex. B, Mortgage Agreement, Dkt. 610-3 at 6.)

On February 7, 2019, Plaintiffs filed the Motion, and an Opposition by M. Bezenyan ("Def.'s Opp.") was filed on March 5, 2019.  (Dkt. 624.)

## **DISCUSSION**

### I.     **Legal Procedure and Standard**

Federal Rule of Civil Procedure 69(a)(1) requires that the procedure on execution of a judgment "must accord with the procedure of the state where the court is located."

The relevant New York state procedure is dictated by New York Civil Practice Law and Rule 5225(b), which "enables a judgment creditor to initiate special proceedings against transferees to set aside fraudulent transfers made by the judgment debtor." *State Farm Mut. Auto. Ins. Co. v. Grafman*, No. 04-CV-2609 (NG) (SMG), 2015 WL 269529, at *2 (E.D.N.Y. Jan. 21, 2015).  Although the rule refers to "special proceeding[s]," "[n]early every court in [the Second] Circuit to consider the issue has held that parties can bring a motion under [Rule] 69(a), rather than instituting a special proceeding under the New York state law." *N. Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (internal footnote omitted); *see Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-25 (E.D.N.Y. 2010); *see also S.E.C. v. Vuono*, No. 13-MC-405 (JFB), 2013 WL 6837568, at *3 (E.D.N.Y. Dec. 26, 2013); *S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07-CV-8849 (PKC), 2010 WL 4159276, at *2 (S.D.N.Y. Oct. 6, 2010).  Thus, no special proceeding is necessary, and Plaintiffs may proceed with the instant motion.

Plaintiffs define the "Subject Transfer" as a "multistep transaction in two parts" consisting of "(1) the addition of I. Bezenyan as a joint accountholder on the Subject Account more than four

years after it was opened solely in [M. Bezenyan's] name, and (2) the Subject Account's receipt, less than four months later, of the $90,000 wire transfer." (Plaintiffs' Memorandum of Law in Support of the Motion ("Pls.' Memo"), Dkt. 621-1 at 15.) (footnotes omitted).

Plaintiffs present three grounds for recovering the funds in the Subject Account: (1) the Subject Transfer was an actual fraudulent conveyance, (2) the Subject Transfer was a constructive fraudulent conveyance, or (3) the Subject Account is not a tenancy by the entirety and is therefore available to M. Bezenyan's creditors. (Pls.' Memo at 3-4.)

### i. Actual Fraudulent Conveyance

Section 276 of the New York Debtor and Creditor Law ("NYDCL") defines actual fraud as a conveyance "made with intent to defraud. Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

Rule 9(b) of the Federal Rules of Civil Procedure requires that actual fraud be pleaded with particularity. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Due to the difficulty of demonstrating actual intent, actual fraud may be demonstrated through "badges of fraud," including:

> (1) a close relationship between the parties to the transaction, (2) a secret and hasty transfer not in the usual course of business, (3) inadequacy of consideration, (4) the transferor's knowledge of the creditor's claim and his or her inability to pay it, (5) the use of dummies or fictitious parties, and (6) retention of control of the property by the transferor after the conveyance.

*Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971 (NG) (MDG), 2013 WL 417352, at *11 (E.D.N.Y. Jan. 29, 2013) (citation omitted); *see Wall St. Assocs. v. Brodsky*, 257 A.D.2d 526, 529 (1999). The badges of fraud are not meant to be a complete list of requirements, but are rather factors to be weighed. *In re USA United Fleet, Inc.*, 559 B.R. 41, 62 (Bankr. E.D.N.Y. 2016). The presence of multiple badges of fraud can create the inference of the intent to defraud. *Id.* Here, the

4

Subject Transfer displays several badges of fraud.

      a.   Close Relationship

The marriage between the Bezenyans constitutes a "close relationship." *See Piccarreto v. Mura*, 51 Misc. 3d 1230(A) (N.Y. Sup. Ct. 2016), *aff'd*, 158 A.D.3d 1095 (N.Y. App. Div. 2018).

      b.   Questionable Transfer and Inadequate Consideration

The Bezenyans offer no explanation for adding I. Bezenyan to the Subject Account as a joint accountholder more than four years after the Account was first created. If the purpose was to allow I. Bezenyan to receive her own money – separate from her husband's – into the account, she was certainly able to open a separate account in her own name only. She did not do so. Adding herself to an existing account held in her husband's name is a questionable way of receiving money that is hers alone. M. Bezenyan's explanation that it was due to "convenience" and that he was "getting confused a lot and ha[s] trouble remembering things" is not a credible explanation for I. Bezenyan joining her husband's account to receive her own money. (Def.'s Opp. at 2.)

