```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
ALLSTATE INSURANCE COMPANY, et al.,      :
                                         :
                Plaintiffs,               :
                                         :                        **REPORT AND**
         -against-                        :                        **RECOMMENDATION**
                                         :
MARK MIRVIS, et al.,                      :                        08-CV-4405 (PKC) (PK)
                                         :
                Defendants.               :
------------------------------------------------------------ x
```

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company, and Allstate Property & Casualty Insurance Company ("Plaintiffs") brought this action pursuant to the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, 1962(c)-(d), and 1964(c), and New York common law on October 30, 2008.  (Compl., Dkt. 1.)  On May 5, 2015, default judgment was entered for Plaintiffs in the amount of $45,657,401.01, for which the defaulting defendants are jointly and severally liable.  (Judgment., Dkt. 303.)  In an effort to collect on the Judgment, Plaintiffs have filed a "Motion to Direct U.S. Marshals to Conduct Execution Sale of Real Property Owned by Judgment Debtor Mark Mirvis" ("the Motion").  (Dkt. 631.)  The Motion requests that the Court, pursuant to Rule 69 of the Federal Rules of Civil Procedure and Section 5206(e) of the New York Civil Practice Law & Rules, issue an order directing the United States Marshals Service for the Eastern District of New York ( the "U.S. Marshals") to sell the real property known as 289 Bayberry Drive North, Hewlett Harbor, New York 11557, and identified in the land records of Nassau County as Section 42, Block 266, Lot 1 ("289 Bayberry"), in accordance with the procedures of Section 5236 of the C.P.L.R., and that the proceeds of the sale be placed into the registry of the Court pending an adjudication of the rights of the parties with interests therein.  (Notice of Motion,

1

Dkt. 631.)

The Motion has been referred to the undersigned by the Honorable Pamela K. Chen.[1]  For the reasons discussed below, the undersigned respectfully recommends that the Motion be granted.

## **BACKGROUND**

Mark Mirvis and his wife Lyubov Mirvis own 289 Bayberry. (Ex. B to Declaration of Daniel S. Marvin ("Marvin Decl.") in Support of Pls.' Motion to Avoid Fraudulent Conveyances by J. Debtor Mark Mirvis Pursuant to F.R.C.P. 69(a), C.P.L.R. § 5225(b), and D.C.L. §§ 273-a and 278 ("Motion to Avoid Fraudulent Conveyances"), Deed, Dkt. 335-4.)  On May 11, 2015, Mark and Lyubov Mirvis executed a deed conveying all of their interest in 289 Bayberry to their daughter Tatyana Mirvis for "Ten Dollars and other valuable consideration."  (Ex. F to Marvin Decl., Dkt. 335-8.)

Pursuant to the Judgment, on May 29, 2015, Plaintiffs perfected a judgment lien on Mark Mirvis's interest in all real property in Nassau County, New York (Ex. A to Marvin Decl., Dkt. 335-3), and on April 4, 2016, they filed the Motion to Avoid Fraudulent Conveyances with regard to the conveyance of 289 Bayberry to Tatyana.  On September 8, 2017, the Honorable Sandra L. Townes adopted the undersigned's Report and Recommendation ("R. & R.", Dkt. 505), granted the Motion to Avoid Fraudulent Conveyances, and issued an order voiding the May 11, 2015 conveyance as fraudulent, ordering that Mark Mirvis's interest in 289 Bayberry be subject to levy toward satisfaction of the Judgment, and ordering that 289 Bayberry be levied upon by the U.S. Marshals in accordance with a Writ of Execution.  (Dkts. 511, 512.)  The Writ of Execution was served on April 27, 2018.  (Memorandum of Law in Support of the Motion ("Pls.' Memo") 5, Dkt. 631-1.)

The Motion was filed on June 17, 2019, asking the Court to direct the U.S. Marshals to sell 289 Bayberry.  (Notice of Motion, Dkt. 631.)  Defendant Mark Mirvis did not file an opposition, but

---

[1] On June 13, 2019, all post-judgment discovery motions were referred to the undersigned.  (Order dated 6/13/2019.)

