UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALLSTATE INSURANCE COMPANY, et al.,

                Plaintiffs,

     - against -

MARK MIRVIS, et al.,

                Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
08-CV-4405 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Deerbrook Insurance Company, Allstate New Jersey Insurance Company, and Allstate Property & Casualty Insurance Company ("Plaintiffs") brought this action on October 30, 2008, alleging civil claims based on violations of, *inter alia*, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, 1962(c)–(d), 1964(c), and New York common law, in connection with Defendant Mark Mirvis and his co-Defendants' involvement in an extensive criminal organization that engaged in massive automobile insurance fraud. (*See* Complaint, Dkt. 1, ¶¶ 1–38.) On May 5, 2015, default judgment was entered for Plaintiffs in the amount of $45,657,401.01, for which Defendant Mirvis and other defaulting co-Defendants were adjudged jointly and severally liable. (Dkt. 303.) On June 17, 2019, Plaintiffs filed a motion to enforce the judgment as to Defendant Mirvis, as Judgment Debtor, requesting that the Court issue an order directing the United States Marshals Service for the Eastern District of New York (the "U.S. Marshals") to sell the real property known as 289 Bayberry Drive North, Hewlett Harbor, New York 11557 ("289 Bayberry"), and that the proceeds of the sale be placed into the registry of the Court, pending an adjudication of the rights of the parties with interests therein. (Dkt. 631.) Plaintiffs' judgment enforcement motion was

1

referred to the Honorable Peggy Kuo, United States Magistrate Judge, for a Report and Recommendation ("R&R"), pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1(d). (July 26, 2019 Order.) On March 5, 2020, Judge Kuo issued her R&R, recommending, in sum, that the Court grant Plaintiffs' motion to enforce the judgment. (Dkt. 694.) On March 19, 2020, non-party Lyubov Mirvis filed an objection to Judge Kuo's R&R. (Dkt. 695.) Plaintiffs filed their response to the objection on April 2, 2020. (Dkt. 702.)

## DISCUSSION

### I. Legal Standard

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court reviews *de novo* those determinations as to which a party has specifically objected. *See id.* ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *see also Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 101 (E.D.N.Y. 2015) ("The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record." (citing, *inter alia*, 28 U.S.C. § 636(b)(1)(C))). However, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review." *Rafiy v. County of Nassau*, No. 15-CV-6497 (SJF) (GRB), 2019 WL 7046560, at *1 (E.D.N.Y. Dec. 23, 2019) (citation omitted) (quoting *Owusu v. N.Y. State Ins.*, 655 F. Supp. 2d 308, 312–13 (S.D.N.Y. 2009)). "General or conclusory objections, or objections which merely

recite the same arguments presented to the magistrate judge, are reviewed for clear error." *Chime v. Peak Sec. Plus, Inc.*, 137 F. Supp. 3d 183, 187 (E.D.N.Y. 2015) (internal quotation and citation omitted).

II.   **Relevant Facts**[1]

Defendant Mark Mirvis ("Mirvis") and his wife, Lyubov Mirvis ("Lyubov"), own 289 Bayberry as a tenancy by the entirety. (R&R, Dkt. 694, at 4.) On May 11, 2015, six days after the default judgment in the amount of $45,657,401.01 was entered against Mirvis and the other defaulting co-Defendants in this matter, Mirvis and Lyubov executed a deed conveying their entire interest in 289 Bayberry to their daughter, Tatyana Mirvis ("Tatyana"), for "Ten Dollars and other valuable consideration."[2] (*Id*. at 2.) On May 29, 2015, Plaintiffs perfected a judgment lien on Mirvis's interest in all real property in Nassau County. (*Id*.) On April 4, 2016, Plaintiffs moved to void Mirvis and Lyubov's conveyance of 289 Bayberry to Tatyana as fraudulent. (*Id*.) On September 8, 2017, after adopting an earlier R&R by Judge Kuo, then-presiding District Judge Sandra L. Townes voided Mirvis and Lyubov's May 11, 2015 conveyance of 289 Bayberry to Tatyana and further ordered that 289 Bayberry be levied upon by the U.S. Marshals pursuant to a Writ of Execution, which was served on April 27, 2018. (*Id*.)

