UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ALLSTATE INSURANCE COMPANY, et al.,

                           Plaintiffs,

                - against -

MARK MIRVIS, et al.,

                      Defendants.
-------------------------------------------------------x

**ORDER DENYING**
**RECONSIDERATION**
**08-CV-4405 (PKC)**

PAMELA K. CHEN, United States District Judge:

Before the Court is the motion of Non-Debtor Respondents Michael Lupolover and NJTM Ventures, LLC seeking reconsideration of the Court's July 29, 2024 Order. For the reasons that follow, that request is denied.

In October 2008, Plaintiff Allstate Insurance Company[1] initiated this action against Michael Lupolover's father, Mark Lupolover ("Lupolover"), and numerous other defendants, alleging a massive health insurance fraud scheme carried out by the defendants between 1995 and 2008. (*See* Compl., Dkt. 1 & 1-1.) In May 2015, default judgment was entered against Lupolover and other defendants, jointly and severally, in the amount of $45,657,401.01. (Corrected Default J., Dkt. 303.) Based on Lupolover's sustained efforts to evade enforcement of the $45-million judgment, the Court authorized Plaintiff to conduct *ex parte* discovery to identify and locate Lupolover's assets. (Dkt. 754.) To date, Lupolover has not paid anything toward the judgment.

On May 31, 2024, Plaintiff filed an *ex parte* motion for a temporary restraining order ("TRO"), order to show cause, and/or preliminary injunction as to Lupolover and the Non-Debtor Respondents, which include Lupolover's wife and son—movant Michael Lupolover—as well as

---

[1] Other plaintiffs were initially involved in the case, but none are relevant to the present motion.

three corporate entities.  (*See* Dkt. 749.)  Plaintiff sought a TRO freezing Lupolover's and the Non-Debtor Respondents' assets.  (*Id.*)  As part of its motion, Plaintiff presented evidence that Lupolover and his family had engaged in a years-long campaign to dissipate and conceal Lupolover's assets, in part, via the three corporate entities, and evade the $45-million judgment against him.  (*See* Dkt. 749-1.)  On June 4, 2024, the Court granted the requested TRO, and scheduled a show cause hearing for June 7, 2024.  (*See* 6/4/2024 Docket Order; Dkt. 754.)  On June 6, 2024, the Non-Debtor Respondents requested an adjournment of the hearing "for about one month to allow sufficient time for discovery and briefing."  (Dkt. 759.)  The request stated: "[The Non-Debtor Respondents] agree that the other terms of the Order, including but not limited to the . . . temporary restraining order restrictions (which shall remain in place until the conclusion of the to be scheduled new hearing date and the determination of [Plaintiff's] Order to Show Cause) would remain in effect during any adjournment."  (*Id.*)  The Court granted the adjournment request, on consent, and rescheduled the show cause hearing for July 31, 2024.  (6/6/2024 Docket Order.)  On July 3, 2024, counsel for the Non-Debtor Respondents notified the Court that Lupolover had filed for bankruptcy that day and requested an automatic stay pursuant to Section 362 of the Bankruptcy Code.  (Dkt. 776.)  The Court directed Plaintiff to file a letter indicating its position on the stay request and addressing the impact of the potential stay on the TRO, and provided the Non-Debtor Respondents an opportunity to respond to Plaintiff's letter.  (7/8/2024 Docket Order.)

On July 29, 2024, via docket order, the Court imposed the Section 362 stay and denied the Non-Debtor Respondents' request to lift the TRO because of the stay.  The Court explained its reasoning in the docket order:

> As an initial matter, the Court agrees with Plaintiff and the Non-Debtor Respondents that the automatic stay provision under 11 U.S.C. § 362(a)(1) requires