Furthermore, the Benzenyans' explanation of the $90,000 transfer as repayment of a loan from I. Bezenyan to Meerzon is questionable. M. Bezenyan claim that when he and I. Bezenyan sold their house in 2013, Meerzon wanted to buy items contained in the house but did not have money to buy them. (*Id.* at 1.) Inexplicably, they chose to lend Meerzon the money by way of a $90,000 mortgage on the same house. (*Id.*) However, while submitting a copy of a "Mortgage Agreement," the Bezenyans do not produce any contemporaneous documentation, including the promissory note referenced in the mortgage, which supposedly sets forth payment terms, such as the interest rate and payment schedule. (Def.'s Opp., Ex. 2, Mortgage Agreement); *See In re Centennial Textiles, Inc.*, 220 B.R. 165, 172 (Bankr. S.D.N.Y. 1998) (explanation of transfer as satisfaction of antecedent debt "must be viewed with the utmost skepticism given the lack of contemporaneity and apparent absence of any documentary evidence linking such transfer" with debt). Instead, the

Bezenyans offer a letter dated August 30, 2017 from I. Bezenyan, allegedly making a "Payoff Request" of $90,000, which would in effect constitute a 4-year mortgage with no payment of interest. (Def.'s Opp., Ex. 3, Letter dated 8/30/2017.) This is also highly unusual. In addition, as Plaintiffs point out, if the $90,000 transfer on October 20, 2017 constituted repayment of the 2013 "mortgage," there is no record in the Land Records Search system of the Clerk of Middlesex County, New Jersey where the house was located, indicating that this mortgage has ever been satisfied or otherwise extinguished, as of February 7, 2018.[1] (Midgett Decl., ¶ 8)

The transfer of the $90,000 into the Subject Account is further questionable because, notwithstanding the memo line indicating that the money was repayment of the loan, the money came, not from Meerzon, but from "Plaza Abstract Services, Limited," an entity which has not been identified except as a "Title company." (Def.'s Opp. at 2.) Plaintiffs note that they have not been able to locate any entity with this or a similar name with any knowledge of the alleged mortgage. (Midgett Decl., ¶ 9.)

        c.   <u>Knowledge of the Creditor's Claim and Inability to Pay</u>

I. Bezenyan does not contend that she was unaware of the judgment against her husband and that it has not been paid. (Pls.' Memo at 18.) In any event, it would not be credible that I. Bezenyan, who lived with M. Bezenyan (*see* Def.'s Opp. Ex. 2, 3), would be unaware that her husband was jointly liable for a court judgment of over $45 million in 2015 which had not been paid.

        d.   <u>Retention of Control</u>

M. Bezenyan retained control of the money in the Subject Account, notwithstanding his argument that the $90,000 belonged to I. Bezenyan alone. On December 10, 2018, there was an attempt to withdraw $83,000 from the Subject Account, almost the full amount of money left in the

---

[1] Although Plaintiffs argue that this was fifteen months after the purported "repayment," (Pl.'s Memo at 18), the declaration states that the record search was on February 7, 2018, a year earlier. (Midgett Decl., ¶ 8).

account. (Pls.' Memo at 13.) At a hearing held on January 16, 2019, M. Bezenyan was warned by the Court not to make any further attempts to withdraw the restrained funds from the Subject Account, and M. Bezenyan did not deny attempting to move the money out of the account, stating, "I am sorry about that." (Midgett Decl., Ex. O, Transcript of Conference, Dkt. 621-17 at 32.) In his written opposition a month later, however, he stated that it was I. Bezenyan who "went, on her own," to withdraw the funds from the bank. (Def.'s Opp. at 2.) The undersigned does not find this explanation credible under the circumstances.

Multiple badges of fraud exist, and the explanations for lack of fraud are unsupported and not credible. Accordingly, the undersigned finds that Plaintiffs have sufficiently demonstrated that the Subject Transfer constitutes actual fraud. *See In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11-MD-2296 (RJS), 2017 WL 82391, at *13 (S.D.N.Y. Jan. 6, 2017) ("[T]he confluence of several [badges of fraud] can constitute conclusive evidence of an actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose.") (citation omitted).

When a transfer is made with actual intent to defraud, Section 276-a of the NYDCL authorizes the award of reasonable attorneys' fees. The undersigned respectfully recommends that Plaintiffs be granted leave to request attorneys' fees after judgment has been entered.

### ii. Constructive Fraudulent Conveyance

In the alternative, Plaintiffs argue that the Subject Transfer was a constructive fraudulent conveyance. Section 273-a of the NYDCL defines constructive fraud when a conveyance is "by a debtor in a judgment action for money damages where no payment has been made to the creditor." *See Integrity Elecs., Inc. v. Garden State Distribs., Inc.*, No. 14-CV-3197 (BMC), 2016 WL 3637004, at *7 (E.D.N.Y. June 30, 2016). It provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the

7

> defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273-a.

"To prevail under [Section 273-a], a plaintiff must establish (1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Mitchell v. Garrison Protective Servs., Inc.*, 819 F.3d 636, 641 (2d Cir. 2016) (internal quotations omitted). Proving the conveyor's intent is not a necessary element. *See Ostashko v. Ostashko*, No. 00-CV-7162 (ARR), 2002 WL 32068357, at *21 (E.D.N.Y. Dec. 12, 2002) ("None of [the NYDCL sections regarding constructive fraud] requires the plaintiff to show that the defendant acted with actual intent."); *U.S. v. Alfano*, 34 F. Supp. 2d 827, 844 (E.D.N.Y. 1999).