2

an "interested party" opposition was filed by Lyubov Mirvis and Tatyana Mirvis, "as parent of S.B." (collectively, the "Non-Parties") on July 23, 2019. (Non-Party Lyubov Mirvis's Memo of Law in Opposition to the Motion ("Non-Party Opp'n"),[2] Dkt. 646.)

Oral argument was held on February 10, 2020, at which Plaintiffs, Mark Mirvis *pro se*, and the Non-Parties appeared. (Minute Entry dated 2/11/2020.)

## THE PARTIES' ARGUMENTS

Plaintiffs argue that Mark Mirvis's interest in 289 Bayberry is subject to enforcement of the Judgment even though the house is owned as a tenancy by the entirety by Mark Mirvis and Lyubov Mirvis. (Pls.' Memo at 7.) They further argue that fraud committed by Lyubov Mirvis destroyed the tenancy by the entirety, and Mark Mirvis's interest in the property is as a tenant in common, which is also subject to enforcement. (*Id.* at 7, n. 6)

The Non-Parties opposed the Motion and sought a protective order to enjoin the requested sale, pursuant to C.P.L.R. § 5240, on the basis that such a sale would "disrupt[] the lives of two families and the wellbeing and development of a four-year-old boy—SB—with special needs," because Tatyana Mirvis, her husband and their four-year-old son live with Mark and Lyubov Mirvis at 289 Bayberry. (Non-Party Opp'n at 1, Dkt. 646.) Alternatively, they argue that, at most, Plaintiffs "can seek to execute on the sale of Mr. Mirvis's present possessory interest and right of survivorship – it cannot force a sale of the property in fee simple." (*Id.* at 9.)[3]

Defendant Mark Mirvis, appearing *pro se* at oral argument argued only that his grandson has developmental issues and is at 289 Bayberry when he is not at school. (Transcript of Proceedings on

---

[2] Although the memo of law was titled in Lyubov Mirvis's name only, the contents of the memo states that it is on behalf of Tatyana Mirvis as well.

[3] Although Plaintiffs seem to request an order directing the U.S. Marshals "to sell the real property known as 289 Bayberry," Plaintiffs argue only that the *judgment-debtor's interest* in the jointly owned property is subject to sale. (*See, e.g.,* Plaintiffs' Reply Memorandum of Law in Further Support of the Motion ("Pls.' Reply Memo") at 9, Dkt. 650.) Accordingly, only the sale of Mark Mirvis's interest in 289 Bayberry is considered.

3

February 10, 2020 at 43-44, Dkt. 690.)

## DISCUSSION

I.       **Tenancy by the Entirety**

Mark and Lyubov Mirvis own 289 Bayberry as a tenancy by the entirety. New York Consolidated Laws, Estates, Powers, & Trusts, § 6-2.2(b) ("A disposition of real property to a husband and wife creates in them a tenancy by the entirety, unless expressly declared to be a joint tenancy or a tenancy in common."). "The interests of a tenant by the entirety are a right to the use of an undivided half of the property during the joint lives of a husband and wife and a survivorship right to the entire fee." *Gard Entm't, Inc. v. Block*, No. 102399/2012, 2012 WL 3764525, at *3 (Sup. Ct. 2012). (*quoting In re Persky*, 893 F.2d 15, 19 (2d Cir. 1989)).

A judgment debtor's interest in property held as a tenancy by the entirety is not exempt from sale and enforcement by execution. *Id.* "The interest of a tenant by the entirety in New York is subject to the lien of judgment and may be sold under execution. However, the purchaser at such sale becomes a tenant in common with the debtor's spouse and is subject to the spouse's right of survivorship." *In re Parameswaran*, 50 B.R. 780, 783 (1985). *See Hall-Mark Elecs. Corp. v. MGS Mktg., Inc.*, No. 86-CV-4346 (EHN), 1987 WL 13211, at *7 (E.D.N.Y. June 29, 1987) (interest in property attachable even when tenant by the entirety).