On June 17, 2019, Plaintiffs filed their motion for enforcement, asking that the Court direct the U.S. Marshals to sell 289 Bayberry.[3] (*Id*.) Plaintiffs argued that Mirvis's interest in 289

---

[1] The Court adopts the factual record set forth in the R&R, which no party disputes.

[2] As discussed *infra*, this was the third conveyance of 289 Bayberry between Defendant Mirvis, Lyubov, and Tatyana during the two years preceding May 2015.

[3] Though requesting the sale of 289 Bayberry, Plaintiffs apparently only argued to Judge Kuo that the judgment-debtor's, *i.e.*, Mirvis's, interest in the jointly owned property was subject to sale, leading Judge Kuo to consider only the sale of Mirvis's interest in the property in resolving Plaintiff's judgment enforcement motion. (*Id*. at 3 n.3.)

3

Bayberry is subject to enforcement, even though the property was jointly owned by Mirvis and Lyubov as a tenancy by the entirety, because that tenancy was destroyed by the fraud committed by the Mirvises when they sought to convey 289 Bayberry to Tatyana in May 2015. (*Id*. at 3.) Plaintiffs further argued that the destruction of the tenancy by the entirety reduced Mirvis's interest in the property to that of a tenancy in common, which is subject to enforcement. (*Id*.)

Mirvis did not oppose the motion; rather, non-parties Lyubov and Tatyana (collectively, the "Non-Parties") filed an "interested party" opposition on July 23, 2019, with Tatyana filing as the parent of "S.B.," her minor child. (*Id*. at 2–3.) In their opposition, Lyubov and Tatyana sought a protective order to enjoin the sale of the property, arguing that the sale would "disrupt[] the lives of two families and the wellbeing and development of a four-year-old boy—SB—with special needs."[4] (*Id*. at 3 (quoting Lyubov Mirvis and Tatyana Mirvis's Memorandum in Opposition ("Non-Party Opposition"), Dkt. 646, at 1).) Lyubov and Tatyana alternatively argued that, at most, Plaintiffs could seek to execute on the sale of Mirvis's "present possessory interest and right of survivorship" in the property but could not "force a sale of the property in fee simple." (*Id*. (quoting Non-Party Opposition, Dkt. 646, at 9).)

### III. The R&R

As an initial matter, Judge Kuo found that, although Mirvis and Lyubov own 289 Bayberry as a tenancy by the entirety, that fact "does not shield Mark Mirvis's interest in it from his creditors, and such interest may be used to satisfy the [j]udgment." (R&R, Dkt. 694, at 4 (citing *Gard Entm't, Inc. v. Block*, 960 N.Y.S.2d 50, 2012 WL 3764525, at *3 (Sup. Ct. 2012)).) Judge Kuo accordingly

---

[4] According to the Non-Parties, Tatyana, her husband, and their four-year-old son live with Mirvis and Lyubov at 289 Bayberry. (Non-Party Opposition, Dkt. 646, at 1, 2.) Notably, however, at oral argument before Judge Kuo, Mirvis, appearing *pro se*, represented only that his grandson, who has developmental issues, "is at Bayberry when he is not at school." (*Id*. at 3.)

found "no bar to subjecting Mark Mirvis's tenancy by the entirety interest in 289 Bayberry to enforcement." (*Id*.) At the same time, Judge Kuo noted that, with respect to the sale of a property owned as a tenancy by the entirety, "the purchaser at such sale becomes a tenant in common with the debtor's spouse and is subject to the spouse's right of survivorship." (*Id*. (quoting *In re Parameswaran*, 50 B.R. 780, 783 (Bankr. S.D.N.Y. 1985)).)

Judge Kuo next considered Plaintiffs' argument that Lyubov's participation in the May 2015 fraudulent conveyance of 289 Bayberry destroyed Mirvis and Lyubov's tenancy-by-the-entirety ownership of the property, thereby subjecting the entire value of the property to execution by Plaintiffs. (*Id*. at 4–5.) Relying on *Clarkson Company Limited v. Shaheen*, 533 F. Supp. 905, 924 (S.D.N.Y. 1982), Judge Kuo observed that "[c]ourts in this Circuit have stripped a party participating in a fraudulent conveyance of that party's right of survivorship." (*Id*. at 5.) As Judge Kuo discussed, in *Clarkson*, the district court terminated the tenancy by the entirety for the property that was owned by the debtor and his non-debtor wife, based on the wife having been a "partner in a fraudulent endeavor to retain the entire property for herself and [having given] false testimony as to consideration in furtherance of the fraud." (*Id*. (quoting *Clarkson*, 533 F. Supp. at 924).) The *Clarkson* court thus deemed the wife's right of survivorship as having been extinguished. (*Id*. (noting that, "where the transferee tenant participates in the fraud, equity permits her to be stripped of her right of survivorship as against the creditor she tried to defraud" (quoting *Clarkson*, 533 F. Supp. at 924)).)