the Court to stay further proceedings as to Judgment Debtor Mark Lupolover *and* as to Non-Debtor Respondents Michael Lupolover, Irene Lupolover, NJTM Ventures LLC, World of Leads Inc., and LIJT Management, LLC (collectively, the "Non-Debtor Respondents").   An "action to recover fraudulently transferred property is properly regarded as undertaken 'to recover a claim against the debtor' and subject to the automatic stay pursuant to § 362(a)(1)." *See In re Colonial Realty Co.*, 980 F.2d 125, 131–32 (2d Cir. 1992); *accord In re Hirsch*, 339 B.R. 18, 31 (E.D.N.Y. 2006) ("[E]ven when a creditor seeks to have fraudulently conveyed property returned to the debtor-transferor's estate, the creditor's action against the transferee remains an attempt to recover its claim against the debtor, if indirectly, and is stayed by [S]ection 362(a)(1).").   Accordingly, this action is stayed as to Judgment Debtor Mark Lupolover and the Non-Debtor Respondents pending the resolution of Judgment Debtor's bankruptcy proceedings, and the hearing scheduled for 7/31/2024 is adjourned *sine die*. . . .

The Court shall modify the TRO to the extent necessary to permit Judgment Debtor to comply with the bankruptcy court's orders, but otherwise, the TRO shall remain in effect pending the resolution of Judgment Debtor's bankruptcy proceedings.   The Court finds that permitting the TRO to remain in effect, particularly as to the Non-Debtor Respondents' assets, best furthers the public policy considerations behind the automatic stay provision, which is intended to maintain the status quo.   *See In re Anderson*, 884 F.3d 382, 390 (2d Cir. 2018).   Here, the TRO had already been issued and Respondents had already consented to the continuation of the TRO pending the determination of Plaintiff's Order to Show Cause[,] (*see* 6/6/2024 Docket Order)[,] before the Judgment Debtor filed for bankruptcy[,] (*see* Dkt. 776 (noting Judgment Debtor filed for bankruptcy on July 3, 2024)).   *See also* Fed. R. Civ. P. 65(b)(2) (allowing for the extension of the [TRO] beyond the 14-day period provided that the "adverse party consents" to the extension).   Moreover, the Non-Debtor Respondents' assets are not property of Judgment Debtor's estate unless and until Plaintiff prevails on its alter ego claims.   *See St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688 (2d Cir. 1989) (explaining that alter ego claims, if proved, would have the effect of bringing the property of the non-debtor into the debtor's estate).   Keeping the TRO in place safeguards the disputed assets during the pendency of the bankruptcy proceedings, which is particularly important given the evidence Plaintiff has put forth demonstrating the long history of fraudulent transfers between Judgment Debtor and the Non-Debtor Respondents and indicating that Judgment Debtor and the Non-Debtor Respondents have acted with intent to frustrate the enforcement of the May 5, 2015 Judgment entered in this case.

(7/29/2024 Docket Order.)

In their motion for reconsideration of the Court's July 29, 2024 Order, the Non-Debtor Respondents primarily argue that the Court incorrectly stated that they "consented to the continuation of the TRO pending the determination of Plaintiff's Order to Show Cause." (Dkt.

786 at 1 (quoting 7/29/2024 Docket Order).)  Specifically, the Non-Debtor Respondents contend

that they "did not consent to an indefinite continuation of the Ex Parte TRO."  (*Id.*)  Rather,

according to the Non-Debtor Respondents, they only consented to the continuation of the TRO

pending the adjournment of the show cause hearing, which, at the time, they estimated to be "for

about a month."  (*See id.* at 1–2 (emphasis omitted).)  The Non-Debtor Respondents further argue

that "[t]here is no statutory authority for the indefinite, successive extensions of temporary

restraining orders."  (*Id.* at 2 (emphasis omitted) (quoting *Pan Am. World Airways, Inc. v. Flight

Eng'rs' Int'l Ass'n*, *PAA Chapter, AFL-CIO*, 306 F.2d 840, 842 (2d Cir. 1962)).)  Finally, the Non-

Debtor Respondents argue that the automatic stay bars continuation of all proceedings against

them, and that the Court therefore is required to lift the TRO.  (*Id.* at 5.)

     A motion for reconsideration pursuant to Local Civil Rule 6.3 "is the proper vehicle for

bringing to the Court's attention matters it may have overlooked in its initial ruling or [O]rder."