It is undisputed that M. Bezenyan is a defendant in an action for money damages and that he has failed to satisfy the judgment. With regard to fair consideration, there is a "presumption of fraud" when "[a] conveyance was made without evidence of any tangible consideration." *Tube City IMS, LLC v. Anza Capital Partners, LLC,* No. 14-CV-1783 (PAE), 2016 WL 5864887, at *4 (S.D.N.Y. Oct. 6, 2016) (quotation omitted). The burden to demonstrate fair consideration falls on the Bezenyans. Here, as with the analysis for actual fraud, the undersigned finds that there was insufficient evidence that the Subject Transfer was made with adequate consideration. The $90,000 transfer into the Subject Account occurred without any apparent consideration. The Bezenyans attempt to link it to a mortgage supposedly entered into four years earlier between I. Bezenyan and Meerzon, but submit no credible documentation or other corroboration to support this link.

Accordingly, because M. Bezenyan has failed to satisfy a money judgment, and there is no fair consideration for the Subject Transfer, the undersigned finds that the Subject Transfer was also a constructive fraudulent conveyance.

8

### iii. Joint Account Available to Creditors

Finally, Plaintiffs argue in an additional alternative that because the Subject Account is owned jointly by the Bezenyans, it is subject to creditors. "[T]he opening of a joint bank account creates a rebuttable presumption that each named tenant is possessed of the whole of the account so as to make the account vulnerable to levy of a money judgment by the judgment creditor of one of the joint tenants." *Signature Bank v. HSBC Bank USA, N.A.,* 67 A.D.3d 917, 918 (2d Dep't 2009) (quoting *Tayar v. Tayar*, 208 A.D.2d 609, 610 (2d Dep't 1994) (internal quotation marks omitted)).

Underlying this presumption is New York Banking Law § 675:

> Joint deposits and shares; ownership and payment: (a) When a deposit of cash, securities, or other property has been made or shall hereafter be made in or with any banking organization or foreign banking corporation transacting business in this state … in the name of such depositor … and another person and in form to be paid or delivered to either, or the survivor of them, such deposit … and any additions thereto made, by either of such persons, after the making thereof, shall become the property of such persons as joint tenants […]

N.Y. Banking Law § 675 (a).

Under New York Civil Practice Law and Rules, Section 5225(b), property not in the possession of a judgment debtor can be turned over to a judgment creditor when that creditor has claim to that property. Here, once money transferred into the Subject Account, it became the property of M. Bezenyan as well as I. Bezenyan, as joint tenants. Therefore, the Subject Account is available to the creditors of either M. Bezenyan or I. Bezenyan.

However, because the Subject Account is located in Florida, Florida law governs the account. Florida Statute § 655.79 includes the presumption that an account held by a husband and wife is a tenancy by the entirety: "[a]ny deposit or account made in the name of two persons who are husband and wife shall be considered a tenancy by the entirety unless otherwise specified in writing." A tenancy by the entirety is inaccessible to those with claims against only one of the individual account holders. Several "unities," however, must exist for ownership of property to

9

qualify as a tenancy by the entirety:

> (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names)

*Beal Bank, SSB v. Almand & Assocs.*, 780 So. 2d 45, 52 (Fla. 2001).

With respect to a bank account, all six unities must exist at the time the account is created. *In re Caliri*, 347 B.R. 788, 798 (Bankr. M.D. Fla. 2006). "Should one of these unities never have existed or be destroyed, there is no entireties estate." *In re Aranda*, No. 08-26059 (BKC) (PGH), 2011 WL 87237, at *2 (Bankr. S.D. Fla. Jan. 10, 2011) (quoting *United States v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Ave., Miami Fla.,* 894 F.2d 1511, 1514 (11th Cir. 1990)); *see Beal Bank,* 780 So. 2d 45, 53 ("[…] for both joint tenancies and tenancies by the entireties, the owners' interests in the property must be identical, the interests must have originated in the identical conveyance, and the *interests must have commenced simultaneously*. (emphasis added)).

The fourth unity—unity of time—is not met in this case. M. Bezenyan created the account in 2013. (Midgett Decl., Ex. C at 1.) I. Bezenyan was added in 2017, four years later. (*Id.* at 2.) Because the interests did not commence simultaneously, the Subject Account does not qualify as a tenancy by the entirety, and is, therefore, available to the creditors of either accountholder.

Accordingly, the funds in the Subject Account, although owned jointly by the Bezenyans, may be used to satisfy the judgment against M. Bezenyan.

## **CONCLUSION**

The undersigned respectfully recommends that the funds in the TD Bank joint checking account ending in 3094 be turned over to Plaintiffs and that Plaintiffs be granted leave to seek attorneys' fees after judgment is entered. Any objection to this Report must be filed in writing with

the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Failure to timely file any such objection waives the right to appeal the District Court's Order.  28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

                                                                **SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:    Brooklyn, New York
                February 27, 2020