The fact that 289 Bayberry is held as a tenancy by the entirety does not shield Mark Mirvis's interest in it from his creditors, and such interest may be used to satisfy the Judgment. Accordingly, the undersigned finds no bar to subjecting Mark Mirvis's tenancy by the entirety interest in 289 Bayberry to enforcement.

II.      **Termination of Tenancy by the Entirety**

Plaintiffs argue further that a tenancy by the entirety can be terminated and turned into a tenancy in common if the non-debtor participates in fraud against the judgment creditor. They

4

contend that Lyubov Mirvis's knowing role in conveying 289 Bayberry to Tatyana in May 2015 constituted fraud and "destroyed any tenancy by the entirety that may have been held, and … the entire value of the property is subject to execution by Plaintiffs." (Pls.' Memo at 7, n.6.)

Courts in this Circuit have stripped a party participating in a fraudulent conveyance of that party's right of survivorship. In *Clarkson Co. Ltd. v. Shaheen*, 533 F. Supp. 905, 924 (S.D.N.Y. 1982), the court found that the non-debtor spouse owning property as a tenancy by the entirety with her debtor husband was a "partner in a fraudulent endeavor to retain the entire property for herself and gave false testimony as to consideration in furtherance of that fraud." The court accordingly terminated the tenancy by the entirety and deemed the non-debtor spouse's right of survivorship extinguished. *Id.* "[W]here the transferee tenant participates in the fraud, equity permits her to be stripped of her right of survivorship as against the creditor she tried to defraud." *Id.*

The Non-Parties characterize the actions of Lyubov Mirvis as simply signing the conveyance document in the voided fraudulent conveyance, in contrast to the "extensive wrongdoing" of the non-debtor spouse in *Clarkson*. (Non-Party Opp'n 8.) They also point out that, while the Court found the May 11, 2015 conveyance to be fraudulent, the Court made no finding that Lyubov Mirvis acted in bad faith. (*Id.*)

While it is true that the Court did not make a finding of bad faith by Lyubov Mirvis as part of its ruling on the fraudulent conveyance, her bad faith was not at issue there. The undersigned considers the matter now and finds that Lyubov Mirvis acted in bad faith by effectuating fraudulent conveyances to evade her husband's creditors. Beginning in May 2013, Lyubov Mirvis along with Mark Mirvis and Tatyana Mirvis, engaged in a series of three transactions that resulted in the conveyance of the entire interest in 289 Bayberry to Tatyana Mirvis, for no consideration, only six days after the Judgment was entered. (R. & R. at 2.) The Court has already found this conveyance to be lacking in fair consideration and good faith, and, therefore, fraudulent. (*Id.* at 9.)

5

Furthermore, Tatyana Mirvis testified that her "parents," not just her father Mark Mirvis, "told me that [the transfer of 289 Bayberry to Tatyana Mirvis] was the proper way to proceed." (Supplemental Affidavit of Tatyana Mirvis in Opposition to Motion to Avoid Fraudulent Transfer ("T. Mirvis Aff.") ¶ 11, Dkt. 459-1.)  Given the repeated nature of her suspicious actions, and her direct role in each transaction, Lyubov Mirvis's behavior was more than that of an "innocent or incompetent wife." *Hall-Mark Elecs. Corp.*, 1987 WL 13211, at *7.  The fact that she did not commit perjury, as did the spouse in *Clarkson*, does not diminish her role in the fraud against Plaintiffs.  *Cf. In re Parameswaran,* 50 B.R. at 785 (declining to invoke the "harsh penalty of destroying the debtor's wife's right of survivorship" where she acted with a "mistaken belief" and relied on "misguided advice of counsel".)