Judge Kuo rejected the Non-Parties' arguments that: (1) Lyubov's conduct with respect to the May 2015 transfer of 289 Bayberry did not constitute "extensive wrongdoing," as was found in *Clarkson*, but merely amounted to signing a conveyance document; and (2) Judge Kuo had not specifically found that Lyubov had acted in bad faith, despite finding that the May 2015

5

conveyance was fraudulent. (*Id*. at 5–6.) First, noting that Lyubov's bad faith was not at issue in the prior proceeding related to the fraudulent conveyance, Judge Kuo remedied that gap by expressly finding in the R&R that Lyubov, in fact, had "acted in bad faith by effectuating fraudulent conveyances to evade her husband's creditors." (*Id*. at 5.) Judge Kuo then reiterated her findings from a prior R&R as to those three conveyances, which began in May 2013 and culminated in the fraudulent May 2015 conveyance of 289 Bayberry in its entirety to Tatyana.[5] (R&R, Dkt. 505, at 2, 9.) Based on this evidence, which had been the subject of prior protracted proceedings (*see* Dkts. 335, 337, 363, 367, 427, 429, 459, 465–66, 478–79; *see also* June 6, 2017 Minute Entry), Judge Kuo concluded that,

> [g]iven the repeated nature of [Lyubov's] suspicious actions, and her direct role in each transaction, Lyubov Mirvis's behavior was more than that of an "innocent or incompetent wife." The fact that she did not commit perjury, as did the spouse in *Clarkson*, does not diminish her role in the fraud against Plaintiffs.

(R&R, Dkt. 694, at 6 (quoting *Hall-Mark Elecs. Corp. v. MGS Mktg., Inc.*, No. 86-CV-4346 (EHN), 1987 WL 13211, at *7 (E.D.N.Y. June 29, 1987)).) Judge Kuo accordingly found that

> Lyubov Mirvis's conduct in participating in [the] fraudulent conveyance has been sufficiently egregious to warrant terminating the tenancy by the entirety and Lyubov Mirvis's survivorship rights, such that any purchaser of 289 would continue as a tenant in common with Lyubov Mirvis, not subject to any survivorship rights.

(*Id*. at 7.)

In reaching this conclusion, Judge Kuo also considered the Second Department's decision

---

[5] As discussed in Judge Kuo's July 31, 2017 R&R, in May 2013, Defendant Mirvis and Lyubov executed a deed, with no consideration indicated, through which they transferred 50% of the interest in 289 Bayberry to Tatyana. (R&R, Dkt. 505, at 2.) In October 2013, Mirvis, Lyubov, and Tatyana executed a second deed, through which Tatyana returned the 50% interest in the property to Mirvis and Lyubov (*id*.), with the Mirvises offering conflicting explanations as to the reason for this transfer (*id*. at 2 n.2). Finally, as previously discussed, on May 11, 2015, just six days after the default judgment issued, Mirvis and Lyubov executed the third deed, transferring all interest in the property to Tatyana for "Ten Dollars and other valuable consideration." (*Id*. at 2.)

6

in *Marine Midland Bank v. Murkoff*, 508 N.Y.S.2d 17 (App. Div. 1986), *appeal dismissed*, 507 N.E.2d 322 (N.Y. 1987), raised by the Non-Parties for the first time at oral argument on Plaintiffs' motion. (*Id*. at 6.) In *Marine Midland*, which similarly involved a wife's knowing participation in a fraudulent conveyance of the marital residence, the court denied the debtor's request to extinguish his wife's right of survivorship based on the principle that there should be no "punitive" remedies for fraudulent conveyances. *See* 508 N.Y.S.2d at 24 ("Punishment is not a proper basis for granting relief in a fraudulent conveyance action. No matter how scandalous the conduct, punishment is a matter for other tribunals . . . ." (internal quotation and citation omitted)). The *Marine Midland* court went on to find that "[d]epriving the [non-debtor wife] of her survivorship interest is plainly punitive and it is not a permissible remedy." *Id*.