*Pall Corp. v. 3M Purification Inc.*, Nos. 97-CV-7599 (PKC), 03-CV-92 (PKC), 2015 WL

5009254, at *1 (E.D.N.Y. Aug. 20, 2015).  The standard governing a motion for reconsideration

under Local Civil Rule 6.3 is "identical" to the standard applicable to a motion to alter or amend a

judgment under Federal Rule of Civil Procedure 59(e).  *Arnold v. Geary*, 981 F. Supp. 2d 266,

268–69 (S.D.N.Y. 2013), *aff'd*, 582 F. App'x 42 (2d Cir. 2014) (summary order).  Such motions

"are held to a strict standard, 'and reconsideration will generally be denied unless the moving party

can point to controlling decisions or data that the [C]ourt overlooked—matters, in other words,

that might reasonably be expected to alter the conclusion reached by the [C]ourt.'"  *Mirkin v.

XOOM Energy, LLC*, No. 18-CV-2949 (ARR) (RER), 2018 WL 6381456, at *1 (E.D.N.Y. Dec.

6, 2018) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  A motion for

reconsideration "is not a vehicle for re[-]litigating old issues, presenting the case under new

theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

Here, the Non-Debtor Respondents do not raise any fact or argument that the Court failed to consider in denying their request to lift the TRO in light of the stay. Nor did the Court err in that regard. The Court disagrees with the Non-Debtor Respondents' revisionist assertion that they only consented to the continuation of the TRO "for about a month." (Dkt. 786 at 2 (emphasis omitted).) Rather, the Non-Debtor Respondents clearly consented to a continuation of the TRO until "the determination of [Plaintiff']s Order to Show Cause." (Dkt. 759.) Because the Non-Debtor Respondents requested an adjournment, and shortly thereafter Lupolover, who is an immediate family member of Non-Debtor Respondents Irene and Michael Lupolover, filed for bankruptcy, the determination of Plaintiff's Order to Show Cause has not yet transpired. Particularly in the context of this case, where Plaintiff has put forth pages and pages of evidence indicating that Lupolover and the Non-Debtor Respondents are working together to evade a multi-million-dollar judgment, this sequence of events reeks of gamesmanship.

As the Court noted in its initial Order, "permitting the TRO to remain in effect, particularly as to the Non-Debtor Respondents' assets, best furthers the public policy considerations behind the automatic stay provision, which is intended to maintain the status quo." (7/29/2024 Docket Order (citing *In re Anderson*, 884 F.3d at 390).) "Keeping the TRO in place safeguards the disputed assets during the pendency of the bankruptcy proceedings, which is particularly important given the evidence Plaintiff has put forth demonstrating the long history of fraudulent transfers between Judgment Debtor and the Non-Debtor Respondents[.]" (*Id.*)

The Non-Debtor Respondents seek to use the automatic stay provision as both a sword and a shield by arguing that the provision precludes the Court from adjudicating Plaintiff's motion for a preliminary injunction *and* simultaneously requires the Court to lift the TRO on the Non-Debtor Respondents' assets, which notably are *not* part of the bankruptcy estate.   But the Non-Debtor Respondents cannot have their cake and eat it too.   Indeed, none of the cases that the Non-Debtor Respondents cite for the proposition that the automatic stay provision requires the Court to lift the TRO actually address this precise question.   *See In re Keene Corp.*, 164 B.R. 844, 848–50 (Bankr. S.D.N.Y. 1994) (holding that the automatic stay provision stays *proceedings* to recover transferred assets); *Kommanditselskab Supertrans v. O.C.C. Shipping, Inc.*, 79 B.R. 534, 541–42 (S.D.N.Y. 1987) (similar, without addressing existence of any TRO).   If anything, *In re Keene Corp.* provides support for not lifting the TRO in order to preserve the status quo, because "where [a bankruptcy debtor's] creditor seeks to recover his or her claim from a transferee of [the bankruptcy debtor's] property, the creditor's action is stayed by Section 362(a)(1).   Instead, the trustee alone has standing to assert such claims, . . . and this result promotes the principle of equitable distribution." 164 B.R. at 850.

This Court will not permit Lupolover and the Non-Debtor Respondents to improperly manipulate the federal procedural rules to enable Lupolover to avoid paying the judgment issued in this case.   Accordingly, the Court denies the Non-Debtor Respondents' motion for reconsideration.

SO ORDERED.

/s/ *Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 26, 2024
      Brooklyn, New York