At oral argument, Non-Parties cited for the first time *Marine Midland Bank v. Murkoff*, 508 N.Y.S.2d 17, 19-20 (App. Div. 1986), for the proposition that there should not be punitive remedies for a fraudulent conveyance.  (*See* Transcript of Proceedings held on 2/10/2020, Dkt. 690 at 11.) The court there cautioned that "[p]unishment is not a proper basis for granting relief in a fraudulent conveyance action.  No matter how 'scandalous' the conduct, punishment is a matter for other tribunals." *Marine Midland*, 120 A.D.2d at 131.  It found that "[d]epriving [the non-debtor spouse] of her survivorship interest is plainly punitive and it is not a permissible remedy." *Id.* at 123.  The court in *Marine Midland* criticized *Clarkson* for "disregard[ing] this nonpunitive principle" and reaching its legal conclusion in reliance on "the long line of cases which preclude a murderer or his heirs from succeeding to the property of the victim." *Id.*

The undersigned does not find that terminating the tenancy by the entirety here is punitive. *Hall-Mark Elecs. Corp.*, 1987 WL 13211, at *9, which was decided after *Marine Midland*, cited *Clarkson* favorably, stating, "The evidence suggests that [the spouse] participated in the fraudulent conveyance and has attempted to hide it from the court, actions which are sufficient to strip her of

6

the right of survivorship she would hold as a tenant by the entirety." Losing her right of survivorship is proportional to the degree of Lyubov Mirvis's actions in defrauding Plaintiffs.

Accordingly, the undersigned finds that Lyubov Mirvis's conduct in participating in fraudulent conveyance has been sufficiently egregious to warrant terminating the tenancy by the entirety and Lyubov Mirvis's survivorship rights, such that any purchaser of 289 would continue as a tenant in common with Lyubov Mirvis, not subject to any survivorship rights.

### III. Equitable Considerations Under C.P.L.R. § 5240

The Non-Parties urge the Court to enjoin the sale of 289 Bayberry, which they argue would cause harm to the family who lives there, especially the four-year-old grandson of Mark and Lyubov Mirvis, who has special needs. (Non-Party Opp'n at 1.)

C.P.L.R. § 5240 permits a court "at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, [to] make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." This rule grants courts "broad discretionary power to control and regulate the enforcement of a money judgment under article 52 to prevent 'unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.'" *Guardian Loan Co., Inc. v. Early,* 392 N.E.2d 1240, 1242-43 (1979) (*quotations omitted*). A court exercises its discretion "to prevent the brutal use of legal procedures against a judgment debtor." *Midlantic Nat'l Bank/N. v. Reif*, 732 F. Supp. 354, 356 (E.D.N.Y. 1990). C.P.L.R. § 5240 functions as an "equitable safety valve" to restrain execution on a valid judgment "where unwarranted hardship would otherwise result." *Seyfarth v. Bi-Cty. Elec. Corp.,* 341 N.Y.S.2d 533, 535 (Sup. Ct. 1973).

Use of this provision, however, is "strictly to aid a party inequitably burdened by the use of enforcement procedures by his adversary and to allow him an opportunity to either meet his legal obligation or postpone the enforcement of a judgment until such time that its enforcement is more

7

properly sought." *Midlantic,* 532 F. Supp. at 356-57 (*quotations omitted*). "[O]nly the gravest circumstances warrant CPLR 5240 equitable modification in the face of a valid judgment." *Id.* at 357.

In deciding whether and how to exercise its discretion under C.P.L.R. § 5240, the Court should "strike[] a fair balance between the needs of a creditor holding a valid money judgment and the needs of a debtor managing competing financial obligations." *Id.*

The circumstances here weigh against modifying enforcement of the Judgment by staying the sale of 289 Bayberry. While courts have noted that "[a]ny judicial sale, especially one involving the judgment debtor's residence, is a tragic event," *Guardian Loan Co.,* 392 N.E.2d at 1242, they have also denied the C.P.L.R. § 5240 petition of a debtor who was the sole caregiver to his seven-year-old grandchild. *See Fed. Deposit Ins. Co. v. Lapadula*, 521 N.Y.S.2d 391, 392 (Sup. Ct. 1987). The court found there that the forced sale of the debtor's residence was appropriate because he "simply ignored his obligation" to satisfy a judgment of $117,531.45 against him. *Id.* The court added that while the debtor entreated the court to "fashion a method of periodic payments as a condition for the stay of execution of the sale" of the house, the debtor offered no proposals. *Id.*