Judge Kuo rejected the Non-Parties' argument that *Marine Midland* governs in this case, instead finding that extinguishing Lyubov's right of survivorship is not "punitive," given the facts presented here. (R&R, Dkt. 694, at 6.) In reaching this conclusion, Judge Kuo relied on the district court's decision in *Hall-Mark*, which was decided after *Marine Midland* and relied on *Clarkson*. (*Id*.) In *Hall-Mark*, the court found that the non-debtor spouse's participation in a fraudulent conveyance, and her attempt to hide it from the court, could warrant stripping the spouse of her survivorship right. 1987 WL 13211, at *9. Applying the reasoning in *Hall-Mark* to this case, Judge Kuo found that Lyubov's "[l]osing her right of survivorship is proportional to the degree of [her] actions in defrauding Plaintiffs." (*Id*. at 6–7.)

Judge Kuo also rejected the Non-Parties' argument that she should exercise her equitable authority under C.P.L.R. § 5240 to prevent the sale of 289 Bayberry, finding the Non-Parties' proof of family hardship "unconvincing." (*Id*. at 8.) First, Judge Kuo explained that, while the Non-Parties had submitted an affidavit from the doctor of Tatyana's son, S.B., stating that moving

7

S.B. out of his current home "will negatively affect his progress and development" (*id.* (quoting Non-Parties' Motion to File Supplementary Information Under Seal, Ex. 1, Dkt. 685-1)), there "are no details as to what this negative effect is or why it constitutes such a grave circumstance that Plaintiffs should be prevented from enforcing a valid judgment" (*id.* (noting, *inter alia*, that "only the gravest circumstances warrant C.P.L.R. 5240 equitable modification in the face of a valid judgment" (quoting *Midlantic Nat'l Bank/N. v. Reif*, 732 F. Supp. 354, 357 (E.D.N.Y. 1990))). Judge Kuo further explained that nothing in the record indicated that the Mirvis family would have to move out of 289 Bayberry upon its sale, and that the new purchaser could allow the family to remain in the house as renters, or a family member could purchase the property. (*Id.* at 8–9.) Additionally, as Judge Kuo observed, "no reason [was] given for why the family would need to move away from the district where S.B. is currently attending school" even if the family no longer lived at 289 Bayberry. (*Id.* at 9.) Judge Kuo pointedly noted that "[m]oney does not appear to be an issue. Tatyana Mirvis's husband is employed as a high-end real estate broker, and the family is able to lease multiple luxury vehicles." (*Id.*) Judge Kuo further observed that "[t]his is not a case which 'reek[s] of Dickensian squalor because of the immediate and unavoidable consequences to [an] innocent mother and child . . . .'" (*Id.* (quoting *Midlantic*, 732 F. Supp. at 357); *see also id.* (finding that Tatyana and her family "live with her parents by choice").) Lastly, Judge Kuo noted that "neither the Non-Parties nor Mark Mirvis has offered any 'less intrusive means to satisfy'" the $45-million judgment against Mirvis. (*Id.* (quoting *Guardian Loan Co. v. Early*, 392 N.E. 2d 1240, 1243 (N.Y. 1979)).) Instead, Judge Kuo found that the three-month delay of the sale, which Plaintiffs had proposed, would sufficiently mitigate any hardship to Mirvis and his family if they were forced to relocate. (*Id.* at 9–10.)

Based on this analysis and factfinding, Judge Kuo recommended that the Court

8

(1) terminate the tenancy by the entirety in 289 Bayberry, as well as Lyubov's survivorship rights in the property; (2) order the U.S. Marshals to sell Mirvis's interest in 289 Bayberry, pursuant to the procedures set forth in C.P.L.R. § 5236; (3) order that the proceeds of the sale be placed into the Court's registry pending an adjudication of the rights of the parties with interests in the property; and (4) stay the sale of 289 Bayberry for three months. (*Id.* at 10.)