Here, the Non-Parties and Mark Mirvis argue that sale of 289 Bayberry, their primary residence, would be a hardship on their family, including Mark and Lyubov Mirvis's four-year-old grandchild, S.B. Their proof of hardship is unconvincing. Evidence of the grandchild's special needs is unspecific, consisting of an affidavit by S.B.'s physician, which states that taking S.B. out of his present school or his current home "will negatively affect his progress and development." (Non-Parties' Motion to File Supplementary Information Under Seal, Ex. 1, Affidavit of Brian Blinderman M.D., Dkt. 685-1.) There are no details as to what this negative effect is or why it constitutes such a grave circumstance that Plaintiffs should be prevented from enforcing a valid judgment.

Moreover, there is nothing in the record indicating that the family *must* move out of 289

Bayberry upon its sale. The new purchaser could permit them to remain as renters, or a family member could purchase the property. There is also no reason given for why the family would need to move away from the district where S.B. is currently attending school, or indeed that they would be unable to find alternative housing nearby. Money does not appear to be an issue.[4] Tatyana Mirvis's husband is employed as a high-end real estate broker, and the family is able to lease multiple luxury vehicles. (Ex. B, C to Decl. of Andrew S. Midgett, Esq. in Support of the Motion, Dkt. 650-3, 650-4.) Mark Mirvis reports $2,166.66 per month in income (Request to Proceed *In Forma Pauperis*, Dkt. 633 at 1), and the Mirvis family is somehow able to pay multiple mortgages on the property at 289 Bayberry. (Pls.' Reply Memo at 2.) This is not a case which "reek[s] of Dickensian squalor because of the immediate and unavoidable consequences to [an] innocent mother and child…." *Midlantic*, 732 F. Supp. at 357 (*citing Seyfarth v. Bi-Cty. Elec. Corp.,* 341 N.Y.S.2d 533, 534-35 (Sup. Ct. 1973)). Tatyana Mirvis, her husband and her son live with her parents by choice, unlike the mother in *Seyfarth*, who lived in the house she owned with her estranged husband and supported herself and her child through "a combination of her own hospital employment, rent from a boarder and a local newspaper that uses her garage as a delivery drop, and sporadic support payments." *Seyfarth,* 341 N.Y.S.2d at 533.

Finally, neither the Non-Parties nor Mark Mirvis has offered any "less intrusive means to satisfy [the Judgment]." *Guardian Loan Co.,* 392 N.E.2d at 1243. Indeed, Mark Mirvis has not agreed to any income execution, levy and sale of personal property, or other means less drastic than sale of 289 Bayberry to satisfy any portion of the $45 million judgment against him. *Id.* The undersigned finds that a delay in the sale of three months, as suggested by Plaintiffs, is sufficient to mitigate any

---

[4] The Homestead Exemption (C.P.L.R. § 5206) also calls for a portion of the proceeds of a sale directed under this section of the C.P.L.R. to be exempt from the satisfaction of a money judgment. The current amount for Nassau County, effective April 1, 2018, is $170,825. (Ex. F to the Motion, Department of Financial Services Industry Guidance publication title "Amount Exempt from Judgments," Dkt. 631-8.)

9

hardship the residents of 289 Bayberry may experience if they need to relocate. (*See* Pls.' Reply Memo at 11.)

## CONCLUSION

The undersigned respectfully recommends that the Court (1) terminate the tenancy by the entirety in 289 Bayberry and Lyubov Mirvis's survivorship rights, (2) issue an order directing the U.S. Marshals to sell Mark Mirvis's interest in the real property at 289 Bayberry, in accordance with the procedures of Section 5236 of the C.P.L.R., and (3) order that the proceeds be placed into the registry of the Court pending an adjudication of the rights of the parties with interests therein. The undersigned further recommends that the sale be stayed for three months. Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to timely file any such objection waives the right to appeal the District Court's Order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
         March 5, 2020