## IV. Non-Party Lyubov Mirvis's Objection to the R&R

On March 19, 2020, Non-Party Lyubov Mirvis submitted an objection to the portion of the R&R that pertains to her interest in 289 Bayberry, which the Court reviews *de novo*.[6] (*See* Objection to Report & Recommendation ("Obj."), Dkt. 695.) Specifically, Lyubov argues that the remedy for fraudulent conveyance under New York law would be "improper[ly] enlarge[d]" if the Court denied her right to survivorship in 289 Bayberry (*id.* at 2), and that satisfaction of the judgment against her husband must preserve the *status quo ex ante*, *i.e.*, Mirvis's and Lybuov's tenancy-by-the-entirety ownership of the property that existed before the May 2015 fraudulent conveyance (*id.* at 2–3). Lyubov first points to *Federal Deposit Insurance Corporation v. Porco*, 552 N.E.2d 158 (N.Y. 1990), in which the New York Court of Appeals held that, under New York

---

[6] Though Lyubov's objection is based on the same core argument about the impropriety of terminating her right of survivorship as well as the same case law from her original motion response, her objection does not "merely [recite] perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers[, and thus] . . . suffice[s] to invoke *de novo* review." *Rafiy*, 2019 WL 7046560, at *1 (internal quotation and citations omitted). Lyubov's objection responds to the R&R's finding that Lyubov acted in bad faith and argues for the first time that, notwithstanding any bad faith, Lyubov's right of survivorship in 289 Bayberry should not be extinguished in light of the holding in *Marine Midland*. While this is an argument that could, and arguably should, have been made as part of Lyubov's initial opposition, *see, e.g.*, *Mallek v. Allstate Indem. Co.*, No. 17-CV-5949 (KAM), 2018 WL 3629596, at *1 (E.D.N.Y. July 31, 2018) ("[E]ven in a *de novo* review of a party's specific objections, the court ordinarily will not consider arguments, case law and/or evidentiary material which could have been but [were] not, presented to the magistrate judge in the first instance." (internal quotation and citation omitted)), the Court nonetheless conducts a *de novo* review.

Debtor and Creditor Law ("NY DCL"),

> a creditor's remedy for the transfer of its debtor's assets, where undertaken prior to judgment on the debt is still to obtain a nullification of the [fraudulent] conveyance (*see*, [NY DCL] § 279) and, where undertaken after judgment, additionally to secure the assets in satisfaction of the debt (*see*, [NY DCL] § 278).

552 N.E.2d at 159. Lyubov's reliance on *Porco*, however, is misplaced. First, *Porco* is consistent with the R&R's conclusion that Defendant Mirvis's tenancy-by-the-entirety interest in 289 Bayberry may be used to satisfy the outstanding judgment against him. *See id.* (holding that a debtor's interest in the fraudulently transferred assets can be secured to satisfy the debt where the transfer occurred after judgment). Second, contrary to Lyubov's contention, the *Porco* court did not opine on the issue of whether, pursuant to NY DCL §§ 278 and 279, a non-debtor tenant retains her right of survivorship where that tenant was complicit in the fraudulent transfer. Rather, based on the facts in *Porco*, the Court of Appeals merely found that NY DCL §§ 278 and 279 "[do] not, either explicitly or implicitly, create a creditor's remedy for money damages against parties who, like defendant here, were neither transferees of the assets nor beneficiaries of the conveyance." *Id.* at 159. Thus, *Porco* has limited relevance to the subject of Lyubov's objection and only confirms that Defendant Mirvis's interest in 289 Bayberry, despite being owned with Lyubov as a tenancy by the entirety, can be used to satisfy the $45-million judgment against him.

Lyubov next argues that, were the Court "to strip her of her right of survivorship," doing so would also run counter to *Marine Midland*. (Obj., Dkt. 695, at 3.) As discussed, the facts in *Marine Midland* are indeed similar to this action. In *Marine Midland*, defendant Norman Murkoff conveyed to his wife an interest in their home, which they owned as tenants by the entirety. 508 N.Y.S.2d at 19. Though finding that both Murkoffs had acted with intent to defraud the judgment creditor when they effectuated the fraudulent conveyance, *id.* at 22, the court held that the judgment creditor could not "depriv[e] Abby [Murkoff] of her survivorship interest" in their home,

10

*id.* at 24, because a "creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance," *id.* at 25. Here, the Court agrees that *Marine Midland* lends support to Lyubov's argument that she should be permitted to retain her survivorship right in 289 Bayberry, despite Judge Kuo's finding, which the Court adopts, that Lyubov acted in bad faith by knowingly participating in the fraudulent conveyance of the property.[7]

However, the Court does not find this issue sufficiently established under New York law as to render the R&R's conclusion erroneous. Very few courts in this Circuit have considered the precise circumstances at issue here. Instead of relying on the Second Department's ruling in *Marine Midland*, Plaintiffs and the R&R relied on the district court's decision in *Clarkson*,[8] which reached the opposite conclusion from *Marine Midland*, *i.e.*, that "where the transferee tenant participates in the fraud, *equity* permits her to be stripped of her right of survivorship as against the creditor [of her debtor-husband] she tried to defraud." *Clarkson*, 533 F. Supp. at 924 (emphasis

---

[7] The Court agrees with Judge Kuo's finding that there is clear and convincing evidence of Lyubov's fraudulent intent with respect to the three conveyances of 289 Bayberry between Lyubov and Mirvis, on the one hand, and Tatyana, on the other, between May 2013 and May 2015. *See, e.g.*, *Kim v. Yoo*, 311 F. Supp. 3d 598, 619–20 (S.D.N.Y. 2018) (finding couple's conveyance of home and second property constituted fraudulent conveyances, where "badges of fraud" were established by facts such as two conveyances being made between family members, without consideration and on the same day, and "in the wake of a sizable [Department of Labor] penalty assessment and the instigation of a second [Department of Labor] investigation"); *In re Parameswaran*, 50 B.R. at 784 (finding "badges of actual fraud" established by defendant and wife's transfer of their home to a family member, the "absence of fair consideration," and the husband-debtor's continued use of the residence after the transfer).

[8] Plaintiffs briefly mention *Clarkson* in their initial motion (*see* Dkt. 631-1, at 7 n.6), while the R&R discusses it in greater detail (*see* R&R, Dkt. 694, at 5).

11

added) (citing *Van Alstyne v. Tuffy*, 169 N.Y.S. 173 (Sup. Ct. 1918)[9]). The Court recognizes, as did the R&R, that *Marine Midland* rejected this outcome and found *Clarkson* to have "disregarded th[e] nonpunitive principle" of New York law, whereby the remedies of NY DCL §§ 278 and 279 "are clearly geared toward re-establishing the status quo ante, rather than punishing the debtor." *Marine Midland*, 508 N.Y.S.2d at 24. However, while "[i]t is a well-established principle that the ruling of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court," the Court may do so where "it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Windsor v. United States*, 699 F.3d 169, 177 (2d Cir. 2012) (internal quotation and citation omitted); *see also Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F. Supp. 3d 392, 411 (S.D.N.Y. 2015) ("[F]ederal courts are 'bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.'" (citation omitted) (quoting *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010))).

As yet, there is no New York Court of Appeals decision that specifically addresses the right of survivorship where a court has found an actual fraudulent conveyance under NY DCL §§ 278 or 279, or that otherwise affirms the holding in *Marine Midland* on this issue.[10] *See In re Gen.*

---

[9] In this New York Supreme Court case, a man murdered his wife and then killed himself. *Van Alstyne*, 169 N.Y.S. 173. The executor and heirs of his deceased wife moved against the administrator and heirs of the husband to claim the house, which the husband and wife had owned as tenants by the entirety. *Id.* The court granted their motion based upon the "fundamental principle of the civil law, as well as the common law, that no person shall be permitted to profit by his own fraud, or to take advantage of his own wrong, or to found any claim upon his own iniquity or to acquire property by his own crime." *Id.* at 173–74.

[10] Although the Court of Appeals cited *Marine Midland* in *Porco*, it did not specifically endorse *Marine Midland*'s holding with regard to the right of survivorship issue, but characterized the Second Department as having found that "a creditor's remedy for the transfer of its debtor's assets, where undertaken prior to a judgment on the debt, is still to obtain a nullification of the

*Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 220 (S.D.N.Y. 2019) ("[I]n applying the law of a given state, the pronouncement of the state's highest court 'is to be accepted by federal courts as defining state law.'" (citation omitted) (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223 (1940))). However, the Court recognizes that *Marine Midland* remains good law and continues to be cited in this Circuit. *See, e.g.*, *Cadle Co. v. Newhouse*, 20 F. App'x 69, 73–74 (2d Cir. 2001) (summary order) ("New York courts have repeatedly stated that a judgment creditor's right to satisfy a judgment cannot be enhanced by virtue of a fraudulent transfer." (citing, *inter alia*, *Marine Midland*, 508 N.Y.S.2d at 24)); *Travelers Ins. Co. v. 633 Third Assocs.*, 973 F.2d 82, 87 (2d Cir. 1992) ("[*Marine Midland*] stands for the proposition that a judgment creditor does not gain new rights in property by means of a fraudulent conveyance action. Nothing in our opinion today contradicts this principle."); *Kim*, 311 F. Supp. 3d at 621 ("As a general rule, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." (citing, *inter alia*, *Cadle Co.*, 20 F. App'x at 73; *Marine Midland*, 508 N.Y.S.2d at 27–28)); *see also Blakeslee v. Rabinor*, 582 N.Y.S.2d 132, 134 (App. Div. 1992) (citing *Marine Midland* for the proposition that a creditor's remedy in a fraudulent conveyance action is limited to reaching the property that would have been available without the conveyance).[11] Thus, the Court should not disregard the holding

---

conveyance (*see*, § 279) and, where undertaken after judgment, additionally to secure the assets in satisfaction of the debt (*see*, § 278)." 552 N.E.2d at 159.

[11] In *Blakeslee*, the First Department also noted that "punitive damages may now be awarded in a case of fraudulent conveyance, but only if the defendant's conduct was gross and wanton and involved high moral culpability." 582 N.Y.S.2d at 134. However, the court in *Blakeslee*, a case which involved a fraudulent conveyance in a corporate context, denied the creditor's request for punitive damages. *Id.* Citing *Marine Midland*, the First Department reiterated that "[t]he statutory remedies available for the conveyance of property to remove it from the reach of a potential judgment creditor are limited to placing the parties in status quo *ante*[,]" and concluded that "the conduct of defendants herein, without more, does not constitute sufficient moral culpability to support the award of punitive damages." *Id.* at 135 (internal citations omitted).

in *Marine Midland* "unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Windsor*, 699 F.3d at 177.

  Here, the Court is not persuaded that the Court of Appeals would find that *Marine Midland* governs this matter or requires the protection of Lyubov's right of survivorship. Though *Clarkson* is a federal, rather than state, court decision, it too remains good law in this Circuit. *See, e.g.*, *United States v. Goldstein*, No. 03-CV-9316 (DAB), 2005 WL 323740, at *5 n.4 (S.D.N.Y. Feb. 9, 2005) (citing *Clarkson* for the proposition that, "where husband and wife held real property as tenants by the entirety, [and] . . . husband fraudulently conveyed the property to his wife for no consideration to evade his creditors . . . [,] a sale of the husband's interest" was permissible). Indeed, two federal decisions have relied on *Clarkson* to suggest that a spousal right of survivorship could be terminated in circumstances such as those in the instant action. In *Hall-Mark*, the district court concluded that "[t]he evidence suggests that [the wife] participated in the fraudulent conveyance and has attempted to hide it from the court, actions which are sufficient to strip her of the right of survivorship she would hold as a tenant by the entirety." 1987 WL 13211, at *9 (citing *Clarkson*, 533 F. Supp. at 924). And in *In re Parameswaran*, the bankruptcy court noted that, "[i]n certain rare instances, however, based on equity principles, some courts have eliminated a wrongdoer's right of survivorship in a tenancy by the entirety." 50 B.R. at 785 (citing *Clarkson*, 533 F. Supp. at 924; *Van Alstyne*, 169 N.Y.S. at 175). Although neither court terminated the right of survivorship, the *Hall-Mark* court found "a *likelihood* that a setting aside of the [fraudulent] conveyance will leave [the spouses] as tenants in common and not as tenants by the entirety," 1987 WL 13211, at *9 (emphasis added), and the court in *In re Parameswaran* decided not to extinguish the wife's right of survivorship because her participation in the fraudulent conveyance was the product of a "mistaken belief" and "the misguided advice of counsel." 50

14

B.R. at 785.[12]

Moreover, the facts in this case are distinguishable from those in *Marine Midland* with respect to the extent of Lyubov's involvement in the fraud against the judgment creditor. As Judge Kuo found, Lyubov, on three occasions, "acted in bad faith by effectuating fraudulent conveyances in order to evade [Mark Mirvis]'s creditors." (R&R, Dkt. 694, at 5.) These repeated acts over the course of several years (*see id.* at 6)—undertaken as part of a persistent and pernicious campaign by Mirvis and his family to avoid paying any part of the $45-million judgment entered against Mirvis arising out of a massive health care fraud scheme—make Lyubov's actions particularly egregious. The Court agrees with Judge Kuo that this remedy is not "punitive," but is instead proportional to Lyubov's conduct and necessary to achieve the full measure of recovery to which Plaintiffs are entitled. *Cf. In re Parameswaran*, 50 B.R. at 785 (declining to "invoke the harsh penalty of destroying the debtor's wife's right of survivorship" where the wife was not complicit in the fraud against the creditor). As in *Clarkson*, *Hall-Mark*, and *In re Parameswaran*, the Court finds that equity requires the remedy of terminating the Mirvises' tenancy by the entirety in 289 Bayberry and extinguishing Lyubov's right of survivorship. *See also Travelers Ins. Co.*, 973 F.2d at 87 (finding that creditors might be permitted "to obtain an equitable decree" to reach

---

[12] The Court also notes that, despite acknowledging the continuing vitality of *Marine Midland*'s holding that a "creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance," the Second Circuit in *Travelers* suggested that other "equitable" remedies might also be available. 973 F.2d at 87 (finding that principle from *Marine Midland* "does not, however, resolve the present issues in the [debtor's] favor[,]" and holding that, "to the extent plaintiff[-creditor] would have been entitled, absent the conveyance, to obtain an equitable decree enjoining the [debtor] to apply its cash assets in a manner to preserve the property's value, it may likewise 'reach' the cash assets for the same purpose in the fraudulent conveyance action"); *see also id.* at 86 ("Equitable relief is generally available where legal remedies are unavailable or inadequate." (citing *Franklin v. Gwinnett Cty. Pub. Schs.*, 503 U.S. 60, 75–76 (1979))).

fraudulently conveyed cash assets that could have been used to preserve full value of foreclosed property); *Blakeslee*, 582 N.Y.S.2d at 134 (noting that "punitive damages may now be awarded in a case of fraudulent conveyance, but only if the defendant's conduct was gross and wanton and involved high moral culpability").

Accordingly, the Court orders that Defendant Mirvis's and non-party Lyubov's tenancy by the entirety in 289 Bayberry be terminated and that Lyubov's right of survivorship also be extinguished.[13]

## CONCLUSION

For the reasons stated above, the Court adopts, in its entirety, the R&R and orders that: (1) Defendant Mark Mirvis's and non-party Lyubov Mirvis's tenancy by the entirety in the real property known as 289 Bayberry Drive North, Hewlett Harbor, New York 11557, as well as Lyubov Mirvis's survivorship rights in the property, are both terminated; (2) the U.S. Marshals shall sell Defendant Mirvis's interest in the property pursuant to the procedures set forth in C.P.L.R. § 5236; (3) the proceeds of the sale shall be placed into the Court's registry pending an adjudication of the rights of the parties with interests in the property; and (4) the sale of the property is stayed for three months from the date of this Order. Plaintiffs' motion to enforce the judgment as to Judgment Debtor Mark Mirvis is granted in its entirety.

---

[13] The Court agrees with, and adopts, Judge Kuo's findings with respect to denying the Non-Parties' request for the Court to exercise its equitable authority under C.P.L.R. § 5240 to prevent the sale of 289 Bayberry. As explained in the R&R, the evidence put forth by the Non-Parties in support of this request failed to provide sufficient justification for Judge Kuo to recommend enjoining the sale of the property. (R&R, Dkt. 694, at 8–10.) Rather, as Judge Kuo found, a three-month stay of the sale will mitigate any hardship that the occupants of 289 Bayberry may experience. These findings, as to which Lyubov has not objected, are not clearly erroneous. *See Bassett*, 93 F. Supp. 3d at 101 ("If no objections are made . . . , a district court need review that aspect of a report [and] recommendation only for clear error." (internal quotation and citation omitted)).

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: April 24, 2020
      Brooklyn, New York